**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

RTP ROOFING CO.,

           Plaintiff,

    v.

STATE FARM FIRE AND CASUALTY
COMPANY,

           Defendant.

Case No. 1:21-cv-01816-WJM-SKC

Hon. William J. Martinez

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
<u>MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6)</u>**

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700

*Counsel for Defendant State Farm Fire and Casualty Company*

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

STATEMENT OF COMPLIANCE WITH PRACTICE STANDARD III.D.1 ........................... 1

BACKGROUND ................................................................................................ 1

ARGUMENT ..................................................................................................... 3

I.     RTP's Claims Should Be Dismissed Under Rule 12(b)(1) Because RTP Lacks Standing to Assert Them .................................................................................... 3

     A.     RTP Cannot Rest on Conclusory Allegations Under Rule 12(b)(1) ................. 3

     B.     RTP Lacks Standing Because It Did Not Suffer Any Injury ........................ 4

II.     Alternatively, RTP's Claims Should Be Dismissed Under Rule 12(b)(6) Because RTP Has Not Alleged a Plausible Claim to Relief. .......................................... 6

     A.     RTP Has Not Alleged a Claim Under Sections 1115 and 1116. ................... 7

          1.     There Are No Facts Suggesting that RTP is a "First-Party Claimant." ...... 7

               a.     RTP Must Show that It is Acting in a Binding Representative Capacity to Qualify as a "First-Party Claimant." ........................... 7

               b.     RTP Has Not Alleged that It is Acting as a Binding Representative for Any Insured. ................................................... 9

          2.     RTP Has Not Alleged an Unreasonable Denial or Delay. ....................... 10

               a.     RTP Has Not Alleged a "Denial" of Insurance Benefits. ............. 10

               b.     RTP Has Not Alleged a "Delay" of Insurance Payments. ............ 10

               c.     RTP Has Not Alleged "Unreasonable" Conduct. ........................ 12

     B.     RTP's Claim for Declaratory Judgment and Injunctive Relief Should Be Dismissed for Additional, Independent Reasons. .................................. 13

     C.     RTP's Unjust-Enrichment Claim Should Also Be Dismissed ....................... 14

CONCLUSION .................................................................................................. 15

# **TABLE OF AUTHORITIES**

Page

CASES

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................................7

*Baker v. USD 229 Blue Valley*,
   979 F.3d 866 (10th Cir. 2020) ......................................................................................3

*Brooks v. Mentor Worldwide LLC*,
   985 F.3d 1272 (10th Cir. 2021) ...............................................................................7, 10

*Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*,
   No. 17-cv-871, 2019 WL 10946262 (D. Colo. Mar. 15, 2019)..............................11

*Buchwald v. Univ. of N.M. Sch. of Med.*,
   159 F.3d 487 (10th Cir. 1998) ...................................................................................14

*Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*,
   649 P.2d 1093 (Col. 1982)..........................................................................................14

*Cypress Advisors, Inc. v. Davis*,
   No. 16-cv-1935, 2021 WL 1751158 (D. Colo. May 4, 2021) .................................13

*Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*,
   486 P.3d 250 (Col. 2021).........................................................................................8, 9

*Frost v. ADT, LLC*,
   947 F.3d 1261 (10th Cir. 2020) ..................................................................................2

*Hampden Auto Body Co. v. Auto-Owners Ins. Co.*,
   No. 17-cv-1894, 2020 WL 550591 (D. Colo. Feb. 4, 2020)....................................11

*Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*,
   No. 17-cv-1773, 2018 WL 1993423 (D. Colo. Apr. 27, 2018) ...............................11

*Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*,
   77 P.3d 814 (Colo. App. 2003)...................................................................................15

*Jenkins v. State Farm Fire and Cas. Co.*,
   2017 IL App (1st) 160612-U .......................................................................................10

*Johnson v. Am. Nat'l Prop. & Cas. Cos.*,
   No. 17-cv-2218, 2019 WL 463026 (D. Colo. Feb. 6, 2019)...................................................11

*KW-2, LLC v. Asus Comput. Int'l*,
   170 F. Supp. 3d 1340 (D. Colo. 2016)....................................................................................3

*Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*,
   305 P.3d 409 (Colo. App. 2012) ......................................................................................8, 10

*Lee v. Am. Fam. Mut. Ins. Co.*,
   No. 06-cv-2604, 2008 WL 2704823 (D. Colo. July 7, 2008)................................................15

*Llacua v. W. Range Ass'n*,
   930 F.3d 1161 (10th Cir. 2019) ..............................................................................................6

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)................................................................................................................3

