**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-01816-WJM-SKC

RTP ROOFING CO.,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**
**PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

---

Plaintiff RTP Roofing Co., through its attorneys, Daly & Black, P.C., and Gray LLC, respectfully files its response to the motion to dismiss its first amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) filed by Defendant State Farm Fire and Casualty Company. In support of its response, RTP would respectfully show the Court the following:

**INTRODUCTION**

1.     This is a class action alleging violations of Colorado Revised Statutes §§ 10-3-1115 and -1116 and unjust enrichment. RTP seeks, among other things, declaratory judgment and injunctive relief.

2.     State Farm moves to dismiss RTP's first amended complaint (the "Complaint") pursuant to Rules 12(b)(1) and 12(b)(6). Its Rule 12(b)(1) argument is one of standing; State Farm

1

contends that RTP lacks standing because it has not suffered actual, concrete harm from State Farm's alleged wrongful conduct. With regard to Rule 12(b)(6), State Farm argues that RTP has not stated a claim for relief for bad faith because (1) RTP is not a first-party claimant under the relevant statutes; and (2) RTP has not alleged an unreasonable denial or delay of benefits. State Farm also asks the Court to dismiss RTP's declaratory judgment cause of action and request for injunctive relief, as well as its unjust enrichment claim.

3.     For the reasons that follow, State Farm's motion should be denied.

## ARGUMENT AND AUTHORITIES

*Colorado Statutory Bad Faith*

4.     Colorado Revised Statutes Sections 10-3-1115 and -1116 establish a statutory remedy for insurance bad faith. *See Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 305 P.3d 409, 411 (Colo. App. 2012); *see also* COLO. REV. STAT. §§ 10-3-1115, -1116.

5.     Section 1115 provides, in pertinent part, that "[a] person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant." COLO. REV. STAT. § 10-3-1115(1)(a). The statute defines first-party claimant as "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." *Id.* § 10-3-1115(1(b)(I).

6.     Section 1116 is the remedial provision, providing that "[a] first-party claimant whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." *Id.* § 10-3-1116(1).

7.      Taken together, the relevant portions of Sections 1115 and 1116 expressly provide that if the insurer unreasonably delayed payment of a covered benefit, the claimant is entitled to an award of two times the covered benefit. *See Hansen v. American Family Mut. Ins. Co.*, 383 P.3d 28, 38 (Col. App. 2013), *rev'd on other grounds sub nom American Family Mut. Ins. Co. v. Hansen*, 375 P.3d 115 (Colo. 2016) (citing COLO. REV. STAT. §§ 10-3-1115, -1116). The Colorado Court of Appeals has recognized that while a claimant who proceeds under a *common law* bad faith theory may be required to establish damages caused by the delay or denial, a *statutory* bad faith claimant need not do so. *See id.* Rather, the measure of recovery for *statutory* bad faith is "the 'covered benefit' the payment of which was unreasonably delayed or denied." *Id.* Thus, the court of appeals dictated, under Section 1115's plain language, in order to recover for *statutory* bad faith under Colorado law, a claimant is only required to prove "that payment of an insurance *covered benefit* was unreasonably delayed or denied." *Id.*

8.      The General Assembly's intent in passing Sections 1115 and 1116 "was to create a statutory duty for insurers to refrain from unreasonable delay or denial of payment of any claim for benefits owed." *Larson*, 305 P.3d at 411 (citing COLO. REV. STAT. §§ 10-3-1115(1)(a)); *see also* COLO. REV. STAT. §§ 10-3-1116. The statutory standard of liability eschews the requirement at common law that a first-party claimant establish knowledge or recklessness on the insurer's part in order to succeed on a bad faith claim. *See Kisselman v. American Family Mut. Ins. Co.*, 292 P.2d 964, 973-74 (Colo. App. 2011). Instead, the duty is breached when the insurer had "no 'reasonable basis' to delay or deny the claim for benefits." *Id.* at 974 (citing COLO. REV. STAT. § 10-3-1115(1)(a), (2)).

