IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:21-cv-01816-WJM-SKC

RTP ROOFING CO.,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

## DECLARATION OF SCOTT PONZIO

I, Scott Ponzio, declare and state as follows:

1. My name is Scott Ponzio. I am over 18 years old, of sound mind, and capable of making this declaration. I make this declaration on my own information, knowledge, and belief. The matters stated herein are true and correct and the facts stated herein are within my personal knowledge. I could testify competently to these matters and facts if asked.

2. I am an owner of RTP Roofing Company. RTP is a roofing contractor in the Denver metro area with more than 27 years of experience. I am a custodian of records for RTP.

3. RTP frequently contracts with Colorado homeowners to perform work that is covered by the homeowner's property insurance policy.

4. When RTP provides a customer with an estimate, it is RTP's practice to provide the customer with a document setting forth additional terms and conditions that apply if and when the customer engages RTP to perform the roofing work. A true and correct copy of the document is attached to this declaration as Exhibit 1-A. Exhibit 1-A is kept in the regular course of business and it is RTP's regular practice to keep such records. Exhibit 1-A was made at or near the time of the matters depicted on it by a person with personal knowledge.

5. Paragraph 8 of Exhibit 1-A pertains to payment terms. It provides, "Payment of the total price set forth on the face of this Agreement (the 'Contract Price'), plus the cost of all extra and changed work is due in full at the time of substantial completion of work, unless Customer has made other arrangements with RTP." (Exh. 1-A, ¶ 8)

6. In the course of performing work for insured homeowners, RTP regularly communicates with insurance companies on the homeowner's behalf regarding the claim. Those communications often pertain to disputes about the benefits owed under the insurance policy.

**EXHIBIT 1**

7. For at least the last ten years, RTP has contracted to perform – and has performed – roofing work for many Colorado homeowners insured by State Farm, including the three State Farm insureds whose claims are referenced in the Complaint in the above-captioned cause.

8. Naturally, part of the re-roofing process involves the tear-off of existing roofing materials. Because it requires the same skill and care as installing roofing materials, tear-off is performed by roofers as opposed to laborers or another, less skilled trade. Roofing contractors – including RTP – pay roofers the same wage regardless of whether the roofers are installing roofing material or tearing it off.

9. It has been RTP's uniform experience that in adjusting its Colorado insureds' claims, State Farm refuses to pay the roofing labor rate for tear-off of roofing material. Instead, State Farm will only pay a "demolition rate." This is the labor rate that would be appropriate for taking a sledgehammer to a fire-damaged structure or removing kitchen countertops. It is not appropriate, nor does it represent the market rate, for the tedious, dangerous process of removing roofing materials that is performed by the very same skilled laborers who install new ones.

10. At least as early as approximately 2010, in the course of performing work for its customers who were State Farm insureds, RTP approached State Farm representatives on multiple occasions to dispute the amount of benefits State Farm owed the insured under the policy for the tear-off of roofing materials, arguing that State Farm was wrongfully failing to pay the market rate, *i.e.*, the roofing labor rate.

11. Each time RTP raised this issue and explained that the roofing labor rate should apply, State Farm informed RTP that State Farm does not pay the roofing labor rate for this type of roofing work for anyone, under any circumstances.

12. As a result, RTP and – on information and belief – other roofing contractors simply stopped including the roofing labor rate on their *own* estimates when performing work for State Farm insureds because any attempt to require State Farm to pay the roofing labor rate rather than the demolition rate during the claim process was futile.

13. I declare under the penalty of perjury that the foregoing is true and correct.

Executed on the 18th day of November, 2021.

**[SIGNATURE PAGE FOLLOWS]**

2

**SIGNATURE PAGE FOR DECLARATION OF SCOTT PONZIO**

/s/ Scott Ponzio*
Scott Ponzio
*signed electronically by written permission*

## ADDITIONAL TERMS AND CONDITIONS

1. **WARRANTY.** RTP Roofing Co. ("RTP") warrants its labor and workmanship for the period set forth on the face of this Agreement in accordance with its standard limited warranty. A copy of RTP's standard limited warranty is attached or, if not, will be furnished upon request. RTP does not warrant or make any representation as to the roofing materials provided and installed by RTP. The warranty for roofing materials shall be limited to the manufacturer's warranty. RTP's liability is limited to repairs or leaks in the roofing and flashing installed by RTP resulting from defective workmanship of RTP for the warranty period. The warranty period shall commence with the date of substantial completion of the work. RTP SHALL NOT BE LIABLE FOR ANY INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR SPECIAL DAMAGES. The acceptance of this estimate by the Customer signifies Customer's agreement that this warranty shall be and is the exclusive remedy against RTP pertaining to the roofing work.

