**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-1816-WJM-SKC

RTP ROOFING CO.,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND GRANTING PLAINTIFF'S MOTION TO REPLEAD**

---

Plaintiff RTP Roofing Co. ("RTP" or "Plaintiff") sues Defendant State Farm Fire and Casualty Company ("State Farm" or "Defendant") for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116, unjust enrichment, and a declaratory judgment that Defendant's insurance-payment practices violate §§ 10-3-1115 and -1116. Plaintiff seeks monetary damages on behalf of itself and those similarly situated, and to permanently enjoin Defendant from continuing the insurance-payment practices that Plaintiff claims violate §§ 10-3-1115 and -1116.

Currently before the Court is Defendant's Motion to Dismiss (ECF No. 22) and Plaintiff's Motion to Replead (ECF No. 31). For the reasons explained below, both motions are granted.

## I. LEGAL STANDARD

A motion under Federal Rule of Civil Procedure 12(b)(1) is a request for the court

to dismiss a claim for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff generally bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the court lacks subject-matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).

There are two types of motions to dismiss for lack of subject-matter jurisdiction: facial attacks and factual attacks. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack questions merely the sufficiency of the pleading. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, the court takes the allegations in the complaint as true, as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* If those allegations establish a federally cognizable claim, jurisdiction exists. *Id.*

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court[,] '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). On a factual attack, no presumption of truthfulness applies to the complaint's allegations. *Holt*, 46 F.3d at 1003. Instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject-matter jurisdiction does or does not exist. *Id.* In making

its decision, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject-matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *See Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (stating that a dismissal based on lack of standing should be without prejudice); see also Fed. R. Civ. P. 41(b).

## II. BACKGROUND[1]

### A.   RTP IS Contracted to Repair the Roofs of State Farm Insureds

Plaintiff RTP is a roofing contractor based in Colorado. (ECF No. 15 at 5 ¶¶ 18, 20.)  Typically, when a homeowner requires roof repairs covered by insurance, the contractor works directly with the insurance company once the homeowner has made a claim.  (*Id.* at 1 ¶ 3.)  This process includes the preparation of materials and labor cost estimates by both the roofing contractor and the insurance company.  (*See* ECF No. 22-1 at 39, 64–65, 67; ECF No. 25 at 4 ¶ 12.)  When a structure must be re-roofed due to damage, existing roofing materials must first be removed (ECF No. 15 at 2 ¶ 5); RTP asserts this "tear-off" work "requires the same skill and care as installing roofing materials" and must, therefore, be performed by the same skilled (and more expensive) laborers it employs to install roofing materials.  (*Id.* at 2 ¶ 6.)  Defendant State Farm is

---

[1] The following facts are undisputed unless attributed to a party or otherwise noted.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

3

an insurance company based in Illinois.  (*Id.* at 5 ¶ 18.)  State Farm provides homeowners' insurance in Colorado and, according to RTP, controls the largest share of the Colorado market.  (*Id.* at 2 ¶ 7.)   According to RTP, over the last 10 years, it has frequently performed roofing work for State Farm insureds.  (*Id.* at 5 ¶ 21.)

RTP notes three specific instances of roofing work it performed in Sedalia, Highlands Ranch, and Parker, Colorado, for homeowners insured by State Farm.  (*Id.* at 7–8 ¶¶ 29–42.)  For each instance raised by RTP, both RTP and State Farm estimated the labor costs for the removal of existing roofing materials using the lower, demolition rate. (ECF No. 22 at 10; ECF 25 at 7 ¶ 22.)  For its part, RTP acknowledges its labor estimates used the demolition rate but explains that it uses this rate when performing work for homeowners insured by State Farm only because State Farm has consistently refused to pay more than the skilled-labor rate for tear-off work.  (ECF 25 at 7 ¶ 21–22.) RTP does not assert that the tear-off work it performed for State Farm insureds was uncompensated or that its costs to perform tear-off work exceed what it charged insureds using the demolition rate prescribed by State Farm.  (*See* ECF No. 15.)  Nor does RTP assert or provide facts suggesting that other insurance companies or their customers pay the higher skilled-labor rate for roofing tear-off work.[2]  (*See* ECF No. 15; ECF No. 25-1.)

