**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-01816-WJM-SKC

RTP ROOFING CO.,

     Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

     Defendant.

---

**SECOND AMENDED COMPLAINT AND JURY DEMAND**

---

Plaintiff, RTP Roofing Co. ("RTP" or "Plaintiff"), through its attorneys, Daly & Black, P.C., and Gray LLC, respectfully submits the following Second Amended Complaint and Jury Demand:

**INTRODUCTION**

1.     This case is brought under Colorado Revised Statutes §§ 10-3-1115 and -1116, which prohibit an insurance company from unreasonably denying or delaying payment of insurance benefits. Defendant, State Farm Fire and Casualty Company ("State Farm" or "Defendant"), has denied the admittedly-owed benefit of the required labor for tear-off and removal of damaged roofing material by refusing to pay the correct labor rate to perform such work.

2.     On each insurance claim for which RTP and the Class (defined below) is bringing this lawsuit, State Farm has admitted that the benefit is owed, but instead of paying the correct,

reasonable amount for the roofing material tear-off — roofing labor or "RFG" — State Farm has unreasonably applied a reduction to the labor rate, paying instead the much cheaper, and incorrect, demolition labor rate, or "DMO."

3. The use of DMO for tear-off is a denial of the correct and owed labor rate — RFG. That denial has led to a loss of revenue to RTP and the Class. The loss of revenue that RTP and the Class would otherwise receive, but for the denial, is a concrete harm.

4. This loss of revenue is easily calculated by multiplying (i) the size of the roof by (ii) the difference between the improper DMO labor rate and the correct RFG labor rate.

5. In other words, Plaintiff alleges: (i) State Farm has admitted it owes the benefit of roofing labor (including tear-off) in all claims at issue in this action; (ii) State Farm has underpaid for tear-off labor by using the incorrect labor rate — DMO instead of RFG — for each of those claims, *i.e.*, a denial of the full tear-off labor benefit; and (iii) that denial has led to a concrete harm, *i.e.*, a loss of revenue that RTP otherwise would have received but for the denial.

6. This arbitrary short-changing is widely known among roofing contractors. After years of attempting to make State Farm change its unfair practices to no avail, RTP (and other contractors) realized that such attempts were futile. RTP and others could not simply refuse to work on State Farm claims because it would eliminate a material source of business in a state where the vast majority of roof replacements are performed in connection with insurance claims. The choice was no choice at all. RTP and the Class could either concede the unlawful calculation and underpayment by State Farm or risk quickly going out of business.

7. Collective action is the only way to compel State Farm to stop its wrongful practice of denying RFG labor for roofing tear-off work. This is the exact kind of unlawful

behavior that is best suited for correction by a class action and is the only way to hold State Farm accountable.

## COLORADO BAD FAITH LAW

8. C.R.S. §§ 10-3-1115 and -1116 allow a "first-party claimant" to recover "reasonable attorney fees and court costs and two times the covered benefit" when an insurance company unreasonably delays or denies payment of insurance benefits. Under § 10-3-1115(1)(b)(I), a "first-party claimant" means "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." Under the law, a litigant need not have a contractual relationship with the insurance company or be the assignee of an insured's claim to bring a statutory bad faith claim as a "first-party claimant."

9. Accordingly, claims for statutory bad faith may be brought by an insured's contractor.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (i) at least one member of the class is a citizen of a state different from Defendant; (ii) the amount in controversy exceeds $5,000,000 exclusive of costs and interests; and (iii) none of the exceptions under that section applies to this action.

11. Regarding citizenship, as set forth below, RTP is a citizen of Colorado and State Farm is not.

12. RTP has standing under Article III because it has properly alleged a concrete harm — a loss of revenue — due to State Farm's denial of RFG labor for tear-off. *See*

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."). Any argument that there was no underpayment or no denial (for example, an argument that DMO is the correct labor rate, or that RTP made a reasonable amount of money on the overall job) is a merits question. *Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) (whether some plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question).

13.   As for amount in controversy, data published by State Farm indicates that in 2020, State Farm paid $207,900,000 to Colorado homeowners who filed hail claims and the average homeowner claim was $12,000, meaning that State Farm paid approximately 17,325 claims in Colorado. An average residential roof size in Colorado is approximately 2,100 square feet (or twenty-one 100-square-foot "squares"), and the labor rate State Farm pays for tear-off of roofing material is approximately (and in some cases more than) $75 per square less than the skilled roofing labor rate that is paid for installation. Even if only one-fourth of the roofs required replacement, Plaintiff and the class may recover more than $27,000,000 in damages, excluding reasonable attorney fees and court costs, based on State Farm's failure to pay roofing labor for tear-off of roofing material in a two-year class period.

