## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

RTP ROOFING CO.,

        Plaintiff,

    v.

STATE FARM FIRE AND CASUALTY
COMPANY,

        Defendant.

Case No. 1:21-cv-01816-WJM-SKC

Hon. William J. Martinez

---

## DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
## MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT
## <u>PURSUANT TO RULES 12(b)(1) AND 12(b)(6)</u>

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700

*Counsel for Defendant State Farm Fire and Casualty Company*

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ................................................................................................................. 1

STATEMENT OF COMPLIANCE WITH PRACTICE STANDARD III.D.1 ........................... 1

BACKGROUND .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

I.      RTP Lacks Standing to Assert its Claims Against State Farm. ........................................ 3

      A.      RTP Cannot Rest on Conclusory Allegations in Response to a Fact-Based Rule 12(b)(1) Challenge. ........................................................................................ 3

      B.      RTP Did Not Suffer Injury in Fact and Faces No Imminent Threat of Injury ........ 3

            1.      RTP Lacks Standing to Seek Damages. ...................................................... 4

            2.      RTP Lacks Standing to Seek Injunctive Relief. .......................................... 7

II.     RTP's Claims Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim. ............................................................................................................................. 9

      A.      RTP Has Not Stated a Claim Under Sections 1115 and 1116. ............................ 9

            1.      RTP Alleges No Facts Suggesting that It is a "First-Party Claimant." ....... 9

                 a.   RTP Must Be Acting in a Binding Representative Capacity. ............... 9

                 b.   RTP Has Not Alleged that It is Acting as a Binding Representative. ................................................................................... 11

            2.      RTP Has Not Alleged Sufficient Conduct Under Sections 1115 and 1116. ......................................................................................................... 11

                 a.   RTP Has Not Alleged a "Denial" of Insurance Benefits. ................... 11

                 b.   RTP Has Not Alleged a "Delay" of Insurance Payments. .................. 12

                 c.   RTP Has Not Alleged a Breach of Any Policy Provision. .................. 13

                 d.   RTP Has Not Alleged "Unreasonable" Conduct. ............................... 13

      B.      RTP's Claim for Declaratory Judgment and Injunctive Relief Also Fails. .......... 14

      C.      RTP's Unjust-Enrichment Claim Should Also Be Dismissed. ............................ 14

CONCLUSION ................................................................................................................. 15

## TABLE OF AUTHORITIES

Page

CASES

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................9

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005)....................................................................................6

*Brooks v. Mentor Worldwide LLC*,
    985 F.3d 1272 (10th Cir. 2021) .......................................................................9, 12

*Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*,
    No. 17-cv-871, 2019 WL 10946262 (D. Colo. Mar. 15, 2019)............................13

*Buchwald v. Univ. of N.M. Sch. of Med.*,
    159 F.3d 487 (10th Cir. 1998) ............................................................................14

*Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*,
    649 P.2d 1093 (Col. 1982)............................................................................14, 15

*Cypress Advisors, Inc. v. Davis*,
    No. 16-cv-1935, 2021 WL 1751158 (D. Colo. May 4, 2021) ................................14

*Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*,
    486 P.3d 250 (Col. 2021)....................................................................................10

*Frost v. ADT, LLC*,
    947 F.3d 1261 (10th Cir. 2020) ............................................................................2

*Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*,
    No. 17-cv-1773, 2018 WL 1993423 (D. Colo. Apr. 27, 2018) .............................12

*Holt v. United States*,
    46 F.3d 1000 (10th Cir. 1995) ..............................................................................3

*Infant Swimming Rsch., Inc. v. Faegre & Benson, LLP*,
    335 F. App'x 707 (10th Cir. 2009) ........................................................................4

*Jenkins v. State Farm Fire and Cas. Co.*,
    2017 IL App (1st) 160612-U ................................................................................12

*Johnson v. Am. Nat'l Prop. & Cas. Cos.*,
    No. 17-cv-2218, 2019 WL 463026 (D. Colo. Feb. 6, 2019)....................................13

*KW-2, LLC v. Asus Comput. Int'l,*
    170 F. Supp. 3d 1340 (D. Colo. 2016) ................................................................. 3, 6

*Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.,*
    305 P.3d 409 (Colo. App. 2012) ..................................................................... 10, 11

*Lee v. Am. Fam. Mut. Ins. Co.,*
    No. 06-cv-2604, 2008 WL 2704823 (D. Colo. July 7, 2008) ............................... 15

*Llacua v. W. Range Ass'n,*
    930 F.3d 1161 (10th Cir. 2019) ............................................................................ 9

*Marechal v. Safeco Ins. Co. of Am.,*
    No. 19-cv-2572, 2021 WL 4046415 (D. Colo. June 7, 2021) .............................. 13

*MC1 Healthcare, Inc. v. United Health Grp.,*
    No. 3:17-cv-1909, 2019 WL 2015949 (D. Conn. May 17, 2019) ......................... 15

*O'Shea v. Littleton,*
    414 U.S. 488 (1974) ............................................................................................ 7