*Marechal v. Safeco Ins. Co. of Am.*,
   No. 19-cv-2572, 2021 WL 4046415 (D. Colo. June 7, 2021),
    *adopting recommendation*, 2021 WL 3486382 (D. Colo. Aug. 9, 2021) .............................12

*Pernick v. Computershare Trust Co., Inc.*,
   136 F. Supp. 3d 1247 (D. Colo. 2015)..................................................................................15

*Porter v. Ford Motor Co.*,
   917 F.3d 1246 (10th Cir. 2019) ............................................................................................13

*Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*,
   413 F. Supp. 3d 1070 (D. Colo. 2019)..................................................................................11

*Sauter v. State Farm Fire and Cas. Co.*,
   No. 17-cv-33275 (Dist. Ct., Cnty. of Denver, Aug. 1, 2018) .................................................7

*Singleton v. Wulff*,
   428 U.S. 106 (1976)................................................................................................................9

*Soicher v. State Farm Mut. Auto. Ins. Co.*,
   351 P.3d 559 (Colo. App. 2015) ......................................................................................10, 11

*Southway v. Cent. Bank of Nigeria*,
   328 F.3d 1267 (10th Cir. 2003) ..............................................................................................3

*Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.*,
   No. 09-cv-2224, 2011 WL 3903074 (D. Colo. Sept. 6, 2011)................................................9

*Thompson v. State Farm Mut. Auto. Ins. Co.*,
   457 F. Supp. 3d 998 (D. Colo. 2020) ......................................................................12

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .............................................................................................4

*U.S. v. Ahidley*,
   486 F.3d 1184 (10th Cir. 2007) ..............................................................................13

*Wak Inc. v. Ohio Sec. Ins. Co.*,
   No. 16-cv-1191, 2019 WL 859709 (D. Colo. Feb. 22, 2019)...................................11

*Wyo. v. U.S. Dep't of Interior*,
   674 F.3d 1220 (10th Cir. 2012) .................................................................................4

*Yang v. Mayorkas*,
   No. 20-cv-1806, 2021 WL 1200682 (D. Colo. Feb. 25, 2021)................................14

## STATUTES

COLO. REV. STAT. § 10-3-1115 ..............................................................................7, 10, 12

COLO. REV. STAT. § 10-3-1116 ..........................................................................7, 8, 10, 12

COLO. REV. STAT. § 18-13-119.5 .....................................................................................6

## RULES

Fed. R. Civ. P. 12(b)(1) .........................................................................................1, 3, 6

Fed. R. Civ. P. 12(b)(6) .........................................................................................1, 2, 6

## OTHER AUTHORITIES

*Black's Law Dictionary* (11th ed. 2019) ...........................................................................8

Restatement of Restitution § 1 cmt.b ..............................................................................14

## INTRODUCTION

RTP Roofing Co. ("RTP") performed roof repairs for several Colorado homeowners who made structural-damage insurance claims with State Farm Fire and Casualty Company ("State Farm"). State Farm paid each of those claims. Years later, RTP—which is not a State Farm insured and does not purport to act with any State Farm insured's authority or in his or her stead—has now sued State Farm, alleging that the labor rate State Farm used to estimate roofing-removal costs for three of those claims was too low. Each of RTP's claims for statutory bad faith, unjust enrichment, and declaratory and injunctive relief should be dismissed under Rules 12(b)(1) and 12(b)(6).

RTP has alleged no facts plausibly suggesting that it is entitled to relief on its claims. It alleges no facts suggesting that it is entitled to sue under Colorado's bad-faith statute, that State Farm acted in bad faith, or that State Farm was ever "enriched" by RTP. More fundamentally, however, RTP has not alleged—and cannot prove—that it was in fact injured by State Farm's purported conduct. It thus lacks standing to sue in this Court, and its claims must be dismissed.

## STATEMENT OF COMPLIANCE WITH PRACTICE STANDARD III.D.1

Pursuant to Section III.D.1 of the Court's Practice Standards, counsel for State Farm spoke by phone with all of RTP's counsel on September 17, 2021, and explained the bases for this motion. RTP's counsel indicated that RTP opposes this motion and that it believes this motion involves legal issues that must be resolved by the Court.

## BACKGROUND

RTP was hired by State Farm insureds to perform roofing repairs on properties damaged by hail in Sedalia, Parker, and Highlands Ranch, Colorado, respectively. Dkt. No. 1, Complaint, ¶¶ 40, 50, 57, 64. After the homeowners made claims to State Farm for their losses, State Farm

investigated, evaluated, and paid each of those claims, *see id.* ¶¶ 51-53, 58-60, 65-67, all pursuant to the terms of the applicable policy. The relevant loss-settlement terms provide:

    a.  ***We will pay the cost to repair or replace*** . . . the damaged part of the property . . . , subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, ***not to exceed the cost to repair or replace*** [that] part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you ***actually and necessarily spend to repair or replace the damaged part of the property***, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less . . . .