9. The new statutory framework was intended to *expand* insurer liability, not limit it. *See id*. at 972. Indeed, the Speaker of the House, who sponsored the bill that eventually became Sections 1115 and 1116, described it as one that would "'*increase* the penalties on companies that unreasonably delay or deny payment'" of claims. *Kisselman v. American Family Mut. Ins. Co.*, 292 P.2d 964, 972 (Colo. App. 2011) (emphasis added, citation omitted) (quoting legislative history).

***Facts Relevant to RTP's Standing and Status as First-Party Claimant[1]***

10. RTP is a roofing contractor in the Denver metro area with more than 27 years of experience. (Exh. 1, ¶ 2; Dkt. # 15, ¶ 20) RTP frequently contracts with Colorado homeowners to perform work that is covered by the homeowner's property insurance policy. (Exh. 1, ¶ 4; Dkt. # 15, ¶ 21)

11. When RTP provides a customer with an estimate, it is RTP's practice to provide the customer with a document setting forth additional terms and conditions that apply if and when the customer engages RTP to perform the roofing work. (Exh. 1, ¶ 3; Exh. 1-A) Among the terms and conditions is: "Payment of the total price set forth on the face of this Agreement (the 'Contract Price'), plus the cost of all extra and changed work is due in full at the time of substantial completion of work, unless Customer has made other arrangements with RTP." (Exh. 1, ¶ 5; Exh. 1-A, ¶ 8)

12. In the course of performing work for insured homeowners, RTP regularly communicates with insurance companies on the homeowner's behalf regarding the claim. (Exh. 1,

---

[1] In light of the applicable burden, RTP relies on Exhibit 1, which verifies some of the factual allegations contained in the Complaint and includes some additional allegations, in opposition to the Rule 12(b)(1) motion. RTP relies on the allegations in the Complaint in opposition to the Rule 12(b)(6) motion.

¶ 6; Dkt. # 15, ¶ 3) Those communications often pertain to disputes about the benefits owed under the insurance policy. (Exh. 1, ¶ 6)

13. For at least the last ten years, RTP has contracted to perform – and has performed – roofing work for many Colorado homeowners insured by State Farm, including the three State Farm insureds whose claims are referenced in the Complaint in the above-captioned cause. (Exh. 1, ¶ 7; Dkt. # 15, ¶¶ 21, 29-42)

14. Naturally, part of the re-roofing process involves the tear-off of existing roofing materials. (Exh. 1, ¶ 8; Dkt. # 15, ¶¶ 6) Because it requires the same skill and care as installing roofing materials, tear-off is performed by roofers as opposed to laborers or another, less skilled trade. (Exh. 1, ¶ 8; Dkt. # 15, ¶¶ 6) Roofing contractors – including RTP – pay roofers the same wage regardless of whether the roofers are installing roofing material or tearing it off. (Exh. 1, ¶ 8; Dkt. # 15, ¶ 6)

15. It has been RTP's uniform experience that in adjusting its Colorado insureds' claims, State Farm refuses to pay the roofing labor rate for tear-off of roofing material. (Exh. 1, ¶ 9; Dkt. # 15, ¶ 21) Instead, State Farm will only pay a "demolition rate." (Exh. 1, ¶ 9; Dkt. # 15, ¶ 8) This is the labor rate that would be appropriate for taking a sledgehammer to a fire-damaged structure or removing kitchen countertops. (Exh. 1, ¶ 9; Dkt. # 15, ¶ 8) It is not appropriate, nor does it represent the market rate, for the tedious, dangerous process of removing roofing materials that is performed by the very same skilled laborers who install new ones. (Exh. 1, ¶ 9; Dkt. # 15, ¶ 8)

16. At least as early as approximately 2010, in the course of performing work for its customers who were State Farm insureds, RTP approached State Farm representatives on multiple

occasions to dispute the amount of benefits State Farm owed the insured under the policy for the tear-off of roofing materials, arguing that State Farm was wrongfully failing to pay the market rate, *i.e.*, the roofing labor rate. (Exh. 1, ¶ 10; Dkt. # 15, ¶ 22)

17. Each time RTP raised this issue and explained that the roofing labor rate should apply, State Farm informed RTP that State Farm does not pay the roofing labor rate for this type of roofing work for anyone, under any circumstances. (Exh. 1, ¶ 11; Dkt. # 15, ¶ 22)