2. **WARRANTY TRANSFER.** RTP's limited warranty is intended solely for the benefit of Customer and is not transferable or assignable by Customer to a new owner without RTP's express written consent after Customer provides written notice to RTP and payment to RTP of a $25.00 transfer fee within 45 days after transfer of title to the new owner.

3. **INDUSTRY STANDARDS.** All materials and work shall be furnished in accordance with normal industry tolerances for color, variation, thickness, size, weight amount, finish, texture, and performance standards. Sometimes new miscellaneous sheet metal is installed (flashings, jacks, caps, etc.). It will not be painted unless specified within the scope of work.

4. **DEBRIS.** RTP will use its best efforts to clear roofing debris from the site. Some residue from roofing may remain which shall be the Customer's responsibility.

5. **ACCESS TO BUILDING.** Customer grants RTP access to roof and building at reasonable times for purposes of performing the work, inspection, evaluation, and/or repair. Customer shall allow access to the roofing structure to RTP or its designated agent if Customer asserts any damage or warranty claim; failure to allow such access will void the warranty. The Contract Price was computed utilizing driveways, walkways, and/or side access yard for trucks, dumpsters, and equipment while work is being performed. Neither RTP nor its suppliers will be liable for cracked driveways, as the trucks are light enough that any cracks are indicative of poor compacting or other deficiencies. If you have low hanging branches over your roof, some trimming may be necessary and RTP will cut back only those that limit its ability to do efficient, quality work. In some cases, especially if the shape of the tree is important, you may prefer to have the tree professionally trimmed before the job begins.

6. **\ELECTRICITY REQUIREMENTS.** RTP will need access to electricity during the reroofing process. If your home does not have a functional outside outlet, please bring this fact to RTP's attention so other arrangements can be made.

7. **ACCEPTANCE.** This proposal will expire in 45 days unless accepted by the Customer or extended in writing by RTP. This Agreement shall be voidable by RTP in the event it becomes financially impractical to perform the Agreement due to substantial labor or material costs increases, building code modifications or enforcement changes, or other circumstances beyond the control of RTP.

8. **PAYMENT TERMS.** Payment of the total price set forth on the face of this Agreement (the "Contract Price"), plus the cost of all extra and changed work is due in full at the time of substantial completion of work, unless Customer has made other arrangements with RTP. Interest will accrue at 1 1/2 % per month (18% per year) from the payment due date. A rebilling charge of $15.00 shall be assessed on all outstanding accounts. RTP shall be entitled to all costs, including attorney's fees, to collect all outstanding Customer accounts. The Contract Price and acceptance is conditioned on the shingles being roof loaded by the roofing material supplier and access to the roof edge for tear-offs.

9. **CANCELLATION/ CHANGE ORDERS.** If this agreement is cancelled by Customer after the rescission period allowed by law but prior to commencement of work and supply material, Customer shall pay a $200 cancellation fee. Change orders resulting in materials being reordered or restocked are subject to a restocking fee equal to 15% of the total Contract Price. Any extra work or deviation from the specifications described on the face of this proposal involving extra costs will be billed as an extra.