---

[2] In fact, State Farm cites cases pending in this District asserting similar allegations against other insurance companies providing homeowners' insurance in Colorado.  (*See* ECF No. 33 at 5 n.2 (citing cases).)  The complaints in each case include the allegation that roofers began using the demolition rate in their estimates due to the insurers' refusal to pay the skilled-labor rate.  *RTP Roofing Co. v. Travelers Cos., Inc.*, No. 21-cv-1747 (D. Colo.), ECF No. 19 ¶¶ 6, 24–25; *Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*, No. 21-cv-1539 (D. Colo.), ECF No. 22 ¶¶ 7, 23–24; *Advanced Exteriors, Inc. v. Liberty Mut. Grp., Inc., et al.*, No. 21-cv-1814 (D. Colo.), ECF No. 30, ¶¶ 6, 37–38; *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n, et al.*, No. 21-cv-1817 (D. Colo.), ECF No. 22 ¶¶ 6, 22–23.

4

According to RTP, State Farm's refusal to pay the appropriate skilled-labor rate has caused other roofing contractors in Colorado to change their labor estimation practices and accept less money for roof tear-off work than they otherwise would. (ECF No. 15 at 5 ¶ 23.) As such, RTP seeks certification of a class under Federal Rule of Civil Procedure Rule 23(b)(3) consisting of "All persons or entities who performed roofing work for a State Farm insured in connection with a claim for roof damage covered under a State Farm insurance policy and were denied payment of the roofing labor rate for removal of roofing materials by State Farm in the period of July 2, 2019, to the present." (ECF No. 15 at 8 ¶ 44.)

## B. Relevant Policy Language

The policy states, in relevant part:

> [State Farm] will pay the cost to repair or replace . . . the damaged part of the property. . . , subject to the following: (1) until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, . . . not to exceed the cost to repair or replace the damaged part of the property[.]

(ECF No. 22-1 at 119.)

## III. ANALYSIS

### A. Nature of the Jurisdictional Attack

The Court first considers whether Defendant brings a facial or factual attack for lack of subject-matter jurisdiction. Both parties consider Defendant's jurisdictional attack as factual (*see* ECF No. 22 at 8; ECF No. 25 at 4 n.1), and the Court agrees. Defendant attacks the allegations in Plaintiff's Complaint and supports the Motion to Dismiss with extrinsic evidence (*see* ECF Nos. 22-1, 15-2, 21-1). *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003) (noting that the

5

defendants' attack was a factual one, as they challenged not just the plaintiffs' allegations of jurisdiction but also the facts underlying those allegations). Accordingly, the Court will consider facts outside the pleadings without converting the Motion to Dismiss into one for summary judgment. *See Holt*, 46 F.3d at 1000–03; *see also Stuart*, 271 F.3d at 1225. In addition, the Court will not "presume the truthfulness of [Plaintiff's] factual allegations." *Holt*, 46 F.3d at 1003.

**B.    Standing**

For a court to have subject-matter jurisdiction, a plaintiff must have standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). At its "irreducible constitutional minimum," standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must suffer an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* Second, the injury must be traceable to the challenged action of the defendant. *Id.* Third, it must be likely that the injury will be redressed by the relief requested. *Id.* Standing is determined as of the time the action is brought. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283–84 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983)). To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Id.* Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Id.* (citation omitted). However, the threatened injury must be "certainly impending" and not merely speculative. *Id.* (citation omitted). A claimed injury that is

contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). To seek retrospective relief, the plaintiff "satisfies the 'injury in fact' requirement if [it] suffered a past injury that is concrete and particularized." *Id.*

In this case, Plaintiff seeks both retrospective (monetary) and prospective (injunctive) relief. The Court considers them in turn.