14.   Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred here, and under 18 U.S.C. § 1965(a) because State Farm transacts business or is otherwise found in this district.

## PARTIES

15.     RTP is a Colorado corporation with a principal office street address of 4011 S. Federal Boulevard, Sheridan, Colorado 80110. It is a citizen of Colorado.

16.     State Farm is an Illinois corporation with its principal office at One State Farm Plaza, Bloomington, Illinois 61710. It is not a citizen of Colorado.

## ROOFING LABOR IS A SKILLED TRADE

17.     Colorado is part of "hail alley." Only Texas surpasses Colorado in the total number of insurance claims for hail damage. Between 2017 and 2019, more than 380,000 Colorado residents — an average of 126,000 per year — filed such claims.

18.     As a result of the frequency of hailstorms, roofing contractors perform the vast majority of their work in connection with insurance claims submitted by property owners. In other words, roofers are necessarily reliant on insurance companies for the majority of their revenue.

19.     When damaging hail and windstorms strike, roofing contractors are engaged by insureds (*e.g.*, the property owner) to complete roofing work to address the hail and wind damage. In most instances, roofing contractors work directly with the property owner's insurance company once a homeowner makes a claim related to roof damage.

20.     Roofing contractors must employ skilled workers who are trained to work with a variety of roofing materials in a dangerous environment. Roofers must navigate dangerous work areas that are 30 or more feet above the ground and sometimes very steep. Roofers frequently use harnesses and cables to traverse the roof. Roofers suffer catastrophic injuries at a

significantly higher rate than other workers. According to the Bureau of Labor Statistics, roofers had a work fatality rate more than ten times the average rate of work fatalities per year in 2018.

21.     Considering the technical nature of roofing work and the dangers inherent in the trade, contractors pay roofers higher wages than other trades. Logically, given the higher injuries that result from roofing work, contractors also pay higher workers' compensation premiums for roofing labor than for other types of construction work.

22.     Naturally, part of the re-roofing process involves the tear-off of damaged roofing materials before new roofing material can be installed. Because it requires the same skill and care as installing roofing materials, tear-off is performed by the same roofers that complete the installation. There is no separate demolition crew climbing on roofs removing roofing materials. Roofing contractors pay roofers the same wage (and they are required to pay the same, higher workers' compensation premiums) regardless of whether the roofers are installing roofing material or tearing it off.

**STATE FARM DENIES RFG LABOR FOR TEAR-OFF**

23.     State Farm insures thousands of homes in Colorado. Indeed, State Farm holds the largest market share — 19.5% — in the homeowners' insurance sector in Colorado, issuing nearly twice as many policies as its biggest competitor.

24.     In adjusting its Colorado insureds' claims, State Farm refuses to pay the roofing labor rate ("RFG") for tear-off of roofing material, denying the full tear-off labor benefit owed under its policies. Instead, State Farm pays the cheaper demolition rate ("DMO"). DMO is the labor rate that would be appropriate for taking a sledgehammer to a fire-damaged structure or removing kitchen countertops; DMO is not appropriate, nor does it represent the market rate, for

the arduous, dangerous process of removing roofing materials that is performed by the very same skilled laborers who install new roofing materials.

25.     There is no reasonable basis for denying payment of the RFG labor rate for tear-off of roofing material.

## ROOFING CONTRACTORS ARE AWARE OF STATE FARM'S PRACTICES

26.     RTP has been doing business as a roofing contractor since 1995. Ray Phillips, co-owner of RTP, has served as President and Vice President of the Colorado Roofing Association ("CRA"), a trade association committed to helping homeowners and commercial building owners and managers make informed decisions about replacing and maintaining their roof systems. Scott Ponzio, Co-Owner and Controller of RTP, currently serves on CRA's Board.

27.     From around 2001 to 2007, RTP participated in State Farm's Premier Service Program. As part of that program, RTP was required to use State Farm's methods of estimating, including State Farm's price lists. RTP also attended training sessions and meetings with State Farm representatives to learn about State Farm's practices.