*Pernick v. Computershare Trust Co., Inc.,*
    136 F. Supp. 3d 1247 (D. Colo. 2015) ............................................................... 15

*Reiskin v. Greyhound Lines, Inc.,*
    No. 20-CV-2605-WJM, 2022 WL 2374593 (D. Colo. June 30, 2022) ............... 7, 8

*Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.,*
    413 F. Supp. 3d 1070 (D. Colo. 2019) ............................................................... 13

*Singleton v. Wulff,*
    428 U.S. 106 (1976) .......................................................................................... 11

*Soicher v. State Farm Mut. Auto. Ins. Co.,*
    351 P.3d 559 (Colo. App. 2015) ........................................................................ 12

*Southway v. Cent. Bank of Nigeria,*
    328 F.3d 1267 (10th Cir. 2003) ............................................................................ 3

*Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.,*
    No. 09-cv-2224, 2011 WL 3903074 (D. Colo. Sept. 6, 2011) ............................. 11

*Thompson v. State Farm Mut. Auto. Ins. Co.,*
    457 F. Supp. 3d 998 (D. Colo. 2020) ................................................................. 13

*TransUnion LLC v. Ramirez,*
    141 S. Ct. 2190 (2021) ..................................................................................... 3, 7

*Wyo. v. U.S. Dep't of Interior*,
    674 F.3d 1220 (10th Cir. 2012) ............................................................................4

*zvelo Inc. v. Akamai Techs., Inc.*,
    No. 19-cv-097, 2019 WL 475189 (D. Colo. Sept. 30, 2019)..................................14

**STATUTES**

COLO. REV. STAT. § 10-3-1115(1) .............................................................9, 11, 12, 13

COLO. REV. STAT. § 10-3-1116(1) .............................................................. *passim*

COLO. REV. STAT. § 18-13-119.5 .......................................................................6

**RULES**

Rule 12(b)(1)...................................................................................................1, 2, 3

Rule 12(b)(6)...................................................................................................1, 2, 9

**OTHER AUTHORITIES**

*Agent*, Black's Law Dictionary .........................................................................10

*Behalf*, Black's Law Dictionary (11th ed. 2019) ..............................................10

## INTRODUCTION

Plaintiff RTP Roofing Co. ("RTP") fails in its third attempt to plead viable claims against State Farm Fire and Casualty Company ("State Farm"). The Court dismissed RTP's last complaint because of a "significant jurisdictional problem": RTP failed to show injury in fact from State Farm's alleged conduct and, therefore, lacked standing. Dkt. 39 (the "Order") at 12. Nothing has changed, for RTP's theory of injury is still entirely hypothetical. Moreover, in any event, RTP has failed to state claims either under the Colorado bad-faith statute or for unjust enrichment. RTP's claims should therefore be dismissed, with prejudice, under both Rules 12(b)(1) and 12(b)(6).

## STATEMENT OF COMPLIANCE WITH PRACTICE STANDARD III.D.1

Pursuant to Section III.D.1 of the Court's Practice Standards, counsel for State Farm communicated with RTP's counsel on July 6, 2022 and explained the bases for this motion. State Farm understands that RTP intends to oppose the motion and seek a legal ruling from the Court.

## BACKGROUND

The essential alleged facts of RTP's claims are unchanged. RTP was hired by State Farm insureds to perform roofing repairs on properties damaged by hail in Sedalia, Parker, and Highlands Ranch, Colorado. Dkt. No. 40, Second Amended Complaint ("SAC"), ¶¶ 50, 55, 60. After the homeowners submitted claims to State Farm, State Farm investigated, evaluated, and paid each claim in full. *See id.* ¶¶ 50-51, 56-57, 61. The insureds' policies state, in relevant part:

    a.  ***We will pay the cost to repair or replace*** . . . the damaged part of the property . . ., subject to the following:

      (1) until actual repair or replacement is completed, we will pay only the actual cash value of the damaged part of the property, up to the applicable limit of liability shown in the Declarations, ***not to exceed the cost to repair or replace*** [that] part of the property;

      (2) when the repair or replacement is actually completed, we will pay the covered additional amount you ***actually and necessarily spend to repair or replace the damaged part of the property***, or an amount up to the applicable limit of liability shown in the Declarations, whichever is less . . . .

Ex. 1, Decl. of Kimberly Templeman ("Templeman Decl."), at Ex. K, at 22 (emphases added).[1]

RTP alleges that, for each of the Sedalia, Parker, and Highlands Ranch properties it repaired, State Farm "unreasonably delayed or denied" payment of roofing-removal costs, SAC ¶ 79, because it underestimated the tear-off labor rate, *id.* ¶¶ 37-65. In fact, the tear-off costs estimated and paid by State Farm were identical or nearly identical (the one difference was only twenty-seven cents) to those very costs as requested by RTP:

- **Sedalia Claim**[2]: RTP sought $1,143.70 in roofing tear-off costs for the roof on the insured's house. State Farm estimated and paid $1,143.70 in tear-off costs for the same work. Templeman Decl. ¶¶ 11, 16.