Exh. 1, Declaration of Kimberly Templeman ("Templeman Decl."), at Exh. K, at 22 (emphases added, other emphases omitted).[1] The policy thus limits State Farm's obligation to no more than the insured's cost to repair the damaged property. *Id.*

    RTP in this case alleges that, for each of the Sedalia, Parker, and Highlands Ranch properties it repaired, State Farm "unreasonably denied payment" of roofing-removal costs because it underestimated the tear-off labor rate. Compl. ¶¶ 41-49. In fact, the tear-off costs estimated and paid by State Farm were nearly identical to those very costs as requested by RTP:

    •  <u>**Sedalia Claim**</u>[2]: RTP sought $1,143.70 in roofing tear-off costs for the roof on the insured's house. State Farm estimated and paid $1,143.70 in tear-off costs for the same work. Templeman Decl. ¶¶ 11, 16.

---

[1] State Farm relies on the terms of the insurance contract for its arguments under Rule 12(b)(6). Under that rule, "[d]istrict courts may consider evidence beyond the pleadings where the document [in question] is central to the claims presented and its authenticity is not disputed by the parties." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 n.4 (10th Cir. 2020). Because RTP's statutory claim and its claim for declaratory and injunctive relief both rest on a purported breach of the insureds' policies, the court may consider the policies in assessing the sufficiency of those claims. State Farm's motion therefore should not be converted into a motion for summary judgment.

[2] At State Farm's request, counsel for RTP provided the claim numbers for the three insurance claims referenced in RTP's complaint. Exh. 2, Declaration of Jacob Kahn ("Kahn Decl.") ¶¶ 3-4.

- **Parker Claim**: RTP sought $1,514.75 in roofing tear-off costs. State Farm estimated and paid $1,514.48 in tear-off costs for the same work. *Id.* ¶¶ 22, 27.

- **Highlands Ranch Claim**: RTP sought $1,767.00 in roofing tear-off costs for the insured's house. State Farm initially estimated a slightly lower amount but later paid the amount sought by RTP. *Id.* ¶¶ 33, 36-37, 39.[3]

Not surprisingly, neither the insureds nor RTP disputed or complained about the amounts State Farm estimated and paid for this tear-off work during its handling of the claim. *Id.* ¶¶ 13, 24, 38. Likewise, RTP never suggested that its actual tear-off costs were higher than those amounts. *Id.*

## ARGUMENT

**I.     RTP's Claims Should Be Dismissed Under Rule 12(b)(1) Because RTP Lacks Standing to Assert Them.**

### A.     RTP Cannot Rest on Conclusory Allegations Under Rule 12(b)(1).

A defendant seeking dismissal under Federal Rule of Civil Procedure 12(b)(1) may "mount[] either a facial or factual attack" regarding the plaintiff's standing. *Baker v. USD 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020). While a facial attack "assumes the allegations in the complaint are true," a factual attack "goes beyond the allegations" and may be based on evidence outside the pleading. *Id.*[4] In response to a factual challenge, the plaintiff has the burden of *proving* that "it has standing to bring suit." *KW-2, LLC v. Asus Comput. Int'l*, 170 F. Supp. 3d 1340, 1342-43 (D. Colo. 2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). The plaintiff must establish standing by a preponderance of the evidence. *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003). RTP cannot meet its burden here.

---

[3] State Farm relies on the Templeman Declaration for its arguments under Rule 12(b)(1), which permits consideration of extra-pleading materials. *See infra* at 3. Thus, as it concerns Rule 12(b)(1), State Farm's motion likewise should not be converted into a summary judgment motion.

[4] The Court's discretion to consider additional documents under Rule 12(b)(1) does not typically "convert a Rule 12(b)(1) motion into a summary judgment motion." *Baker*, 979 F.3d at 872.

### B.     RTP Lacks Standing Because It Did Not Suffer Any Injury.

To sue in federal court, every plaintiff must have standing under Article III of the Constitution. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021). This means the plaintiff must have suffered an injury in fact that (1) "is concrete, particularized, and actual or imminent"; and (2) was caused by the defendant's alleged misconduct. *Id.*; *see also Wyo. v. U.S. Dep't of Interior*, 674 F.3d 1220, 1232-35 (10th Cir. 2012) (affirming dismissal of claims challenging federal regulation because plaintiffs failed to show they *in fact* lost revenues due to the regulation). The same requirements apply to claims arising under a statute, as there is an important difference between a "statutory cause of action" and "a plaintiff's suffering concrete harm because of the [purported] violation of [the] law." *TransUnion*, 141 S. Ct. at 2205. As discussed below, RTP has not alleged a viable cause of action. *See infra* at 6-15. But RTP's claims fail for an even more basic reason: RTP has not suffered *actual*, *concrete* harm from the alleged wrongful conduct.