18. As a result, RTP and – on information and belief – other roofing contractors, simply stopped including the roofing labor rate on their *own* estimates when performing work for State Farm insureds because any attempt to require State Farm to pay the roofing labor rate rather than the demolition rate during the claim process was futile. (Exh. 1, ¶ 12; Dkt. # 15, ¶ 23)

***Rule 12(b)(1) Motion***

19. The crux of State Farm's Rule 12(b)(1) argument, which mounts a factual attack against the Complaint, is that RTP lacks standing to bring suit because RTP cannot demonstrate by a preponderance of the evidence that it has suffered "*actual*, *concrete* harm from State Farm's alleged wrongful conduct." (Dkt. # 22, p. 9) State Farm says RTP's injury is "hypothetical" (Dkt. # 22, p. 9) and speculative. State Farm is wrong.

20. There is nothing hypothetical or speculative about RTP's injury at all. Put quite simply, RTP alleges that it was injured because it pays its roofers ***the same wage*** whether they are tearing off or installing roofing material, but State Farm – in adjusting Colorado insureds' claims – estimates and pays ***a lower labor rate*** for tear-off of roofing material than it does for installation. (Exh. 1, ¶¶ 7-12; Dkt. # 15) RTP contends that when State Farm is adjusting its insureds' claims, State Farm is obligated to estimate and pay ***the same labor rate*** for tear-off as it does for

6

installation. (Exh. 1, ¶¶ 7-12; Dkt. # 15). It contends that State Farm's failure to include the higher rate on its estimate is an unreasonable denial of the insured's claim for benefits and it brings suit under the Colorado bad faith statute as a first-party claimant.[2] (Dkt. # 15)

21. To support its argument that RTP was not injured, State Farm says – referring to the three homeowners' claims detailed in the Complaint – that its records show that RTP never disputed the tear-off numbers in State Farm's estimates; RTP never disputed the labor rates used to generate those numbers; and RTP's own estimates, including the underlying tear-off labor rates, were almost identical to State Farm's estimates.

22. The Complaint explains *exactly* why RTP did not raise the issue as to the three claims detailed in the Complaint and why it did not include the higher labor rate on its estimates. (Dkt. # 15, ¶¶ 20-23) It did not raise the issue because once State Farm made it clear it would not pay the appropriate, higher labor rate, RTP stopped including the higher rate on its *own* estimates despite the fact that it pays its roofers the same wage whether they are installing roofing material or tearing it off. (Exh. 1, ¶¶ 7-12; Dkt. # 15, ¶¶ 20-23)

23. State Farm appears to contend that RTP's lack of inclination to continue an exercise in futility somehow negates State Farm's obligation to pay benefits under the policy. If RTP only put X amount on its estimate, State Farm reasons, we couldn't possibly have owed our insured more than that. And, if neither the insured nor the insured's contractor complained about the numbers in the estimate or disputed the labor rate itself, State Farm says, there can be no injury.

24. First, it bears noting that the contract price reflected on RTP's estimates is not necessarily indicative of the amount charged or owed for the work performed. (Exh. 1-A, ¶ 8)

---

[2] RTP's status as a first-party claimant is addressed below in response to State Farm's Rule 12(b)(6) motion.

25.     Second, and more importantly, the policy simply does not support State Farm's argument.

26.     The loss settlement provision that applies to dwelling coverage says that State Farm will pay "the cost to repair or replace" the damaged property, except that until actual repair or replacement is completed, State Farm will pay only "*actual cash value*" not to exceed the cost to repair or replace the property. (Dkt. # 22-1, p. 119 (emphasis in original)) The policy's definitional section says:

> 1. "actual cash value" means the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair or replace such property, less a deduction to account for pre-loss depreciation. For this calculation, all components of this estimated cost including, but not limited to:
>    a. materials, including any tax;
>    b. labor, including any tax; and
>    c. overhead and profit;
>    are subject to depreciation.
>    The depreciation deduction may include such considerations as:
>    a. age;
>    b. condition;
>    c. reduction in useful life;
>    d. obsolescence; and
>    e. any pre-loss damage including wear, tear, or deterioration;
>    of the damaged part of the property.