10. **CONDITIONS.** The Contract Price is conditioned on the roof deck being solid wood, not spaced sheeting, wood shingles or insulation. Replacement of deteriorated decking, facing boards, roof flashing, vents, or other materials, unless specifically stated in this Agreement, are not included in the Contract Price and will be charged extra on a time and material basis. RTP will notify Customer of such conditions and the estimated cost of repair. RTP is not responsible for (a) installing chimney counter flashing; (b) leaks caused from lack of chimney counter flashing; (c) non-roofing related leaks from chimney, skylights, solar panels, coolers, windows, siding, or gutters; (d) moisture damage due to inadequate ventilation; (e) leaks or damage caused from ice dams; (f) damage caused by settlement of structure or buckling or cracking of roof deck, walls, or foundation; (g) nails penetrating exposed ceiling or roof decks; (h) holes cut into exposed ceiling, or holes cut into areas for attic vents; (i) damage to structure or contents during ordinary loading and application of shingles; (j) damage caused by subsequent alterations or repairs done by others; (k) rebuilding skylight curbs or replacing skylight attic fans, caps, heater vent caps, or chimney caps; (l) adequate drainage or ponding, or (m) structural integrity of the roof deck or the building on which roofing is to be installed. Customer is responsible for all bee or wasp hive removal. Customer shall notify RTP of any exposed ceilings or areas with no attic space or open eaves. RTP assumes no responsibility for structural integrity of the roof deck or the building on which the roofing is to be installed. Customer represents all structures to be in sound condition capable of withstanding normal roofing conditions and operations.

11. **GUTTERS & DOWNSPOUTS.** If gutters and/or downspouts are to be removed to facilitate a re-roof, RTP shall not be held responsible for damage caused by removal and/or re-installation of gutter and/or downspouts.

12. **TEAR OFF & INTERIOR DAMAGE.** Re-roofing may cause vibration and dust or debris to fall into the interior. Customer agrees to remove or protect property directly below the roof to minimize potential interior damage. This includes removing breakable items (mirrors, pictures, small shelves, etc.) from interior walls. RTP shall not be responsible for disturbance, damage, clean-up or loss to property that was not removed or protected. Detailed cleaning in the attic space and garage, if ceiling is not finished, is Customer's responsibility. Also any lawn furniture, grills, umbrellas or outdoor items should be moved or stored as roofing materials may fall on them and cause damage during the tear off phase.

13. **NOTICE OF LEAKS.** RTP and Customer are committed to acting promptly so that roof leaks are not a source of potential interior mold growth. Customer will make periodic inspections of water intrusion and act promptly, including notice to RTP, if Customer believes there are roof leaks. RTP is not responsible for indoor air quality. Customer shall hold harmless and indemnify RTP from claims arising out of or relating to property damage, personal injury, illness, allergic reactions, disease and/or death resulting from the occurrence / exposure to interior mold, mildew or fungi.

14. **HAZARDOUS MATERIAL.** The Contract Price and scope of work are based upon RTP not encountering any asbestos or other hazardous materials. RTP shall stop work and notify the Customer in writing if known or suspected hazardous material is discovered by RTP. Customer shall be responsible for having hazardous materials removed or rendered harmless before RTP resumes work. RTP shall be entitled to reasonable compensation for additional expenses incurred due to encountering any hazardous materials. To the fullest extent permitted by law, Customer shall indemnify and hold harmless RTP, its agents, officers, directors and employees, from and against any and all claims, damages, losses, costs and expenses, whether direct or indirect, including, but not limited to, attorney's fees, costs, and expenses arising out of or relating to RTP'S performance of the work in any area affected by hazardous materials.

15. **SUCCESS AND ASSIGNS.** This Agreement shalt be binding upon and inure to the benefit of RTP, Customer and their heirs, successors, and assigns.

16. **ENTIRETIES.** This Agreement constitutes the entire Agreement between the parties. No modifications of this Agreement shall be binding unless in writing and signed by both parties.

17. **SEVERABILITY.** If any provision of this Agreement is found to be unlawful or unenforceable for any reason, this Agreement shall be interpreted and construed without reference to such provision, and the balance of the Agreement shall remain in full force and effect.

18. **DISPUTES.** If a dispute arises between the parties with respect to any matters or questions arising out of or relating to this Agreement or the breach thereof, such dispute, other than collection matters which may be handled through arbitration or normal collection procedures, shall be decided by arbitration administered by and in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association and must be initiated no later than two (2) years after RTP completed the roof installation. This Agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in any Court having jurisdiction thereof. The prevailing party shall be entitled to recover its attorney's fees, costs, and disbursements in addition to any other relief sought or awarded.

**EXHIBIT 1-A**