    1.    <u>Standing to Seek Damages</u>

In its Motion to Dismiss, Defendant argues that Plaintiff has no standing to seek damages because it has not been harmed (ECF No. 22 at 8–12). Defendant's argument rests on the assertion that Plaintiff's alleged injury is merely conjectural. (*Id.*) As Defendant sees it, Plaintiff has been paid in full—based on its own estimates and bills to its customers—for the work it performed. (*Id.*) Defendant argues that Plaintiff's theory of injury relies on a string of hypotheticals: If Defendant used the skilled-labor rate for tear-off in its estimate, then Plaintiff would have also used the higher rate. And if Plaintiff had charged the higher rate, its customers would have paid it, resulting in a larger reimbursement from Defendant to insureds. (*Id.* at 12.) Accordingly, Defendant contends that Plaintiff does not have standing to sue, and Plaintiff's claims should be dismissed for lack of subject-matter jurisdiction. (*Id.*)

In response, Plaintiff argues its injury is legally cognizable because, under Defendant's own policy, Defendant is obligated to pay the "actual cash value" of the damaged property, which is not dependent on what Plaintiff puts in its estimates or what insureds pay to repair or replace their covered property. (ECF No. 25 at 9 ¶ 28.) Plaintiff argues that Defendant's obligation to pay the objective actual cash value of insureds' lost or damaged property is "unwavering" and "independent" of the "insured's

7

actual cost, the amount of the insured's contractor's estimate, or whatever communications take place between the parties regarding the amount owed."[3]  (*Id.* at 10 ¶ 31.)

Giving due consideration to the parties' competing contentions and arguments on this issue, the Court concludes that Plaintiff lacks standing because it has failed to demonstrate that it has suffered an injury in fact.  As Defendant correctly points out, Defendant's policy expressly limits any payment based on "actual cash value" to the "cost to repair or replace the damaged part of the property" (ECF No. 22-1 at 119; ECF No. 33 at 7), and Plaintiff fails to present evidence that either its costs to perform removal work or the amount charged to its customers exceeded its own estimates. (ECF No. 33 at 5.)

Plaintiff correctly points out that damages is not an element of a Colorado statutory bad-faith claim, *Vaccaro v. Am. Family Ins. Grp.*, 275 P.3d 750, 760 (Colo. App. 2012), but this contention is unresponsive to Defendant's arguments.  More importantly, the Court has an independent obligation to ensure that it has subject-matter jurisdiction over an action, and to abstain from issuing advisory opinions.  *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1376 (10th Cir. 2011).  As the Supreme Court recently reiterated, in federal court, a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right."  *TransUnion*

---

[3] Plaintiff also suggests in passing that it might have charged more than its estimated amounts under the terms of its contracts with customers insured by Defendant (ECF No. 25 at 7 ¶ 24).  A cursory argument such as this one, not meaningfully developed by any analysis or citation, is deemed waived and will not be considered further by the Court.  *United States v. Hunter*, 739 F.3d 492, 495 (10th Cir. 2013).

8

*LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).  In all cases, the Court has the "responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III."  *Id.*

### 2. Standing to Seek Injunctive Relief

Defendant does not address Plaintiff's standing to seek prospective relief in its Motion to Dismiss; however, Defendant argues that Plaintiff fails to allege it is suffering a continuing injury or faces a real and immediate threat of being injured in the future.  (ECF No. 22 at 19.)  For its part, Plaintiff argues that it alleges in its First Amended Complaint (ECF No. 15) that Defendant's wrongful conduct is "continuous and ongoing" and seeks an injunction to prevent future harm.   (ECF No. 25 at 15 ¶ 52.)

Plaintiff does not allege that it charges customers for roof tear-off work—or intends to charge them in the future—based on the skilled-labor rate it claims is appropriate.  Nor does it allege ever having done so.[4]  Therefore, much like the alleged past damages, Plaintiff's alleged future damages are merely hypothetical.  Plaintiff's speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by Defendant at that higher rate is beyond the bounds of this Court's jurisdiction. *Tandy*, 380 F.3d at 1283–84 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

### 3. Class Action Allegations

Finally, the fact that Plaintiff brought this lawsuit as a putative class action does

---

[4] The closest Plaintiff comes to such an allegation is paragraph 22 of the First Amended Complaint (ECF No. 15) and paragraph 11 of the Declaration of Scott Ponzio (ECF No. 25-1), one of Plaintiff's owners.  If that were the case, Plaintiff's contention that it has lost revenue as a result of Defendant's refusal to pay the skilled-labor rate would be plausible.  Given Defendant's factual attack on the Court's jurisdiction, however, Plaintiff's minimal evidence cannot carry its burden of proving this Court's authority to adjudicate its claim.  *See supra* Section III.A.

not save its claims.  It is well-established that a named plaintiff of a class must individually and independently have standing, and that such a putative class representative cannot rely on potential class members' injuries to satisfy his burden. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) ("[T]he named plaintiffs must allege an actual injury, not an 'injury that has been suffered by other unidentified members of the class.'" (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016))).