28.     In those sessions and meetings with State Farm, RTP on multiple occasions raised the issue of State Farm paying a demolition laborer, or DMO, rate for tear-off instead of a roofer, or RFG, rate. Specifically, Mr. Ponzio raised the issue with Destry Torrez, Tony Lebou, and George Fowler at State Farm. Each time the issue was raised, State Farm's response was that it would not pay RFG labor for removal of roofing material.

29.     State Farm disbanded its Premier Service Provider Program around 2007. Since that program has ended, RTP continued to request RFG labor payment for tear-off work through

State Farm's in-house adjusters, by phone and by email, and was again denied by State Farm in each case.

30.     RTP also raised its complaint about State Farm paying DMO labor for tear-off when it was surveyed by Xactimate (discussed below) on multiple occasions.

31.     After years of attempting to receive payment from State Farm for tear-off labor at the RFG rate and being denied every time, RTP was forced to concede this issue, turning to other issues that it believed it could successfully get State Farm to address. It simply was not worth arguing anymore over something State Farm repeatedly and clearly indicated it would not change. RTP could not refuse to work with State Farm (and every other insurer who refuses to pay RFG labor for tear-off) because it would not have enough work to run the company and pay its employees. Approximately 90% of RTP's work comes from peril-caused damage, where an insurance company is the one paying for the work, and State Farm is a major insurer in the Colorado market.

32.     In its non-insurance roofing work, such as when a homeowner chooses to replace their roof before selling the property, RTP's estimates and invoices always reflect that tear-off will be performed by roofers at a roofing labor rate, not a demolition labor rate.

33.     Upon information and belief, other roofing companies are in the same position as RTP. State Farm's refusal to pay RFG labor for tear-off is widely known in the industry. An examination of the roofing industry media and literature of "RFG vs. DMO" reveals articles, videos, and other resources discussing the underpayment resulting from using DMO for tear-off labor.[1]

---

[1] https://roofingprofessor.com/demolition-dmo-vs-roofing-rfg/

### STATE FARM ESTIMATES AND PAYS CLAIMS USING XACTIMATE

34.     State Farm generates its roofing estimates using Xactimate, an estimating program used by insurance companies across the industry.

35.     Roofers must "speak" the Xactimate language to successfully work with State Farm on roof-damage claims.

36.     State Farm makes payments for claims based on State Farm's Xactimate estimates.

37.     Generally speaking, an adjuster creates an estimate in Xactimate by adding line items that represent the repair work required to be done. There are two ways a user can do this. The user can either add items by interfacing with Xactimate Sketch, a component of Xactimate that allows users to create sketches of rooms, roofs, structures, etc., that require repairs; or the user can manually add line items by using an "add" button that brings up a menu that allows the user to make selections until the desired item comes up.

38.     When a removal task is selected for roofing work, Xactimate automatically inserts DMO, while roof replacement tasks typically default to RFG. This is demonstrated in the screenshot below:

---

https://www.reddit.com/r/Roofing/comments/fj1yia/xactimate_tear_off_defaults_to_dmo_and_not_rfg/
https://www.change.org/p/xactware-change-the-default-labor-trade-in-xactimate-for-removing-roofing-items-from-dmo-to-rfg?original_footer_petition_id=14286357&algorithm=promoted&source_location=petition_footer&grid_position=2&pt=AVBldGl0aW9uAKPaWgEAAAAAYpYj%2B36tZ%2FdiZjU2MDdhMg%3D%3D
https://www.youtube.com/watch?v=RUwazppjDWo



39.     Importantly, Xactimate allows the user to select a different labor rate. In the screenshot above, for example, the user would click on the arrow next to DMO and have the option to select RFG labor. Alternatively, the user can start to type "RFG" in the "Trade" field and the program will populate the field with RFG labor.

40.     The rates inserted into the estimate based on the user's selections come from Xactimate's proprietary price lists, which are updated and issued multiple times a year.

41.     The component prices that make up a labor rate in Xactimate's price lists include: "Worker's Wage," "Labor Burden," and "Labor Overhead." Each component price is higher for RFG rates than for DMO rates.

42.     For RFG labor, Xactimate describes the type of "Labor" as "Roofer."

43.     For DMO labor, Xactimate describes the type of "Labor" as "Demolition Laborer."

44.     Below is an example of RFG and DMO pricing components in Xactimate:



45.     Every time State Farm adjusts a Colorado roof claim for hail damage, State Farm arbitrarily and incorrectly uses the DMO rate for roofing material tear-off in its Xactimate estimates, even though roofers perform the tear-off work.