- **Parker Claim**: RTP sought $1,514.75 in roofing tear-off costs. State Farm estimated and paid $1,514.48 in tear-off costs for the same work. *Id.* ¶¶ 22, 27.

- **Highlands Ranch Claim**: RTP sought $1,767.00 in roofing tear-off costs for the insured's house. State Farm initially estimated a slightly lower amount but later paid the amount sought by RTP. *Id.* ¶¶ 33, 36-37, 39.[3]

Unsurprisingly, having been paid in full, neither the insureds nor RTP disputed or complained about the amounts State Farm had estimated and paid for this tear-off work. *Id.* ¶¶ 13, 24, 38. Likewise, RTP never suggested that its actual tear-off costs were higher than those amounts. *Id.*

On June 8, 2022, the Court dismissed RTP's first amended complaint, finding that RTP failed to show an injury in fact as required for Article III standing. Order at 10. With respect RTP's damages claim, the Court observed that RTP had "fail[ed] to present evidence that either its costs

---

[1] State Farm relies on the policy language for its Rule 12(b)(6) arguments. Under that rule, "courts may consider evidence beyond the pleadings where the document [in question] is central to the claims presented and its authenticity is not disputed by the parties." *Frost v. ADT, LLC*, 947 F.3d 1261, 1267 n.4 (10th Cir. 2020). Because RTP's statutory claim and its claim for declaratory and injunctive relief both rest on a purported breach of the policy, the Court should consider its terms.

[2] At State Farm's request, counsel for RTP provided the claim numbers for the three insurance claims referenced in RTP's complaint. Ex. 2, Declaration of Jacob Kahn ("Kahn Decl.") ¶¶ 3-4.

[3] State Farm relies on the Templeman Declaration for its arguments under Rule 12(b)(1), which permits consideration of evidentiary materials. *See infra* at 3. As the Court previously ruled, this evidence does not warrant converting this motion into a summary judgment motion. Order at 6.

to perform removal work or the amount charged to its customers exceeded its own estimates." *Id.* at 8. With respect the request for injunctive relief, the Court held that RTP's "speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by Defendant at that higher rate is beyond the bounds of this Court's jurisdiction." *Id.* at 9. Nonetheless, the Court gave RTP leave to file another complaint "solely in the interest of justice," notwithstanding RTP's failure to comply with the Court's Local Rules and Revised Practice Standards. *Id.* at 12.

RTP filed its Second Amended Complaint on June 21, 2022. As explained further herein, RTP's new allegations do not cure the deficiencies the Court previously identified.

## ARGUMENT

### I.    RTP Lacks Standing to Assert its Claims Against State Farm.

#### A.    RTP Cannot Rest on Conclusory Allegations in Response to a Fact-Based Rule 12(b)(1) Challenge.

When a defendant brings a "factual attack" against the plaintiff's standing under Federal Rule of Civil Procedure 12(b)(1), the motion may be based on evidence outside of the pleading. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). Additionally, the court "may not presume the truthfulness of the complaint's factual allegations." *Id.* The plaintiff instead must *prove* that "it has standing to bring suit," *KW-2, LLC v. Asus Comput. Int'l*, 170 F. Supp. 3d 1340, 1342-43 (D. Colo. 2016), and must do so by a preponderance of the evidence, *see Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003). RTP cannot meet its burden here.

#### B.    RTP Did Not Suffer Injury in Fact and Faces No Imminent Threat of Injury.

To sue in federal court, a plaintiff must have standing under Article III of the Constitution, even where the claims arise under a statute. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203-05 (2021). The plaintiff must point to an injury in fact that "is concrete, particularized, and actual or imminent," and that was caused by the defendant's alleged conduct. *Id.* This Court previously

held that RTP failed to make this showing, either with its request for retrospective relief (damages) or its request for prospective relief (an injunction). RTP's third complaint fares no better.

### 1.    RTP Lacks Standing to Seek Damages.

Courts within the Tenth Circuit consistently have found no Article III standing when an alleged prior injury is too speculative or hypothetical. *See, e.g.*, *Wyo. v. U.S. Dep't of Interior*, 674 F.3d 1220, 1232-35 (10th Cir. 2012) (affirming dismissal of claims challenging federal regulation because plaintiffs failed to show they *in fact* lost revenues due to the regulation); *Infant Swimming Rsch., Inc. v. Faegre & Benson, LLP*, 335 F. App'x 707, 714 (10th Cir. 2009) (affirming dismissal of claim under Colorado's recording statute, among other claims, because plaintiff failed to present evidence to support its "purely conjectural allegation" that it had "lost business opportunities" from a fraudulent property-lien release). In keeping with this authority, the Court analyzed RTP's "theory" of injury together with the evidence submitted and found that, at best, RTP sought an "advisory opinion[]" rather than to address a concrete harm. Order. at 7-8. Nothing has changed.