RTP's theory—for it is no more than that—is that it was injured by State Farm's use of the default "demolition" labor rate, rather than the "skilled" labor rate, to estimate roofing-removal costs for the referenced insurance claims. Compl. ¶¶ 41-48, 52-56, 59-63, 66-70. According to RTP, this injury occurred because RTP allegedly hires "skilled workers" for roofing-removal work, *id.* ¶ 13, who purportedly command higher wages and require more workers' compensation insurance, *id.* ¶¶ 16-17. In other words, RTP asserts that it incurred higher costs to complete roofing-removal work than it received in payment for that work from State Farm's insureds.

To illustrate its supposed "injury," RTP points to three instances in which it performed roofing-removal work for State Farm insureds and allegedly was paid less than its costs for that work. *See id.* ¶¶ 50-70. For each claim, RTP (i) identifies the amount State Farm estimated and

paid for the roofing-removal work; (ii) purports to show that using the "skilled" labor rate would have increased the estimated cost of that work; and (iii) declares that, by using the default rate instead, State Farm "denied" RTP the difference. *See id.*

Yet the facts of these three claims tell a far different story than do RTP's conclusory allegations and the supposed cost differences (more than $9,000) pled in the complaint. State Farm's records show that, *in fact*, (1) RTP never disputed the prices State Farm estimated for the roofing-removal work; (2) RTP never disputed the labor rates State Farm used to generate those prices; and (3) RTP's own, independent cost estimates for the roofing-removal work—including the underlying labor rates—were almost *identical* to the cost estimates prepared by State Farm. Templeman Decl. ¶¶ 11-13, 22-24, 33-38. The only claim for which State Farm's and RTP's initial cost estimates were more than 30 cents apart was the Highlands Ranch claim, but that discrepancy disappeared when State Farm revised its estimate for roofing-removal costs to match RTP's:

| | Roofing-Removal Costs | | | Roofing-Removal Labor Rate | | |
|---|---|---|---|---|---|---|
| | RTP's Estimate | State Farm's Estimate | Difference | RTP's Estimate | State Farm's Estimate | Difference |
| *Sedalia Claim* | $1,143.70 | $1,143.70 | None | $52.20 | $52.20 | None |
| *Highlands Ranch Claim* | $1,767.00 | $1,767.00 | None | $57.00 | $57.00 | None |
| *Parker Claim* | $1,514.75 | $1,514.48 | $0.27 | $56.86 | $56.85 | $0.01 |

*See id.* ¶¶ 11, 22, 33, 36-37.[5] Importantly, **RTP used the default "demolition" labor rate on its estimates—_not_ the "skilled" labor rate it now says was more appropriate**. *See id.* ¶¶ 12, 23, 35.[6]

---

[5] The $0.01 difference in labor rates on the Parker Claim, which created a $0.27 difference in costs, is likely attributable to the rounding of decimals within the estimating software. *Id.* ¶ 22.

[6] RTP obviously was not bound to charge its customers the same prices that State Farm had estimated for repair work—nor did it. For example, while State Farm estimated a cost of $410.19 to replace the "Ridge cap" on the Sedalia Claim, RTP estimated a cost of $521.56 for that same

RTP's lack of injury is further confirmed by the fact that RTP was paid in full for the roofing-removal work from its repair-cost estimates after State Farm paid its insureds. Specifically, the insureds on all three claims sought payment of replacement cost benefits for the roofing-removal work after it was completed, and State Farm paid those amounts. *See id.* ¶¶ 16, 27, 39. RTP was directly involved in that process. During State Farm's handling of the Parker claim, for example, RTP's representative told State Farm that RTP's "*only* wish [was] to get payed [*sic*] for the work we are providing." *Id.* ¶ 26 (emphasis added). That is precisely what it got. RTP therefore cannot demonstrate an injury in its own right.[7]

Moreover, to the extent RTP asserts standing on the basis that it is now allegedly standing in the shoes of State Farm's insureds on each of the claims referenced in the complaint, that contention fails as well. State Farm received no indication of any purported assignments during its handling of the claims, *id.* at ¶¶ 18, 29, 41, nor has RTP alleged any such assignments in its complaint. RTP's claims therefore should all be dismissed under Rule 12(b)(1).