(Dkt. # 22-1, p. 101)

27.     Thus, the policy requires State Farm to pay its insured at a minimum – regardless of whether the insured makes repairs or not – **actual cash value**, which is by definition "***the value of the damaged part of the property at the time of loss, calculated as the estimated cost to repair***

*or replace such property, less a deduction[, if any,] to account for pre-loss depreciation*,"[3] (Dkt. # 22-1, p. 101 (emphasis added)).

28.     Nothing in the policy limits **actual cash value** to what the insured *actually* spends to repair the damage or provides that "the value of the damaged part of the property at the time of loss" is *subjective*. For example, nothing in the policy suggests that if the insured happens to be a roofer and plans to complete repairs himself, State Farm is not obligated to pay him the actual cash value of the loss. To the contrary, the policy language is clear that actual cash value is *objective*. Indeed, as one federal court explained, after noting that the insured receives the actual cash value payment *before* repairs are completed, "If the amount actually spent [to make repairs] is less than the actual cash value, then the insured gets to keep the full amount of the actual cash value." *Central Mut. Ins. Co. v. White Stone Props., Ltd.*, No. A-12-CA-275-SS, 2014 WL 1092121, at *10 (W.D. Tex. Mar. 19, 2014).

29.     Similarly, the policy does not say that State Farm is relieved of its obligation to pay actual cash value unless and until the insured or the insured's contractor presents State Farm with a higher estimate or complains about the amount or rate on State Farm's estimate. It is the *insurance company's* duty to reasonably investigate and adjust a claim, period. *See generally Burgess v. Mid-Century Ins. Co.*, 841 P.2d 325, 328 (Colo. 1992). Nothing in the policy, statutes, or case law requires an insured to educate the insurer on the insurer's unreasonable actions as a prerequisite to a statutory bad faith suit. Likewise, there is no basis in the policy, statutes, or case law for the proposition that a statutory bad faith claimant must provide a competing estimate for

---

[3] Without conceding that depreciation of labor is permissible under Colorado law, RTP observes that the policy purports to authorize State Farm to depreciate labor (Dkt. # 22-1, p. 101) but State Farm chose not to do so in its repair estimates for the three claims detailed in the Complaint (Dkt. # 22-1, pp. 18, 55, 91).

the insurer to reject or disregard in order to establish the right to sue. The legislature could have easily instituted this type of scheme by including a notice requirement or mandatory alternative dispute resolution as a condition to bringing a statutory bad faith claim. But it did not. Indeed, State Farm could have built such a requirement into the policy it drafted in the form of a condition precedent. But it did not. The only issue in a statutory bad faith claim is whether the insurer denied benefits without a reasonable basis. *See Vaccaro v. American Family Ins. Group*, 275 P.3d 750, 760 (Colo. App. 2012).

30. State Farm's construction of the law would create policy provisions that do not exist and impose conditions precedent to coverage that lack support in the insurance contract, statutes, and case law. It would allow State Farm to simply scope $1.00 for any given line item on an estimate and hope it slips by the insured and the insured's contractor. The very purpose of the legislation is "to prevent unfair and deceptive practices by insurance companies." *Larson*, 305 P.3d at 412. State Farm's proffered construction runs squarely afoul of legislative intent and public policy.

31. In short, the policy is clear that **actual cash value** is *objective* and State Farm's obligation to pay the **actual cash value** of the insured's loss is *unwavering* and *independent* of the insured's actual cost, the amount of the insured's contractor's estimate, or whatever communications take place between the parties regarding the amount owed. And State Farm's unreasonable failure to pay what the policy owed – to the economic detriment of RTP – constitutes a concrete injury and confers standing for RTP to pursue its claims under the bad faith statute.

32. How much the insureds paid RTP for repairs, whether the insureds or RTP complained to State Farm about the estimates, and whether the fact that the numbers in RTP's

estimates matched State Farm's may certainly be relevant to the reasonableness inquiry. But in the insurance context, reasonableness is ordinarily a fact question for the jury. *See Vaccaro*, 275 P.3d at 760 ("[W]itness credibility and reasonableness under the circumstances are matters for the jury when … material facts are in dispute).