Based on the foregoing, the Court finds that Plaintiff lacks standing because it has not demonstrated it suffered an injury in fact.  Accordingly, its lawsuit must be dismissed for lack of subject-matter jurisdiction.[5]

## C. Plaintiff's Motion to Replead

In its Motion to Replead, Plaintiff requests that "[t]o the extent the Court believes State Farm's motion is meritorious and finds re-pleading necessary and/or appropriate, RTP respectfully requests the opportunity to further amend its pleading." (ECF No. 31 at 2 ¶ 3.)  Plaintiff argues that, under Rule 15(a) and related precedent, a district court's refusal to permit amendment "is generally only justified in the case of undue delay, undue prejudice to the opposing party, bad faith or a dilatory motive, failure to cure deficiencies by amendments the court has previously allowed, or futility." (ECF No. 31 at 2 ¶ 4 (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).)  Plaintiff

---

[5] Because the Court finds that Plaintiff lacks standing, it need not evaluate and does not consider the parties' arguments concerning whether Plaintiff has failed to state a claim for relief.

10

further points out that this Court has never previously noted a deficiency in its pleading or granted a motion to amend.  (*Id.* at 2 ¶ 5.)

Defendant responds that Plaintiff has failed to adhere to the Local Rules and Revised Practice Standards of this Court and, in doing so, has also failed to provide the Court and Defendant with adequate notice of the basis of its proposed amendment. (ECF No. 34 at 4.)  The Court notes that Plaintiff's failure to familiarize itself with its Revised Practice Standards resulted in its first Motion to Replead being stricken.  (ECF No. 27.)  Plaintiff subsequently refiled its motion after complying with its obligation to meet and confer with defense counsel.  (*See* ECF No. 34 at 3.)  Defendant also argues that the fact that Plaintiff has already amended its complaint once weighs against allowing further amendment, because Plaintiff has already had two opportunities to file an adequate pleading.  (ECF No. 34 at 6.)

Plaintiff is correct that its prior amendment, which was made as a matter of course under Rule 15(a)(1)(B), is of no moment.  As the undersigned explained when presented with the same argument, "[w]hen it comes to the number of times a party has attempted to plead a claim, the relevant question is, usually, whether the party 'fail[ed] to cure deficiencies by amendments previously allowed.'" *Villalobos v. Vision Graphics, Inc./Eagle:xm Benefit Plan*, 2019 WL 1098971, *2 n.2 (D. Colo. Mar. 8, 2019).  Here, as in *Villalobos*, the Court has not previously noted a deficiency and allowed amendment.

Where Defendant has a point, however, is Plaintiff's failure follow the Local Rules and Revised Practice Standards of this Court.  Despite the clear directives in Local Rule 15.1(b) and Revised Practice Standard III.E, Plaintiff failed to attach as exhibits either a clean copy of their proposed amended pleading or a redline comparing that proposed

amended pleading to the currently operative complaint.  *Cf. id.* (discussing defendant's objection to third-party plaintiff's proposed amended claim).  Without Plaintiff's proposed amendments, it is difficult for either the Court or Defendant to assess whether further amendment would be futile.

Still, the Court cannot definitively conclude that there are no set of facts Plaintiff might be able to plausibly allege to cure the significant jurisdictional problem identified by Defendant.  Therefore, and solely in the interest of justice, the Court will overlook Plaintiff's second failure to comply with Local Rules and its Revised Practice Standards and permit Plaintiff to file a second amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendant's Motion to Dismiss (ECF No. 22) is GRANTED;

2. Plaintiff's First Amended Complaint (ECF No. 15) is DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction;

3. Plaintiff's Motion to Amend (ECF No. 31) is GRANTED;

4. Plaintiff shall file a Second Amended Complaint by no later than **June 21, 2022**; and

5. Defendant shall file its Answer or other responsive pleading by no later than **July 8, 2022**.

Dated this 8th day of June, 2022.

BY THE COURT:

_____
William J. Martínez
United States District Judge