46.     RTP does not use Xactimate to decide what it charges for work in the non-insurance context. Instead, RTP uses precise calculations that take into account items such as material cost, taxes and permit fees, supervisor expenses, loading burden, labor, labor burden (including general liability, workers comp, payroll), and profit margin (which covers overhead).

47.     But when RTP (or any roofing contractor in Colorado) is working in connection with a State Farm claim, RTP has no choice but to play by State Farm's rules within the Xactimate ecosystem. State Farm only makes payments for roofing work based on its own estimates, created in Xactimate. By providing its own Xactimate estimates to State Farm, RTP (or any other contractor) is merely attempting to convince State Farm to adjust its Xactimate estimates on a line-item basis while speaking the Xactimate language; RTP is not providing a bid like a construction company might provide to a property owner in the non-insurance context.

48.     Accordingly, RTP (and other roofing contractors in Colorado) must decide strategically which line items to attempt to convince State Farm to affirmatively alter in State Farm's Xactimate estimates. As described more fully above, RTP (and other contractors) conceded trying to alter the Xactimate labor rates for tear-off because RTP (and other contractors) had never been successful in changing State Farm's practice of using DMO, despite years of trying.

## EXAMPLES OF CLAIMS

49.     Following are three examples of claims where State Farm paid the DMO rate instead of the correct RFG rate for tear-off.

A.  Parker Claim

50.     RTP was the insured's contractor in connection with a hail claim in Parker, Colorado, with a date of loss of September 12, 2019 (the "Parker Claim").

51.     State Farm created a repair estimate dated October 6, 2019, that included the following line item for tear-off:

| | | | | | | Avg. | 00.00% |
|---|---|---|---|---|---|---|---|
| 2. Tear off, haul and dispose of comp. shingles - Laminated | | | | | | | |
| | 2664 | 26.64 SQ | 56.85 | 0.00 | 1,514.48 | | 1,514.48 |

52.     State Farm scoped $56.85/SQ for DMO labor for a total of $1,514.48. The proper and owed RFG labor rate for tear-off in that location on October 6, 2019, was $166.81/SQ. Accordingly, the total payment for tear-off of 26.64 squares, which State Farm admitted was covered, should have been $4,443.82.

53.     Therefore, State Farm's denial or underpayment of the labor benefit led to a loss of revenue to RTP in the amount of **$2,929.34** on the Parker Claim.

54.     RTP sent its own estimate for the Parker Claim to State Farm on October 22, 2019, which served as a request for adjustments to State Farm's Xactimate estimate. For the reasons described above, RTP could not challenge State Farm on the tear-off labor rate.

B.  Highlands Ranch Claim

55.     Similarly, RTP was the insured's contractor in connection with a hail claim in Highlands Ranch, Colorado, with a date of loss of July 4, 2019 (the "Highlands Ranch Claim").

56.     State Farm created a repair estimate dated August 7, 2019, that included the following line item for tear-off:

| 1. Tear off, haul and dispose of comp. shingles - Laminated | | | | | |
|---|---|---|---|---|---|
| | 31.12 SQ | 52.20 | 0.00 | 1,624.46 | 1,624.46 |

57.     State Farm estimated $52.20/SQ for DMO labor for a total of $1,624.46. The proper and owed RFG labor rate for tear-off in that location on August 7, 2019, was $166.81/SQ. Accordingly, the total payment for tear-off of 31.12 squares, which State Farm admitted was covered, should have been $5,191.13.

58.     Therefore, State Farm's denial or underpayment of the labor benefit led to a loss of revenue to RTP in the amount of **$3,566.67** on the Highlands Ranch Claim.

59.     RTP sent its own estimate for the Highlands Ranch Claim to State Farm on July 10, 2020 (months after State Farm's original Xactimate estimate), which served as a request for adjustments to State Farm's Xactimate estimate. For the reasons described above, RTP could not challenge State Farm on the tear-off labor rate.

C.  Sedalia Claim

60.     Similarly, RTP was the insured's contractor in connection with a hail claim in Sedalia, Colorado, with a date of loss of July 4, 2019 (the "Sedalia Claim").