RTP continues to allege that it was injured by State Farm's use of the "demolition" labor rate, rather than the "skilled" labor rate, to estimate roofing-removal costs for the referenced insurance claims. *See* SAC ¶¶ 37-65. According to RTP, the injury occurred because RTP hires "skilled workers" for removal work who command higher wages and require more workers' compensation insurance, neither of which is accounted for by State Farm's use of the "demolition" labor rate. *Id*. ¶¶ 19, 21-24.[4] RTP points to the same three instances in which it performed roofing-removal work for State Farm insureds. *Id*. ¶¶ 37-65. For each claim, RTP again (1) identifies the amount State Farm estimated and paid for the roofing-removal work; (2) purports to show that

---

[4] Although RTP declares that the "demolition" labor rate is not the "market rate," SAC ¶ 24, RTP admits that, similar to other roofing contractors, it uses the demolition rate for estimates it provides to customers of State Farm and other insurance carriers and that the demolition rate is the "default" rate within the Xactimate software. *Id*. ¶¶ 38, 31, 48, 54, 59, 64.

using the "skilled" labor rate would have increased the estimated cost of that work; and (3) declares that, by using the default removal rate, State Farm "denied" RTP the difference. *Id*.

Yet the facts of these RTP-selected exemplar claims still tell a far different story. Most importantly, as RTP concedes, ***RTP used the exact same "demolition" labor rate as State Farm on its own estimates for these claims***—not the "skilled" labor rate it now contends was more appropriate. *See id*. ¶¶ 31, 54, 59, 64. State Farm's records confirm that that RTP never disputed the prices State Farm estimated for roofing-removal work or the labor rates used to generate those prices. Templeman Decl. ¶¶ 11-13, 22-24, 33-38. RTP's own estimates for the roofing-removal work were essentially identical to State Farm's estimates[5]:

|  | **Roofing-Removal Costs** | | | **Roofing-Removal Labor Rate** | | |
|---|---|---|---|---|---|---|
|  | RTP's Estimate | State Farm's Estimate | Difference | RTP's Estimate | State Farm's Estimate | Difference |
| *Sedalia Claim* | $1,143.70 | $1,143.70 | None | $52.20 | $52.20 | None |
| *Highlands Ranch Claim* | $1,767.00 | $1,767.00 | None | $57.00 | $57.00 | None |
| *Parker Claim* | $1,514.75 | $1,514.48 | $0.27 | $56.86 | $56.85 | $0.01 |

RTP's lack of injury on these claims is confirmed by the fact that it was paid in full for the roofing-removal work from its estimates after State Farm received proof of the work and paid its insureds. *See id*. ¶¶ 16, 27, 39. RTP was directly involved in that process. During State Farm's handling of the Parker claim, for example, RTP told State Farm that its "only wish [was] to get payed [*sic*] for the work we are providing." *Id*. ¶ 26. That is precisely what it got. As the Court previously noted, RTP simply does not allege that its costs on these claims or the amounts it

---

[5] RTP obviously was not bound to charge its customers the same prices State Farm had estimated for repair work—nor did it. For example, while State Farm estimated $410.19 to replace the "Ridge cap" on the Sedalia Claim, RTP estimated $521.56 for the same work. Templeman Decl. at ¶ 14. Similarly, RTP expressed disagreements with several components of State Farm's estimate for the Parker Claim, but none regarding the cost for roofing tear-off. *See id*. ¶ 25.

charged its customers exceeded the amounts on its estimates (which State Farm paid). Order at 8.[6]

Perhaps recognizing that the facts of these illustrative claims do not show "actual" injury, RTP added allegations to its latest complaint to explain why it believes it should be paid more than it charged its own customers. First, RTP alleges that, some *15 years ago*, it "raised the issue" of labor rates for roofing-removal work with State Farm during "training sessions and meetings," but apparently decided to stop including a higher labor rate on its own estimates after being told in those discussions (and in other, generic discussions since that time) that State Farm would not pay it. SAC ¶¶ 27-31. Second, RTP alleges that in "*non-insurance* roofing work," its estimates "always reflect" the higher, skilled labor rate for roofing removal work. *Id.* ¶ 32 (emphasis added).

Regardless of whether RTP actually charges different prices for insurance related roofing work vs. non-insurance related roofing work—which RTP would have to prove, *see KW-2*, 170 F. Supp. 3d at 1342-43—that *still* would not establish actual, concrete injury for the claims at issue here. First, RTP does not identify any State Farm claims where it included a higher labor rate on its own estimate. On the contrary, the three illustrative claims RTP identified suggest that the claims at issue in this case do *not* involve any such RTP estimates. Second, State Farm's estimates have no bearing on RTP's actual costs for the roofing-removal work at issue in this case. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 830-32 (Ill. 2005) (rejecting theory that loss occurs whenever a less-expensive item is merely listed on an insurer's estimate, as "[n]o possible damage could come" from that fact). RTP's allegations ignore that its contracts for roof replacement are with the homeowners, not with State Farm. If RTP wants to charge customers a

---

[6] In effect, RTP asks this Court to compel State Farm to pay more than State Farm's insureds paid RTP. That request is contrary to Colorado public policy. The Colorado legislature, for example, has explicitly prohibited similar machinations by contractors in the claims process. *See* COLO. REV. STAT. § 18-13-119.5 (declaring as "abuse of property insurance" certain attempts by a contractor to submit a higher fee to the insurer than it "has agreed to accept from the insured").