## II.   Alternatively, RTP's Claims Should Be Dismissed Under Rule 12(b)(6) Because RTP Has Not Alleged a Plausible Claim to Relief.

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Llacua v.*

---

work. *Id.* ¶ 14. Similarly, RTP expressed disagreements with several components of State Farm's estimate for the Parker Claim, but none regarding the labor rate for roofing-removal work. *See id.* ¶ 25. Instead, on all three claims, RTP and State Farm were in agreement as to those costs.

[7] In effect, RTP asks this Court to compel State Farm to pay more in roofing-removal costs than State Farm's insureds paid RTP for the same work. That request is contrary to Colorado public policy. The Colorado legislature, for example, has explicitly prohibited similar machinations by contractors in the claims process. *See* COLO. REV. STAT. § 18-13-119.5 (declaring as "abuse of property insurance" attempts by a contractor to submit a higher fee to the insurer than it "has agreed to accept from the insured" in order to obtain business from, or pay rebates to, an insured).

*W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be *facts*—not conclusory allegations—"from which [the court] may reasonably infer Defendant's liability." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). RTP's complaint fails to satisfy this threshold pleading standard.

> **A.  RTP Has Not Alleged a Claim Under Sections 1115 and 1116.**

Colorado's bad-faith statute permits "[a] first-party claimant . . . whose claim for payment of [insurance] benefits has been unreasonably delayed or denied [to] bring an action" for statutory damages. COLO. REV. STAT. § 10-3-1116(1). In this case, RTP has failed to allege facts suggesting that it is a "first-party claimant" or that State Farm unreasonably delayed or denied benefits.

> **1.  There Are No Facts Suggesting that RTP is a "First-Party Claimant."**

A "first-party claimant" is defined as an individual or legal entity "asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." COLO. REV. STAT. § 10-3-1115(1)(b)(I). In other words, the term is narrowly defined to include only (a) the insured or (b) a person or entity asserting an entitlement to benefits "on behalf of" the insured. RTP plainly is not the "insured" for the claims referenced in its complaint. Moreover, it alleges no facts suggesting that it is asserting an entitlement to benefits "on behalf of" any insureds.

> **a.  RTP Must Show that It is Acting in a Binding Representative Capacity to Qualify as a "First-Party Claimant."**

To proceed "on behalf of" an insured, RTP must allege facts suggesting that it is acting in a "representative capacity." That is, RTP must be acting "in a manner that would legally bind the . . . insured" to a judgment. Transcript of Directed Verdict Ruling, at 8:10-12, 8:23-9:4, and 11:13-18, *Sauter v. State Farm Fire and Cas. Co.*, No. 17-cv-33275 (Dist. Ct., Cnty. of Denver, Aug. 1, 2018) (attached at Kahn Decl., Exh. A). This requirement arises both from the plain meaning of

"on behalf of" and from the broader statute, which must be construed "to give consistent, harmonious, and sensible effect to all its parts," *Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 486 P.3d 250, 256 (Col. 2021).

To begin, because the statute does not define "on behalf of," that phrase must be given its "plain and ordinary meaning." *Id.* Ordinarily, "on behalf of" means "in the name of, on the part of, as the agent or representative of." *Behalf*, *Black's Law Dictionary* (11th ed. 2019). And "agent" and "representative," in turn, refer to one who is "authorized to act for or in place of another," such that the latter is bound by the former's actions. *Agent*, *Black's Law Dictionary* (defining "agent" to also mean "representative," and noting that agents "normally bind[]" their principals).

That the phrase "on behalf of" requires an authorized and binding representation is also confirmed by the larger statutory scheme. In particular, while there may be two possible claimants under Section 1115, only one may file suit, as the statute permits only "*an* action" by "*[a]* first-party claimant . . . whose *claim* for payment of benefits" allegedly has been delayed or denied. COL. REV. STAT. § 10-3-1116(1) (emphases added). It does not authorize "actions" (plural) by "any" or "all" first-party claimants. *See id.* Moreover, it provides that the "claim" for benefits that was delayed or denied must belong to someone ("*whose* claim for . . . benefits")—and it expressly refers to that owner as a singular owner ("first-party *claimant*"). In other words, the statute contemplates that *either* the insured *or* the person proceeding "on behalf of" the insured may bring suit—but not both. To sue "on behalf of" an insured, therefore, the plaintiff must have been "authorized to assert, and [have in fact] assert[ed]," the insured's claims in his or her stead. *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 305 P.3d 409, 411-12 (Colo. App. 2012) (discussing an "arrangement [that] relieved the insureds of any obligation to assert the[ir] claims themselves").