33.  State Farm further argues that RTP lacks standing to the extent that RTP alleges it is "standing in the shoes of State Farm's insureds." (Dkt. # 22, p. 7) As discussed below, an assignment is not required in order for a repair vendor to file suit against an insurer as a first-party claimant. *See Larson*, 305 P.3d 409 (Colo. App. 2012).

34.  State Farm's motion to dismiss pursuant to Rule 12(b)(1) should be denied.

*Rule 12(b)(6) Motion – Statutory Bad Faith*

35.  Next, State Farm moves to dismiss RTP's statutory bad faith cause of action for failure to state a claim. State Farm's argument that RTP's bad faith claims fail under Rule 12(b)(6) is twofold.

36.  First, State Farm argues that the Complaint does not allege facts suggesting that RTP is a first-party claimant who may bring a claim under Sections 1115 and 1116. This argument lacks merit.

37.  Section 1115 defines a first-party claimant as someone "asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." COLO. REV. STAT. § 10-3-1115(1)(b)(I).

38.  In 2012, the Colorado Court of Appeals considered as an issue of first impression whether a repair vendor who brings a claim against an insurer on behalf of an insured is a first-party claimant under Section 1115. *See Larson*, 305 P.3d at 409.

39. Like RTP, the plaintiff in the *Larson* case was a roofing company. *See id.* at 410. Larson contracted with four Allstate insureds to repair their roofs. *See id.* The contracts provided that repair costs would be paid from insurance proceeds and gave Larson authority to communicate with Allstate regarding the claims. *See id.* Larson and Allstate communicated regarding the amounts Allstate would pay for the claims and Larson began work. *See id.* Larson later determined that additional repairs were needed, completed the repairs, and invoiced Allstate for them. *See id.* Allstate refused to pay. *See id.*

40. Larson sued Allstate for unreasonable delay and denial of benefits. *See id.* The trial court granted summary judgment in favor of Allstate, finding that Larson was not a first-party claimant and was therefore not entitled to seek relief under Sections 1115 and 1116. *See id.*

41. On appeal, Larson contended that the trial court's summary judgment was error. *See id.* The Colorado Court of Appeals agreed, finding that the definition of first-party claimant in Section 1115 unambiguously included Larson. *See id.* at 411.

42. The court pointed out that by listing "broad categories of persons and entities that may 'assert[ ] an entitlement to benefits,' the legislature made it clear that persons and entities other than the insured are included as potential 'first-party claimants.'" *id.* at 412, belying State Farm's assertion in its motion that first-party claimant is "narrowly defined" (Dkt. # 22, p. 13). All that is required is that the person or entity assert an entitlement to benefits owed directly to or on behalf of the insured. *See id.*

43. State Farm says that "on behalf of" means "'in the name of, on the part of, or as the agent or representative of'" (Dkt. # 22, p. 13) and contends that in order to be a first-party claimant, RTP must be able to legally bind the insured to a judgment. It further contends that *Larson* stands

12

for the proposition that in order to be a first-party claimant, the contractor must have been authorized to assert and have, in fact, asserted the insured's claims in his or her stead, effectively replacing the insured as claimant.

44. State Farm's proffered construction of the term first-party claimant is not supported by *Larson*. In *Larson*, the court said that "on behalf of" means "in the interest of; as the representative of; for the benefit of." *Id.* Importantly, *Larson* explicitly rejected the notion that a contractual relationship or a right of subrogation is required in order for a repair vendor to assert a claim on behalf of an insured. *See id.* at 412-13. Likewise, despite nothing in *Larson* indicates that an assignment of the insured's rights under the policy is required in order for a repair vendor to qualify as a first-party claimant. *See generally id.* And, despite State Farm's allegation to the contrary, RTP does not claim it qualifies as a first-party claimant as a third-party beneficiary of the insurance contract. RTP has never alleged it is a third-party beneficiary of its State Farm customers' insurance contracts. Rather, RTP alleges that it falls within *Larson*'s purview as a contractor acting in the interest of, as the representative of, or for the benefit of State Farm insureds.