61.     State Farm created a repair estimate dated <u>August 1, 2019</u>, that included the following line item for tear-off:



Tear off, haul and dispose of comp. shingles - Laminated
21.91 SQ    52.20    0.00    1,143.70    1,143.70

62.     State Farm estimated $52.20/SQ for DMO labor for a total of $1,143.70. The proper and owed RFG labor rate for tear-off in that location on August 1, 2019, was $166.81/SQ. Accordingly, the total payment for tear-off of 21.91 squares of roofing material, which State Farm admitted was covered, should have been $3,654.81.

63.     Therefore, State Farm's denial or underpayment of the labor benefit led to a loss of revenue to RTP of **<u>$2,511.11</u>** for the Sedalia Claim.

64.     RTP sent its own estimate for the Sedalia Claim to State Farm on <u>August 30, 2019</u>, which served as a request for adjustments to State Farm's Xactimate estimate. For the reasons described above, RTP could not challenge State Farm on the tear-off labor rate.

65.     In all these instances, and in all other instances where State Farm engaged in similar conduct, State Farm's denial of a covered benefit — RFG labor for tear-off — was unreasonable. If State Farm had paid RFG labor instead of DMO labor for tear-off, RTP would have received the correct payment for tear-off labor and would not have suffered the losses of revenue described above.

## CLASS ACTION ALLEGATIONS

66.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

67.     Plaintiff seeks certification of a Class as defined below, pursuant to Federal Rule of Civil Procedure 23:

All persons or entities who performed roofing work for a State Farm insured in connection with a claim for roof damage covered under a State Farm insurance policy in Colorado and were denied payment of the roofing labor rate (RFG) for tear-off of roofing materials by State Farm in the period of July 2, 2019, to the present.

Excluded from the Class are: (i) any judge(s) presiding over this action and members of their families; (ii) Defendant's subsidiaries, parents, successors, predecessors, and any entity in which State Farm or its parents have a controlling interest and their current or former employees, officers and directors; (iii) persons who properly execute and timely request exclusion from the Class; and (iv) the legal representatives, successors or assigns of any such excluded persons.

68.     **Numerosity**: The exact number of Class members is unknown to Plaintiff at this time, but upon information and belief, hundreds of contractors have done roofing work in Colorado for State Farm insureds and have been similarly injured by State Farm's unreasonable refusal to pay roofing labor for tear-off. Members of the Class can be identified through State Farm's records.

69.     **Commonality and Predominance**: Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual members. These common questions include but are not limited to:

    i.   whether State Farm denied payment for skilled roofing labor for roofing material removal;

    ii.  whether State Farm's denial of payment for skilled roofing labor for roofing material labor was unreasonable;

    iii. whether State Farm was unjustly enriched;

    iv.  whether Plaintiff is entitled to injunctive relief;

    v.   whether Plaintiff and the Class are entitled to damages; and

    vi.  whether Plaintiff and the Class are entitled to any other relief.

70.    **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages because of State Farm's uniform, wrongful conduct in denying payment of the roofing material labor rate for tear-off of roofing materials.

71.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interest in conflict to those of the Class and State Farm has no defenses unique to Plaintiff.

72.    **Appropriateness**: The class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by State Farm's wrongful conduct. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from State Farm's unlawful practices. Even if Class members could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

73.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because State Farm has acted or refused to act on grounds generally applicable

to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Class as a whole. State Farm's practices challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these practices hinges on State Farm's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

74.     Plaintiff reserves the right to revise the Class definition based on information learned through discovery.

### PLAINTIFF'S FIRST CLAIM FOR RELIEF
### VIOLATION OF C.R.S. §§ 10-3-1115 AND -1116
### (On behalf of Plaintiff and the Class)

75.     Plaintiff realleges and incorporates by reference all prior paragraphs of this Complaint as if fully set forth herein.

76.     At all times pertinent hereto, the following Colorado statute was in effect:

**10-3-1115. Improper denial of claims – prohibited – definitions – severability.**

A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

. . .

"First-party claimant" means an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy.

C.R.S. § 10-3-1115(1)(a), (b)(I).

77.     A first-party claimant as defined above "whose claim for benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs and two times the covered benefit." C.R.S. § 10-3-1116(1).