higher labor rate, State Farm cannot force RTP to modify its estimates; that is an issue between RTP and its customers. Finally, RTP's cost estimates for non-insurance work do not show that RTP was injured on the claims at issue in this case, all of which involve insurance work, and all of which (at least to date) involve situations where State Farm paid its insureds (who then paid RTP) the full amount that RTP told the insureds it would cost to replace their roof.[7]

While RTP repeatedly declares that it suffered "a loss of revenue" on the claims at issue in this case, *e.g.*, SAC ¶ 12, RTP's theory of injury relies on multiple levels of speculation: *if* State Farm had agreed to pay a higher labor rate on prior occasions, then RTP *might have* charged a higher labor rate to homeowners who had insurance with State Farm; and *if* such a homeowner had still chosen to use RTP over a different roofer despite the higher estimate, then RTP *might have* been paid more, but only *if* State Farm had agreed to pay the higher labor rate on that occasion. That is not an actual, concrete injury for Article III purposes. It is attenuated conjecture.[8]

### 2.    RTP Lacks Standing to Seek Injunctive Relief.

To establish Article III standing to seek prospective (injunctive) relief, plaintiffs must show an "imminent" risk of concrete harm. *TransUnion*, 141 S. Ct. at 2210. Specifically, there must be "a real and immediate threat of being injured in the future." *Reiskin v. Greyhound Lines, Inc.*, No. 20-CV-2605-WJM, 2022 WL 2374593, at *6 (D. Colo. June 30, 2022). While evidence of past injuries may be relevant, it does not suffice if the future injuries are speculative. *Id.*[9]

---

[7] Following RTP's theory to its logical—yet absurd—conclusion, RTP contends that State Farm committed statutory bad faith on every roof replacement claim in Colorado *for more than a decade* whenever it paid its insureds the *full cost* their contractors charged them to replace their roofs.

[8] To the extent RTP asserts that it has standing as a representative of State Farm's insureds, that contention also fails. State Farm received no indication of any purported assignments during its handling of the claims, Templeman Decl. ¶¶ 18, 29, 41, nor has RTP alleged any such assignments.

[9] *See also O'Shea v. Littleton*, 414 U.S. 488, 497 (1974) (holding that plaintiffs lacked standing to challenge discriminatory court procedures where they alleged "that *if* [they] proceed to violate an unchallenged law and *if* they are charged, held to answer, and tried in any proceedings before

-7-

This Court previously held that RTP's alleged future injury was too speculative because RTP "[did] not allege that it charges customers for roof tear-off work—or intends to charge them in the future—based on the skilled-labor rate it claims is appropriate. Nor does it allege ever having done so." Order at 9. It appears that RTP considered this statement by the Court and merely added new conclusory allegations in an attempt to address the statement and avoid a dismissal of this case. But these newly added conclusory allegations do not push RTP's claims past the Article III barrier for prospective relief.

For instance, while RTP now alleges that, since 2007, it "continued to request" without success that State Farm pay a higher labor rate for roofing tear-off work, SAC ¶ 29, that allegation is essentially identical to the generic allegation this Court found lacking in its dismissal order. *See* Order at 9 n.4. Moreover, RTP also now reveals that it has "concede[d]" the labor rate issue and no longer asks State Farm to pay a higher rate, consistent with the exemplar claims. SAC ¶ 31. That admission belies any argument that RTP faces a real and immediate threat of future injury.[10]

RTP's other attempt to show future injury fares no better. While RTP baldly declares that its estimates for "non-insurance" work "always reflect" a higher labor rate, SAC ¶ 32, that assertion again has no bearing on RTP's alleged injury for the claims at issue in this case, all of which involve insurance work. As the Court previously observed, "RTP [does not] assert or provide facts suggesting that other insurance companies or their customers pay the higher-skilled labor rate for roofing tear-off work." Order at 4. That observation is still true. Thus, once again, RTP's "speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by [State Farm] at that higher rate is beyond the bounds of this Court's jurisdiction." *Id*. at 9.

---

petitioners, they will be subjected to the discriminatory practices"); *Reiskin*, 2022 WL 2374593, at *6 (finding that "numerous" examples of conduct without incident refuted Article III standing).

[10] RTP's conclusory allegation of "continuing" conduct (SAC ¶ 89) is insufficient. *See infra* at 9.

## II.   **RTP's Claims Should Be Dismissed Under Rule 12(b)(6) for Failure to State a Claim.**

To survive a motion to dismiss under Rule 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Llacua v. W. Range Ass'n*, 930 F.3d 1161, 1177 (10th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). There must be facts—not conclusory allegations—"from which [the court] may reasonably infer Defendant's liability." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). RTP's complaint fails to satisfy this threshold pleading standard.

### A.   **RTP Has Not Stated a Claim Under Sections 1115 and 1116.**

Colorado's bad-faith statute permits "[a] first-party claimant . . . whose claim for payment of [insurance] benefits has been unreasonably delayed or denied [to] bring an action" for statutory damages. COLO. REV. STAT. § 10-3-1116(1). The key factual predicates are missing here.