This requirement not only makes practical sense, but it is also necessary to "avoid[] . . . illogical or absurd results." *5 Star*, 486 P.3d at. Absent such a requirement, insurers would be subject to multiple—and potentially serial—lawsuits for the same purported violation.[8]

> **b.    RTP Has Not Alleged that It is Acting as a Binding Representative for Any Insured.**

RTP has not alleged any facts satisfying the statute's representative-capacity requirement. It asserts only that the payments it received for its work on the insureds' homes were impacted by the amounts State Farm paid under the policies. *See, e.g.*, Compl. ¶¶ 52-55. In short, RTP purports to be a de facto beneficiary of those policies. But third-party beneficiaries do not qualify as "first-party claimants" under Sections 1115 and 1116. *See Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-cv-2224, 2011 WL 3903074, at *12 (D. Colo. Sept. 6, 2011) (observing that if non-insureds could "seek[] benefits from [the insurer] as third-party beneficiaries of [the insured's] policy, the first-party element [of Sections 1115 and 1116] would not be met"). The distinction is critical; otherwise, the statute would permit anyone with an indirect interest in the policy benefits to sue for statutory damages. That cannot be right—and it isn't. As discussed above, if the plaintiff (like RTP here) is not an insured, it may sue under Section 1116 *only* if it has effectively replaced the insured as claimant, with the insured's express authority.

RTP has alleged no facts suggesting that it has effectively replaced the insureds on the three claims referenced in the complaint, or that the insureds "authorized [RTP] to assert [their]

---

[8] The statute's representative-capacity requirement is also in keeping with restrictions on so-called "third-party standing" in other contexts. In the constitutional arena, for instance, "one may not claim standing in [federal court] to vindicate the . . . rights of some third party" except where (among other things) "there is some genuine obstacle" preventing the third party from asserting those rights. *Singleton v. Wulff*, 428 U.S. 106, 114, 115-16 (1976).

claims" for them. *Larson*, 305 P.3d at 411. As RTP thus cannot legally bind any of the insureds to a judgment, *supra* at 7, it is not a "first-party claimant" within the meaning of the statute.

### 2.    RTP Has Not Alleged an Unreasonable Denial or Delay.

RTP has further failed to allege any violation of the bad-faith statute. While Sections 1115 and 1116 permit suit for an "unreasonabl[e] delay or den[ial]" of insurance payments, COLO. REV. STAT. §§ 10-3-1115(1)(a), 1116(1), RTP alleges no facts plausibly suggesting that State Farm delayed or denied any insurance payments here—let alone that State Farm did so "unreasonably."

### a.    RTP Has Not Alleged a "Denial" of Insurance Benefits.

RTP asserts repeatedly in its complaint that State Farm has "denied" payment of covered benefits. Compl. ¶¶ 3, 10-11, 23-24, 41. Not so. A "denial" of a claim for insurance benefits is a "rejection of [the] application for benefits." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). And RTP alleges no facts suggesting that State Farm "reject[ed]" any applications for benefits. On the contrary, RTP alleges that State Farm *paid* benefits for roofing work. *See, e.g.*, Compl. ¶¶ 41, 53. At most, RTP asserts that State Farm (supposedly) should have paid more than it did. *See id.* ¶¶ 19-20, 41, 48, 55-56, 62-63, 69-70. That is not a "denial" of benefits under Section 1115 or 1116. *See Soicher*, 351 P.3d at 568; *cf. Jenkins v. State Farm Fire and Cas. Co.*, 2017 IL App (1st) 160612-U, ¶ 24 (holding that State Farm did not "partially den[y]" a claim by applying too much depreciation because "[n]o part of [the] claim was actually denied").

### b.    RTP Has Not Alleged a "Delay" of Insurance Payments.

The only reference in the complaint to "delay" is the bare assertion that "State Farm unreasonably denied or delayed payment of insurance benefits." Compl. ¶ 85. RTP's conclusory say-so is not enough to avoid dismissal. *See Brooks*, 985 F.3d at 1281. RTP has alleged no facts

suggesting that State Farm engaged in conduct involving a purported "delay" under Section 1116.

The cases recognizing claims for a "delay" are inapt, as they typically have involved disputes that arose during the claim-handling process. For example, insureds have sued after making a settlement demand during claim-handling, *see Soicher*, 351 P.3d at 562-63; after the insurer allegedly failed to timely adjust the loss, *see Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-1773, 2018 WL 1993423, at \*3 (D. Colo. Apr. 27, 2018); or after the insurer disregarded key facts, *see Hampden Auto Body Co. v. Auto-Owners Ins. Co.*, No. 17-cv-1894, 2020 WL 550591, at \*1 (D. Colo. Feb. 4, 2020). Similarly, insureds have sued after one party has invoked an appraisal process, thereby delaying the claim's resolution. *See Wak Inc. v. Ohio Sec. Ins. Co.*, No. 16-cv-1191, 2019 WL 859709, at \*1 (D. Colo. Feb. 22, 2019).