45. In *Larson*, the court of appeals found evidence that Larson had the authority to and did communicate directly with Allstate regarding Larson's customers' insurance claims sufficient evidence to establish *as a matter of law* that Larson was a first-party claimant under Sections 1115 and 1116. *See id.* The court did not, however, indicate that such evidence was the *only* evidence capable of establishing that a contractor is acting on behalf of its customer the insured. And, importantly, *Larson* was an appeal from a final summary judgment. *See id.* at 410. This is a Rule 12(b)(6) motion to dismiss. Evidence is neither required nor permitted.

46.     The Complaint alleges sufficient facts that, if accepted as true, state a plausible claim that RTP is a first-party claimant under Sections 1115 and 1116. Those facts are set forth in paragraphs 10-18 of this response.

47.     State Farm also argues that RTP cannot state a claim under Sections 1115 and 1116 because it has not alleged a denial or a delay, nor has it alleged any unreasonable conduct. This is simply inaccurate. Paragraphs 1-10, 21-22, and 27-42 of the Complaint describe how State Farm systematically and wrongfully denies its insureds covered benefits when it refuses to pay the roofing labor rate for tear-off. And, the Complaint not only alleges that the refusal is unreasonable but also explains why it is unreasonable.

48.     Finally, State Farm's attempt to conclusively establish the reasonableness of its payment of demolition labor instead of roofing labor for tear-off is better suited for a summary judgment motion or – even more so – for a jury.

49.     State Farm's Rule 12(b)(6) motion to dismiss as to RTP's statutory bad faith claim should be denied.[4]

***RTP's Other Claims***

50.     If the Court denies State Farm's motion as to RTP's statutory bad faith claims, it should also deny State Farm's motion as to RTP's request for declaratory judgment and injunctive relief. *See Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088-89 & n.7 (D. Colo. 2018) (Martinez, J.).

51.     The only argument State Farm makes as to declaratory judgment is that it seeks to resolve the same issue as the statutory bad faith claim therefore serves no useful purpose and

---

[4] Pursuant to Practice Standard III(B), RTP will file an alternative request for leave to replead in a separate motion.

should be dismissed. As for injunctive relief, State Farm contends that it is not a cause of action but a remedy and alleges that RTP's Complaint speaks only of prior conduct and does not allege continuing injury.

52. Paragraphs 8-10, 20-23, 27, and 64-66 of the Complaint allege that State Farm's wrongful is continuous and ongoing. In Paragraphs 65-66, RTP asks the Court to enter a declaratory judgment that State's Farm conduct violates Sections 1115 and 1116 and an injunction to prevent further harm. This relief is not available under Sections 1115 and 1116. *See* COLO. REV. STAT. §§ 10-3-1115, -1116.

53. RTP's unjust enrichment claim likewise survives dismissal. Paragraphs 60-61 allege that State Farm received the benefit of the difference in the roofing labor rate and the demolition rate at the expense of RTP and the class. RTP's contention that the unjust enrichment claim fails because a contract covers the same subject matter addressed by the claim likewise fails. An exception to the general rule precluding an unjust enrichment claim when an express contract covers the same subject matter applies when the party alleging unjust enrichment will have no right under an enforceable contract. *See Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Because RTP is not a party to the insured's contract with State Farm, the exception defeats State Farm's unjust enrichment argument.

54. State Farm's Rule 12(b)(6) motion as to RTP's requests for declaratory judgment and injunctive relief and unjust enrichment claims should be denied.

## PRAYER

55. For these reasons, RTP respectfully requests that the Court deny State Farm's motion to dismiss. RTP further requests all other relief to which it may show itself entitled.

15

Respectfully submitted November 18, 2021.

s/ Richard D. Daly
***Richard D. Daly***
Daly & Black, P.C.
John Scott Black
Melissa Waden Wray
2211 Norfolk Street, Suite 800
Houston, Texas 77098
Tel: 713.655.1405
Email: rdaly@dalyblack.com
jblack@dalyblack.com
mwray@dalyblack.com
ecfs@dalyblack.com (service)

and

/s/ William C. Gray
***William C. Gray***
Gray LLC
Nathalie E. Sar
17 N. State St., Suite 1600
Chicago, Illinois 60602
Tel: 312.967.3653
Email: bgray@grayllclaw.com
nsar@grayllclaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

   I certify that on November 18, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel:

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700


s/ Richard D. Daly
*Richard D. Daly*