78.     Plaintiff and the Class are first-party claimants under C.R.S. § 10-3-1115(1)(b)(I) because they performed the roofing work for property owners to whom State Farm owed the benefit of roofing labor under the property owner's State Farm policies. Plaintiff and the Class assert an entitlement to that benefit owed on behalf of the insured property owners because Plaintiff and the Class were entitled to the payment, originating from State Farm, for the work they performed.

79.     State Farm unreasonably delayed or denied payment of insurance benefits by denying or delaying the payment of the amount it is obligated by the insurance policy to pay for tear-off of roofing materials where State Farm acknowledges that removal or tear-off of roofing materials is covered under the policy.

80.     State Farm further unreasonably delayed or denied payment of insurance benefits by engaging in additional acts and omissions that may be discovered during litigation.

81.     As a result, Plaintiff and the Class have been concretely damaged, by losing revenue it would otherwise have been entitled to but for the denial, and is entitled to recover reasonable attorney fees and court costs and two times the covered benefit with regard to each and every claim.

**PLAINTIFF'S SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On behalf of Plaintiff and the Class)**

82.     Plaintiff and the Class reallege and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

83.     State Farm received the benefit of the difference between the demolition labor rate it paid and the skilled roofing labor rate it should have paid for tear-off of roofing materials.

84.     State Farm's benefit was at the expense of Plaintiff and the Class.

85.     It would be unjust for State Farm to retain that benefit.

**PLAINTIFF'S THIRD CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**
**(On behalf of Plaintiff and the Class)**

86.     Plaintiff and the Class reallege and incorporate by reference all prior paragraphs of this Complaint as if fully set forth herein.

87.     State Farm's refusal to pay the roofing labor rate for tear-off of roofing material rather than the demolition labor rate is an unreasonable denial of a covered benefit and is a violation of C.R.S. §§ 10-3-1115 and -1116.

88.      Plaintiff and the Class seek a declaratory judgment that State Farm's practice of denying payment to contractors for skilled roofing labor is a violation of C.R.S. §§ 10-3-1115 and -1116.

89.     Plaintiff and the Class seek a permanent injunction enjoining State Farm from continuing to engage in the unlawful practice.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the Class pray for relief against State Farm as follows:

1.      Certification of this case as a class action, designating Plaintiff as Class Representative and his attorneys as Class Counsel;

2.      Reasonable attorney fees and court costs and two times the covered benefit regarding each claim under C.R.S. § 10-3-1116;

3.      Pre- and post-judgment interest;

4.      Costs and expenses;

19

5.      A declaration judgment that State Farm's failure to pay is unlawful;

6.      Equitable and injunctive relief to Plaintiff and the Class, including a permanent injunction, restitution, disgorgement, and an accounting of all revenue gained by State Farm through its unlawful conduct; and

7.      Such other and further relief as the Court may deem just, equitable, or proper.

**A JURY IS DEMANDED AS TO ALL ISSUES HEREIN.**

Respectfully submitted June 21, 2022.

By:

/s/ Richard D. Daly
***Richard D. Daly***
Daly & Black, P.C.
John Scott Black
Melissa Waden Wray
2211 Norfolk St., Suite 800
Houston, Texas 77098
Tel: 713.655.1405
Email: rdaly@dalyblack.com
        jblack@dalyblack.com
        mwray@dalyblack.com
        ecfs@dalyblack.com (service)

and

/s/ Jonathan S. Sar
***Jonathan S. Sar***
Daly & Black, P.C.
Thomas J. Archer
3200 Cherry Creek S. Drive
Suite 520
Denver, CO 80209
Phone Number: (303) 835-4572
Fax Number: (888) 375-0630
Email: jsar@dalyblack.com
        tarcher@dalyblack.com

and

/s/ William C. Gray
**William C. Gray**
Gray LLC
Nathalie E. Sar
17 N. State St., Suite 1600
Chicago, Illinois 60602
Tel: 312.967.3653
Email: bgray@grayllclaw.com
          nsar@grayllclaw.com

*Attorneys for Plaintiff*
*RTP Roofing Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 21, 2022, the above and foregoing Second Amended Complaint and Jury Demand was electronically filed and served using the Court's CM/ECF system, to the following:

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Telephone (303) 741-4539
Email: fpatterson@prpclegal.com
hpatterson@prpclegal.com

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone (312) 471-8700
Email: jcancila@rshc-law.com
jkahn@rshc-law.com

*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

/s/ *Nathalie E. Sar*