#### 1.   **RTP Alleges No Facts Suggesting that It is a "First-Party Claimant."**

A "first-party claimant" is an individual or legal entity "asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." COLO. REV. STAT. § 10-3-1115(1)(b)(I). In other words, the term is narrowly defined to include only (a) the insured or (b) a person or entity asserting an entitlement to benefits "on behalf of" the insured. RTP plainly is not the "insured" for the claims at issue. And, although RTP parrots the statute by declaring that it asserts an entitlement to benefits "on behalf of" insureds, it alleges no facts in support.

##### a.   **RTP Must Be Acting in a Binding Representative Capacity.**

To proceed "on behalf of" an insured, RTP must allege facts suggesting that it is acting in a "representative capacity"—that is, "in a manner that would legally bind the . . . insured" to a judgment. Transcript of Directed Verdict Ruling, at 8:10-12, 8:23-9:4, 11:13-18, *Sauter v. State Farm Fire and Cas. Co.*, No. 17-cv-33275 (Dist. Ct., Cnty. of Denver, Aug. 1, 2018) (attached at Kahn Decl., Ex. A). This requirement arises both from the plain meaning of "on behalf of" and

from the broader statute, which must be construed "to give consistent, harmonious, and sensible effect to all its parts," *Dep't of Nat. Res. v. 5 Star Feedlot, Inc.*, 486 P.3d 250, 256 (Col. 2021).

To begin, because the statute does not define "on behalf of," that phrase must be given its "plain and ordinary meaning." *Id.* Ordinarily, "on behalf of" means "in the name of, on the part of, as the agent or representative of." *Behalf*, *Black's Law Dictionary* (11th ed. 2019). And "agent" and "representative," in turn, refer to one who is "authorized to act for or in place of another," such that the latter is bound by the former's actions. *Agent*, *Black's Law Dictionary* (defining "agent" to also mean "representative," and noting that agents "normally bind[]" their principals).

That the phrase "on behalf of" requires an authorized and binding representation is also confirmed by the larger statutory scheme. While there may be two possible claimants (the insured and someone acting on behalf of the insured), only one may file suit, as the statute permits only "*an* action" by "*[a]* first-party claimant . . . whose *claim* for payment of benefits" was delayed or denied. COL. REV. STAT. § 10-3-1116(1) (emphases added). It does not authorize "actions" (plural) by "any" or "all" first-party claimants. *See id.* Moreover, it provides that the "claim" for benefits must belong to someone ("*whose* claim for . . . benefits")—and it expressly refers to that owner in the singular ("first-party *claimant*"). In other words, the statute contemplates that *either* the insured *or* the person proceeding "on behalf of" the insured may bring suit—but not both. To sue "on behalf of" an insured, therefore, the plaintiff must have been "authorized to assert, and [have in fact] assert[ed]," the insured's claims in his or her stead. *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 305 P.3d 409, 411-12 (Colo. App. 2012) (discussing an "arrangement [that] relieved the insureds of any obligation to assert the[ir] claims themselves"). Absent this requirement, insurers would be subject to multiple—and potentially serial—lawsuits for the same purported violation.[11]

---

[11] This requirement also tracks constitutional restrictions on standing, which recognize generally

### b.  RTP Has Not Alleged that It is Acting as a Binding Representative.

RTP has not alleged any facts satisfying the statute's representative-capacity requirement. It asserts only that the payments it received for its work on the insureds' homes were impacted by the amounts State Farm paid under the policies and then summarily declares that it is "entitled" to benefits owed under those policies "on behalf of" the insureds. *See, e.g.*, SAC ¶¶ 78. In short, RTP purports to be a *de facto* beneficiary of those policies. But third-party beneficiaries are not "first-party claimants" under Sections 1115 and 1116. *See Sterling Constr. Mgmt., LLC v. Steadfast Ins. Co.*, No. 09-cv-2224, 2011 WL 3903074, at *12 (D. Colo. Sept. 6, 2011) (holding that "third-party beneficiaries" do not meet "the first-party element"). This distinction is critical; otherwise, the statute would permit anyone with an indirect interest in policy benefits to sue for damages. That cannot be right—and it isn't. As discussed above, if the plaintiff is not an insured, it may sue under Section 1116 *only* if it has effectively replaced the insured, with the insured's express authority.

RTP has alleged no facts suggesting that it has effectively replaced the insureds on the three claims referenced in the complaint, or that the insureds "authorized [RTP] to assert [their] claims" for them. *Larson*, 305 P.3d at 411. Thus, RTP is not a "first-party claimant."

### 2.   RTP Has Not Alleged Sufficient Conduct Under Sections 1115 and 1116.

RTP has further failed to allege any violation of the bad-faith statute. While Sections 1115 and 1116 permit suit for an "unreasonabl[e] delay or den[ial]" of insurance payments, COLO. REV. STAT. §§ 10-3-1115(1)(a), 1116(1), RTP alleges no facts plausibly suggesting that State Farm delayed or denied any insurance payments here—let alone that State Farm did so "unreasonably."