RTP alleges no such circumstances here. There are no allegations about disputes during claim handling or that State Farm mishandled its claim investigation, took too long to complete it, or improperly invoked appraisal. On the contrary, RTP now appears to contend—years after the claims process concluded and the insureds were paid (and after RTP was paid, apparently in full, by the insureds)—that State Farm purportedly paid too little for roofing-removal work. *See* Compl. ¶¶ 51-70. That is not sufficient to allege a "delay" under Sections 1115 and 1116.

Statutory bad-faith claims, moreover, are "derivative" of breach-of-contract claims, *Johnson v. Am. Nat'l Prop. & Cas. Cos.*, No. 17-cv-2218, 2019 WL 463026, at \*5 (D. Colo. Feb. 6, 2019) (Martínez, J.), as they are "inextricably linked" with the insurance policy defining the benefits that are owed, *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1075 (D. Colo. 2019) (Martínez, J.). Thus, to establish a statutory violation here, RTP must allege that State Farm breached its insurance policies. *Brookshire Downs at*

*Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-871, 2019 WL 10946262, at *2 (D. Colo. Mar. 15, 2019) (Martínez, J.) (explaining that breach of contract is an "element" of the statutory claim for bad faith). RTP has failed to allege facts satisfying this threshold requirement.

Here, too, the complaint is effectively silent. The only allegation that even remotely references a purported breach is the conclusory assertion (which the Court may properly ignore) that State Farm "denies payments for benefits that are covered under the building owners' policies." Compl. ¶ 9. But the complaint does not identify any policy terms or explain how they purportedly were breached. As noted above, the policies limit recovery to *no more than* the insured's "cost to repair." *See supra* at 2. RTP does not allege any facts suggesting that State Farm paid less than its insureds' actual costs to repair. And it would be difficult for RTP to include any such allegations here, particularly with respect to the roofing-removal work, in view of State Farm's documented payments to its insureds for this work. *See supra* at 2-3, 6.

### c.     RTP Has Not Alleged "Unreasonable" Conduct.

Finally, RTP has failed to allege that State Farm's conduct was "unreasonabl[e]." COLO. REV. STAT. §§ 10-3-1115(1)(a), 1116(1). The reasonableness element is "determined objectively, based on proof of industry standards." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020). Here, there are no allegations plausibly suggesting that State Farm "deviated from" any such standards. *Marechal v. Safeco Ins. Co. of Am.*, No. 19-cv-2572, 2021 WL 4046415, at *9 (D. Colo. June 7, 2021), *adopting recommendation*, 2021 WL 3486382, at *2 (D. Colo. Aug. 9, 2021). Instead, the only plausible reading of RTP's complaint is that State Farm acted *in accordance with* industry standards, not contrary to them.

According to RTP, State Farm uses Xactimate, "the leading estimate software for

construction, including roofing work," to estimate repair costs. Compl. ¶ 42. And, per RTP, State Farm relies on the "default" roofing-removal labor rate as set by that "leading . . . software." *Id.* ¶¶ 43, 45, 48. Nothing about these allegations suggests that State Farm's conduct is objectively "unreasonable"; in fact, they suggest the exact opposite. Moreover, RTP's counsel has filed nearly identical complaints against many other leading insurance carriers in the District of Colorado, asserting that all of them allegedly use the same default setting in the same "leading . . . software."[9] RTP's allegations are hardly the makings of objectively unreasonable conduct.

In sum, RTP has alleged no facts suggesting that it is a "first-party claimant" or that State Farm "denied" or "delayed" payment of insurance benefits. And the facts it did allege, taken as true for this motion, show that State Farm's purported conduct was not "unreasonable." RTP's first (statutory) and third (declaratory judgment and injunctive relief) claims should be dismissed.