### a.   RTP Has Not Alleged a "Denial" of Insurance Benefits.

RTP repeatedly asserts that State Farm has "denied" payment of covered benefits. *See, e.g.*,

---

that one may not claim standing "to vindicate . . . rights of some third party" absent a "genuine obstacle" hindering the third party. *Singleton v. Wulff*, 428 U.S. 106, 114, 115-16 (1976).

SAC ¶ 65. Not so. A "denial" of a claim for insurance benefits is a "rejection of [the] application for benefits." *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015). And RTP alleges no facts suggesting that State Farm "reject[ed]" any such applications. On the contrary, RTP alleges that State Farm *paid* benefits for roofing work. *See* SAC ¶ 49.[12] At most, RTP asserts that State Farm supposedly should have (or could have) paid more than it did. That is not a "denial" of benefits under Section 1115 or 1116. *See Soicher*, 351 P.3d at 568.[13]

### b. RTP Has Not Alleged a "Delay" of Insurance Payments.

The only references in the complaint to a "delay" are two bare assertions that State Farm "unreasonably delayed . . . payment of insurance benefits." SAC ¶¶ 79-80. RTP's conclusory say-so is not enough to avoid dismissal. *See Brooks*, 985 F.3d at 1281. The cases recognizing claims for "delay" typically have involved disputes or lengthy pauses that occurred *during* the claim-handling process. *See, e.g.*, *Soicher*, 351 P.3d at 562-63 (suit filed after settlement demand during claim handling); *Hiland Hills Townhouse Owners Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-1773, 2018 WL 1993423, at *3 (D. Colo. Apr. 27, 2018) (alleged failure to timely resolve claim).

Here, however, RTP has alleged no facts suggesting that State Farm engaged in conduct involving a purported "delay" under Section 1116. There are no allegations about disputes during claim handling or that State Farm moved too slowly. On the contrary, RTP appears to contend—years after the claims process concluded and the insureds (and apparently, RTP) were paid in full—that State Farm purportedly paid too little for repairs. *See* SAC ¶¶ 46-65, 79. That is not a "delay."

---

[12] Again, for each of the three exemplar claims identified by RTP in its original complaint, its first amended complaint, and again in the recently filed second amended complaint, State Farm paid its insureds (who then paid RTP) for the full cost of the actual roof replacement work.

[13] *See also Jenkins v. State Farm Fire and Cas. Co.*, 2017 IL App (1st) 160612-U, ¶ 24 (holding that State Farm did not "partially den[y]" claim by allegedly applying too much depreciation because "[n]o part of [the] claim was actually denied").

### c. RTP Has Not Alleged a Breach of Any Policy Provision.

Statutory bad-faith claims are "derivative" of breach-of-contract claims, *Johnson v. Am. Nat'l Prop. & Cas. Cos.*, No. 17-cv-2218, 2019 WL 463026, at *5 (D. Colo. Feb. 6, 2019) (Martínez, J.), because they are "inextricably linked" with the policy defining the benefits that are owed, *Residences at Olde Town Square Ass'n v. Travelers Cas. Ins. Co. of Am.*, 413 F. Supp. 3d 1070, 1075 (D. Colo. 2019) (Martínez, J.). Thus, to establish a statutory violation here, RTP must allege that State Farm breached its policies. *Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-871, 2019 WL 10946262, at *2 (D. Colo. Mar. 15, 2019) (Martínez, J.) (explaining that breach of contract is an "element" of statutory bad faith claims).

Here, the only allegation even remotely referencing a purported breach is the conclusory assertion (which the Court may properly ignore) that State Farm "delayed or denied payment of . . . the amount it is obligated by the insurance policy to pay . . . ." SAC ¶ 79. But RTP does not identify any policy terms or explain how they were breached. As noted above, the policies limit recovery to *no more than* the insured's "cost to repair." *See supra* at 1. RTP still (after three tries) does not allege that State Farm paid less than any actual insured's actual repair costs. And it would be difficult for RTP to do so given State Farm's documented payments as summarized herein.

### d. RTP Has Not Alleged "Unreasonable" Conduct.

Finally, RTP has failed to allege "unreasonabl[e]" conduct. COLO. REV. STAT. §§ 10-3-1115(1)(a), 1116(1). This element is judged "objectively, based on proof of industry standards." *Thompson v. State Farm Mut. Auto. Ins. Co.*, 457 F. Supp. 3d 998, 1003 (D. Colo. 2020). Here, there are no allegations plausibly suggesting that State Farm "deviated from" such standards. *Marechal v. Safeco Ins. Co. of Am.*, No. 19-cv-2572, 2021 WL 4046415, at *9 (D. Colo. June 7, 2021), *adopting recomm'n*, 2021 WL 3486382, at *2 (D. Colo. Aug. 9, 2021). Instead, the only plausible reading of the complaint is that State Farm acted *in accordance with* industry standards.