**B.     RTP's Claim for Declaratory Judgment and Injunctive Relief Should Be Dismissed for Additional, Independent Reasons.**

RTP's standalone claim for declaratory judgment and injunctive relief fails for several other reasons. With respect to the request for declaratory judgment, RTP's claim seeks to "resolve the same issues raised by other claims"—*i.e.*, the statutory claim. *Cypress Advisors, Inc. v. Davis*, No. 16-cv-1935, 2021 WL 1751158, at *4 (D. Colo. May 4, 2021). The declaratory judgment claim thus "serve[s] no useful purpose" and should be dismissed. *Id.*

---

[9] *See RTP Roofing Co. v. Travelers Cos., Inc.*, No. 1:21-cv-1747 (D. Colo.), Dkt. No. 1 ¶¶ 36-43; *Advanced Exteriors, Inc. v. Allstate Corp.*, No. 1:21-cv-1539 (D. Colo.), Dkt. No. 1 ¶¶ 33-40; *Advanced Exteriors, Inc. v. Liberty Mut. Grp., Inc.*, No. 1:21-cv-1814 (D. Colo.), Dkt. No. 1 ¶¶ 34-42; *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n*, No. 1:21-cv-1817 (D. Colo.), Dkt. No. 1 ¶¶ 39-49. (In deciding a motion to dismiss, the court "may look to documents subject to judicial notice," *Porter v. Ford Motor Co.*, 917 F.3d 1246, 1248 n.2 (10th Cir. 2019), including publicly filed records, *U.S. v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007).)

With respect to the request for injunctive relief, RPT's claim should be dismissed for the additional reason that RTP fails to allege a "real and immediate threat [of] similar injury in the future." *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 494 (10th Cir. 1998) (citation omitted). RTP's complaint speaks only of RTP's prior work; there are no allegations that RTP will work on any State Farm-insured properties in the near future. Thus, there is no basis for injunctive relief. *See Yang v. Mayorkas*, No. 20-cv-1806, 2021 WL 1200682, at *6 (D. Colo. Feb. 25, 2021) (noting that there must be "a substantial likelihood" of future injury).

### C. RTP's Unjust-Enrichment Claim Should Also Be Dismissed.

RTP's unjust-enrichment claim must also be dismissed because RTP did not, and cannot, plead a key element—namely, that it "conferred [a benefit] on the defendant." *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096-97 (Col. 1982) (en banc). To confer a benefit under Colorado law means to "give[] to [an]other possession of or . . . interest in money, land, chattels, or choses in action"; to "perform[] services beneficial to [the other] or at [its] request"; to "satisf[y the other's] debt or . . . duty"; or to "add[] to the other's security or advantage." *Id.* at 1097 (quoting Restatement of Restitution § 1 cmt. b (1937)).

Here, RTP does not allege that it gave anything to State Farm, that it performed a service for State Farm, that it has discharged one of State Farm's debts, or that it otherwise "advantage[d]" State Farm in any way. *Id.* The only "benefit" that RTP claims State Farm has received is the fact that it did not have to pay the difference between the "skilled" labor rate for tear-off work (which RTP now says State Farm should have paid) and the lower, "demolition" labor rate (which RTP alleges State Farm did pay). Compl. ¶ 89. State Farm, in other words, purportedly "benefitted" from paying less on the homeowners' insurance claims than what RTP believes it should have

paid. But State Farm did not receive this purported "benefit" from RTP. To the extent RTP conferred a benefit on anyone, it conferred it on State Farm's insureds by repairing their roofs.

Further, RTP cannot proceed with its unjust-enrichment claim because the subject matter of that claim—State Farm's alleged underpayment of insurance benefits—is governed by an express contract. It is well-established that "a party cannot recover [in] quasi-contract when an express contract covers the same subject matter." *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1268 (D. Colo. 2015) (quoting *Interbank Invs., LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003)). This rule applies just as forcefully when the contract is an insurance policy. *See, e.g., Lee v. Am. Fam. Mut. Ins. Co.*, No. 06-cv-2604, 2008 WL 2704823, at *6 (D. Colo. July 7, 2008).

Here, there is a complete overlap between the facts underlying RTP's unjust-enrichment claim and the subject of the express contracts at issue (State Farm's policies). Indeed, the gravamen of RTP's complaint is that State Farm allegedly did not pay what it owed under those policies. *See, e.g.*, Compl. at ¶ 9 (alleging denial of payment of "benefits *that are covered under the . . . policies*") (emphasis added). Just as none of State Farm's insureds could assert an unjust-enrichment claim based on these facts, neither should a contractor purporting to sue on the insureds' behalf be permitted to bring such a claim. RTP's claim for unjust enrichment should therefore be dismissed.

## **CONCLUSION**

State Farm respectfully requests that this Court dismiss RTP's action with prejudice.

Dated:  September 20, 2021

Respectfully submitted,

/s/   *Jacob L. Kahn*

Franklin D. Patterson
Hillary D. Patterson

PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado  80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA
LLP
70 West Madison Street, Suite 2900
Chicago, Illinois  60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700

*Counsel for Defendant State Farm Fire and
Casualty Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of September, 2021, I electronically filed the foregoing DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS PURSUANT TO RULES 12(b)(1) AND 12(b)(6) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/    *Jacob L. Kahn*