-13-

According to RTP, State Farm estimates repair costs using Xactimate, a "program used by insurance companies *across the industry*." SAC ¶ 34 (emphasis added). And, per RTP, State Farm relies on the roofing-removal labor rate "automatically" set by Xactimate. *Id.* ¶ 38. Nothing about these allegations suggests that State Farm's conduct is objectively "unreasonable." In fact, they suggest the opposite. Moreover, RTP's counsel has filed similar complaints against other leading insurers in the District of Colorado, asserting that all of them allegedly use the same default setting in Xactimate.[14] RTP's allegations are hardly the makings of objectively unreasonable conduct.

### B.   RTP's Claim for Declaratory Judgment and Injunctive Relief Also Fails.

RTP's standalone claim for declaratory judgment and injunctive relief fails for several other, independent reasons. With respect to the request for declaratory judgment, RTP's claim seeks to "resolve the same issues raised by other claims"—*i.e.*, the statutory claim. *Cypress Advisors, Inc. v. Davis*, No. 16-cv-1935, 2021 WL 1751158, at *4 (D. Colo. May 4, 2021). The declaratory judgment claim thus "serve[s] no useful purpose" and should be dismissed. *Id.*

As to the request for injunctive relief, that is a remedy, not a cause of action. *See zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-cv-097, 2019 WL 475189, at *6 (D. Colo. Sept. 30, 2019) (dismissing "claim" for injunctive relief). As explained above, RTP is not entitled to that remedy because there is no immediate threat of injury in the future from ongoing work. *See supra* at 8; *Buchwald v. Univ. of N.M. Sch. of Med.*, 159 F.3d 487, 494 (10th Cir. 1998).

### C.   RTP's Unjust-Enrichment Claim Should Also Be Dismissed.

RTP's unjust-enrichment claim must also be dismissed because RTP did not, and cannot, plead a key element—that it "conferred [a benefit] on the defendant." *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096-97 (Col. 1982) (en banc). RTP does not

---

[14] *See* Order at 4 n.2 and cases cited therein.

allege that it gave anything to, or performed any service for, State Farm. *See id.* at 1097. The only "benefit" RTP says State Farm received is not paying the difference between the "skilled" labor rate and the lower, "demolition" labor rate. SAC ¶ 83. But State Farm did not receive this "benefit" from RTP. To the extent RTP conferred a benefit here, it conferred it on *the insureds* by repairing their roofs for the amounts charged (none of which included the higher labor rate).[15] As courts have "repeatedly" recognized, providers cannot sue insurers for unjust enrichment based on "services [they] rendered to insureds." *MC1 Healthcare, Inc. v. United Health Grp.*, No. 3:17-cv-1909, 2019 WL 2015949, at *10 (D. Conn. May 17, 2019) (collecting cases).

Further, RTP cannot proceed with its unjust-enrichment claim because the subject matter of it is governed by an express contract. A party "cannot recover [in] quasi-contract when an express contract covers the same subject matter." *Pernick v. Computershare Trust Co., Inc.*, 136 F. Supp. 3d 1247, 1268 (D. Colo. 2015) (citation omitted); *see also Lee v. Am. Fam. Mut. Ins. Co.*, No. 06-cv-2604, 2008 WL 2704823, at *6 (D. Colo. July 7, 2008) (same rule; insurance contract).

Here, there is a complete overlap between the facts underlying RTP's unjust enrichment claim and the subject of the express contracts at issue (State Farm's policies). Indeed, the gravamen of RTP's complaint is that State Farm allegedly did not pay what it owed under those policies. *See, e.g.*, SAC ¶ 65 (alleging a "denial of a covered benefit"). Just as none of State Farm's insureds could assert an unjust-enrichment claim, neither can RTP do so by purporting to sue on their behalf.

## **CONCLUSION**

State Farm respectfully requests that the Court dismiss Plaintiff's Second Amended Complaint with prejudice.

---

[15] RTP does not claim it lost money on any roofing job because State Farm included a labor rate for tear-off using a DMO trade code. Instead, it appears that RTP is claiming it could have increased its profits on each roofing job had it charged its clients (in this lawsuit, the State Farm insureds) more money and been paid more money by those clients (and indirectly by State Farm).

Dated:  July 8, 2022                                    Respectfully submitted,

                                                        /s/  Jacob L. Kahn

                                                        Franklin D. Patterson
                                                        Hillary D. Patterson
                                                        PATTERSON RIPPLINGER, P.C.
                                                        5613 DTC Parkway, Suite 400
                                                        Greenwood Village, Colorado  80111
                                                        fpatterson@prpclegal.com
                                                        hpatterson@prpclegal.com
                                                        (303) 741-4539

                                                        Joseph A. Cancila
                                                        Jacob L. Kahn
                                                        RILEY SAFER HOLMES & CANCILA LLP
                                                        70 West Madison Street, Suite 2900
                                                        Chicago, Illinois  60602
                                                        jcancila@rshc-law.com
                                                        jkahn@rshc-law.com
                                                        (312) 471-8700

                                                        *Counsel for Defendant State Farm Fire and Casualty Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of July, 2022, I electronically filed the foregoing DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) AND 12(b)(6) with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jacob L. Kahn*