# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-01747-CMA-KLM

RTP ROOFING CO.,

    Plaintiff,

v.

TRAVELERS COMPANIES, INC.,

    Defendant.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Defendant Travelers Companies, Inc.'s ("Travelers") **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6), and 12(b)(7)** [#32] (the "Motion").[1] The Court has reviewed the Motion [#32], the Response [#37], the Reply [#41], the Notice of Supplemental Authority [#51] relevant to the Motion [#32], the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Court respectfully **RECOMMENDS** that the Motion [#32] be **GRANTED**.

### I. Background

This matter is one of several putative class actions in this District concerning the

---

[1] The Motion [#32] has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1) and D.C.COLO.LCivR 72. *See* [#34].

- 1 -

labor rate on estimates for roofing work on property insurance claims in Colorado.[2] When repairing a hail-damaged roof, roofing companies often need to remove ("tear-off") existing, damaged roofing materials before they can repair the roof. *Am. Compl.* [#19] ¶ 6. Plaintiff RTP Roofing Co. ("Plaintiff") alleges that it pays its workers the same wage—equivalent to the "roofing labor rate"—whether they are performing tear-off work or installing new roofing material. *Id.* According to Plaintiff, this is because tear-off work requires the same skill and care as installing roofing materials, and tear-off is performed by roofers as opposed to laborers or another, less skilled trade. *Id*. Plaintiff further alleges that in adjusting its Colorado insureds' hail damage claims, Defendant "refuses to pay the roofing labor rate for tear-off of roofing material." *Id.* ¶ 8. Instead, Defendant pays a lower "demolition rate" which Plaintiff asserts is improper. *Id.* Plaintiff further avers that there is no reasonable basis for denying payment of the roofing labor rate for tear-off of roofing material, and that this is actionable under Colorado's bad faith law. *Id.* ¶¶ 9-10.

Plaintiff is a roofing contractor in the Denver metropolitan area with more than twenty-seven years of experience. *Am. Compl.* [#19] ¶ 23. Plaintiff avers that for at least the last ten years, Plaintiff has frequently performed work for Defendant insureds. *Id.* ¶ 24. "It has been RTP's uniform experience that Defendant refuses to pay the roofing labor rate for tear-off of roofing materials and, instead, will only pay the demolition

---

[2] *See RTP Roofing Co. v. State Farm Fire & Cas. Co.*, No. 1:21-cv-01816-WJM-SKC (D. Colo.); *Advanced Exteriors, Inc. v. Allstate Corp.*, No. 1:21-cv-01539-PAB-STV (D. Colo.); *Advanced Exteriors, Inc. v. Liberty Mut. Grp., Inc.*, No. 1:21-cv-01814-WJM-NYM (D. Colo.); *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n*, No. 1:21-cv-01817-WJM-NRN (D. Colo.).

rate." *Id.* Plaintiff cites three insurance claims where "[Defendant] paid the demolition rate instead of the correct roofing labor rate." *Id.* ¶¶ 31-44. Plaintiff alleges that regarding other unidentified claims, Plaintiff "approached [Defendant's] representatives about [Defendant's] failure to pay the market rate for tear-off of roofing materials" and Defendant declined to pay the rate Plaintiff requested. *Id.* ¶ 25. Plaintiff then "stopped including the roofing labor rate [it desired to receive] on [its] *own* estimates because any attempt to require Defendant to pay the roofing labor rate rather than the demolition rate during the claim process was futile." *Id.* ¶ 26.

Plaintiff asserts claims for (1) violation of Colo. Rev. Stat. §§ 10-3-1115 to -1116, (2) unjust enrichment, and (3) declaratory judgment and injunctive relief. *Am. Compl.* [#19] at 11-13. Defendant seeks to dismiss all three claims.

## II. Standard of Review

### A. Rule 12(b)(1)

A motion to dismiss pursuant to Rule 12(b)(1) attacks a court's subject matter jurisdiction. The determination of a court's jurisdiction over the subject is a threshold question of law. *Madsen v. United States ex. rel. United States Army Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir.1987). A 12(b)(1) motion may take two forms: a facial attack or a factual attack on the complaint. When reviewing a facial attack on the complaint pursuant to Rule 12(b)(1), the Court accepts the allegations of the complaint as true. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a factual attack on a complaint pursuant to Rule 12(b)(1), and when the challenge is supported by affidavits and other documents, the Court makes its own factual findings.

*Id.* at 1003. In that instance, "the [C]ourt does not presume the truthfulness of the complaint's factual allegations, but has broad discretion to allow affidavits [and] other documents . . . ." *Id*. The consideration of such evidence does not convert the motion to a Rule 56 motion unless "the jurisdictional question is intertwined with the merits of the case." *Id*. at 1003.

**B.     Rule 12(b)(6)**

A motion filed pursuant to Rule12(b)(6) tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support plaintiff's allegations." *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[P]lausibility refers to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiff[ ] [has] not nudged [his] claims across the line from conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (internal quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

### III.    Analysis

**A.     12(b)(1)**

As an initial matter, the Court notes that both parties characterize Defendant's Rule

12(b)(1) argument in the Motion [#32] as a factual attack on subject matter jurisdiction. *See Motion* [#32] at 12; *Response* [#37] ¶ 22. The Court agrees. Defendant's Rule 12(b)(1) challenge "goes beyond" the sufficiency of Plaintiff's allegations to attack the facts underlying Plaintiff's assertion of jurisdiction. *Motion* [#32] at 12 (citing *Baker v. U.S.D. 229 Blue Valley*, 979 F.3d 866, 872 (10th Cir. 2020)). Further, Defendant supports its jurisdictional challenge with outside evidence. *See Def.'s Exs. A, B, & C* [#32-1, #32-2, #32-3]. Finally, resolution of Defendant's jurisdictional challenge does not implicate the merits of Plaintiff's claims. *See Holt*, 46 F.3d at 1003. The Court therefore considers Defendant's 12(b)(1) argument as a factual attack on jurisdiction and does not convert the Motion into a summary judgment motion. *Id.*

Plaintiff must have standing for the Court to have subject matter jurisdiction over the case. *See, e.g.*, *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). To satisfy the Constitution's Article III standing requirement, a plaintiff must allege that (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (citing *Friends of the Earth v. Laidlaw Env't Servs.*, 528 U.S. 167, 180-181 (2000)). When "a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." *Spokeo*, 578 U.S. at 338 (citing *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)) (internal quotation marks and ellipses omitted).

In this case, in addition to seeking monetary damages, Plaintiff seeks a declaratory

judgment and a permanent injunction against Defendant's future payment of the demolition rate for tear-off of roofing material. *Am. Compl.* [#19] ¶¶ 67-68. Unlike monetary damages, which offer retrospective relief for a past injury, declaratory and injunctive relief afford a plaintiff prospective relief for a future injury. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283-84 (10th Cir. 2004). A future, threatened injury, rather than an actual one, may constitute an injury in fact. *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982). However, "[a]n imminent or threatened injury must be *certainly impending* to constitute injury in fact, and allegations of *possible* future injury are not sufficient." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 910 (10th Cir. 2014) (emphasis in original; internal quotation marks and ellipses omitted) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes—that the injury is *certainly* impending." *Clapper*, 568 U.S. at 409 (emphasis in original) (citation omitted). Future injuries that are "merely speculative" or based on conjecture are "beyond the bounds of a federal court's jurisdiction." *Tandy*, 380 F.3d at 1283-84 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). The Court addresses Plaintiff's standing to seek monetary damages and standing to seek declaratory and injunctive relief in turn.

    **1.    Standing to Seek Monetary Damages**

Defendant argues that Plaintiff lacks standing because it has not suffered a "concrete harm." *Motion* [#32] at 12 (citing *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,

2200 (2021)). Defendant points out that, for each of the three claims included in the Amended Complaint [#19], Defendant's estimates and Plaintiff's estimates of the costs of the roofing removal were nearly identical. *Motion* [#32] at 12-13; *see also Def.'s Exs. A, B, & C* [#32-1, #32-2, #32-3]. Defendant acknowledges Plaintiff's allegation that it contested Defendant's use of the demolition rate on "other unidentified claims, on unspecified dates," but asserts that Defendant and Plaintiff agreed on the requested and paid amounts for the three claims in the Amended Complaint [#19]. *Motion* [#32] at 13. Defendant argues an insurer "cannot cause 'concrete harm' by paying amounts consistent with what was requested and agreed upon. *Id.*

Plaintiff alleges that it has suffered an injury in fact because Plaintiff pays its roofers the same wage for both installation and tear-off work, while Defendant pays only the lower demolition rate for tear-off rather than the standard roofing labor rate. *Response* [#37] ¶ 23; *see also Am. Compl.* [#19] ¶¶ 6,8. Plaintiff admits that it began using the demolition rate for estimating the cost of tear-off of roofing material sometime after "[Defendant] made it clear it would not pay the appropriate, higher labor rate." *Response* [#37] ¶ 25. Plaintiff attributes its apparently begrudging use of the demolition rate on estimates, including on the three claims identified in the Amended Complaint [#19], to a disinclination to "continue an exercise in futility." *Id.* ¶ 26. Nevertheless, Plaintiff argues that Defendant should have paid more than the requested amount on the three listed claims because "the contract price reflected on [Plaintiff's] estimates is not necessarily indicative of the amount charged or owed for the work performed" and insurers have a "duty to reasonably investigate and adjust a claim." *Id.* ¶¶ 27-28.

- 7 -

In another case in this Court, District Judge William J. Martínez recently considered Plaintiff's nearly identical claims against a different defendant insurance company on a motion to dismiss another putative class action suit. *See RTP Roofing Co. v. State Farm Fire & Cas. Co.*, No. 21-cv-1816-WJM-SKC, 2022 WL 2064931 (D. Colo. June 8, 2022). There, Judge Martínez concluded that Plaintiff lacked standing and dismissed the claims pursuant to Rule 12(b)(1). *Id.* at *5. The Court agrees with Judge Martínez's analysis and finds it largely applicable to the instant Motion [#32].

For instance, the defendant insurer in the *State Farm Fire & Casualty Company* case argued, as does Defendant here, that Plaintiff had been "paid in full" because the insurer paid Plaintiff the amount requested in Plaintiff's estimates on the insurance claims listed by Plaintiff. *Id.*, 2022 WL 2064931, at *3. As in that case, Plaintiff here similarly "fails to present evidence that either its costs to perform removal work or the amount charged to its customers exceeded its own estimates." *Id.* at *4. Even if Plaintiff contested Defendant's use of the demolition rate for estimating the costs of roofing tear-off on previous, unidentified claims, it did not do so on the three claims referenced in the Amended Complaint [#19]. *See Motion* [#32] at 12-13. Plaintiff instead avers that, because Defendant had a duty to reasonably investigate the relevant claims, Defendant should have somehow divined that Plaintiff in fact wanted a higher payment than it requested.[3] *See Response* [#37] ¶¶ 27-28 (citing *Burgess v. Mid-Century Ins. Co.*, 841

---

[3] Plaintiff also makes various policy arguments relating to the purpose of Colo. Rev. Stat. §§ 10-3-1115 to -1116. Plaintiff contends that dismissing the case because Plaintiff began requesting and accepting payment of the demolition rate, rather than protesting Defendant's use of the demolition rate on every insurance claim, unfairly creates a "notice requirement" in Colorado's bad faith statute. *See Response* [#37] ¶ 29. As Plaintiff seems to admit, such arguments relate to the reasonableness of Defendant's conduct, not whether Plaintiff has suffered an injury in fact.

P.2d 325, 328 (Colo. 1992)).  Such a speculative injury is at odds with the evidence provided by the parties.  As with Plaintiff's case pending before Judge Martínez, the available evidence indicates that Defendant paid Plaintiff for all estimated costs on the relevant claims.  *Motion* [#32] at 12-13; *see also State Farm Fire & Cas. Co.*, 2022 WL 2064931, at *4.  The Court does not presume the truthfulness of Plaintiff's unsubstantiated allegations to the contrary, and accordingly finds that Plaintiff fails to show that it suffered an injury in fact.  *See Holt*, 46 F.3d at 1003.  Plaintiff therefore lacks standing to seek monetary damages.

### 2.  Standing to Seek Declaratory and Injunctive Relief

Neither party makes an argument as to whether Plaintiff has standing to seek declaratory and injunctive relief.  Regardless, the Court has an "independent obligation to determine whether subject[ ]matter jurisdiction exists, even in the absence of a challenge from any party."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted).

By seeking an injunction, Plaintiff alleges that Defendant intends to continue its allegedly "unlawful" use of the demolition rate when paying for tear-off of roofing material. *Am. Compl.* [#19] ¶ 67.  Plaintiff's asserted future injuries are too speculative to be "certainly impending" for the purposes of establishing standing.  *See Citizen Ctr.*, 770 F.3d at 910.  Plaintiff's allegations imply, but do not specifically allege, that Defendant's

---

*See id.* ¶ 31; *see also State Farm Fire & Cas. Co.*, 2022 WL 2064931, at *4 (noting that Plaintiff's contention regarding requirements of a Colorado statutory bad faith claim is "unresponsive to [d]efendant's arguments [that Plaintiff lacks standing]").  A plaintiff suing to enforce a statutory right must still meet the elements of Article III standing.  *Spokeo*, 578 U.S. at 341 (noting that a plaintiff does not "automatically satisfy[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right").

refusal to pay anything higher than the demolition rate forces Plaintiff and other roofing companies to absorb the difference between the demolition and roofing labor rates on any claim that requires tear-off of roofing material. *See Am. Compl.* [#19] ¶¶ 6,8. This scenario may state the requisite certainly impending injury. However, the evidence submitted by Defendant suggests that, currently, Plaintiff estimates its costs, and then charges customers for tear-off work using the demolition rate. *Motion* [#32] at 12-13; *see also Def.'s Exs. A, B, & C* [#32-1, #32-2, #32-3]. Plaintiff offers no evidence to demonstrate that it will suffer future losses, nor does it allege that it intends to begin using the roofing labor rate for estimating the costs of tear-off of roofing material in the future. *See State Farm Fire & Cas. Co.*, 2022 WL 2064931, at *4 ("Plaintiff's speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by Defendant at that higher rate is beyond the bounds of this Court's jurisdiction.") (citing *Tandy*, 380 F.3d at 1283-84); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) (holding that injuries based on "'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require"). Without sufficient evidence to demonstrate Plaintiff's standing to seek prospective relief, the Court finds that it does not have subject matter jurisdiction over Plaintiff's claims. *See Tennille v. W. Union Co.*, 809 F.3d 555, 562-63 (10th Cir. 2015) (finding no standing due to uncertainty as to extent and likelihood of possible future injuries and "insufficient record evidence to support such a claim of injury without resort to speculation").

Based on the foregoing, the Court finds that Plaintiff lacks standing to seek

monetary damages or declaratory and injunctive relief. Therefore, the Court **recommends** that the Motion [#32] be **granted** and Plaintiff's claims be **dismissed without prejudice** pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216-17 (10th Cir. 2006) (recognizing the well-settled rule that "where the district court dismisses for lack of jurisdiction . . . the dismissal must be without prejudice").

### B.     Statutory Bad Faith Claim Under Colo. Rev. Stat. §§ 10-3-1115 to -1116

Even if Plaintiff did have standing to bring this suit, the Court finds that Plaintiff fails to state a claim under Rule 12(b)(6) for statutory bad faith. Defendant highlights that § 10-3-1116(1) authorizes "[a] *first-party claimant* as defined in section 10-3-1115 whose *claim for payment of benefits* has been *unreasonably delayed or denied*" to bring an action for statutory damages. *Motion* [#32] at 5 (citing Colo. Rev. Stat. § 10-3-1116(1) (emphasis added). Section 10-3-1115(1)(b)(I) defines first-party claimant as "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed directly to or on behalf of an insured under an insurance policy." Defendant argues that "Plaintiff's conclusory allegations fail to satisfy the requirements of Colo. Rev. Stat. §§ 10-3-1116 and 10-3-1115 because Plaintiff is not a 'first-party claimant,' does not adequately plead a 'claim for benefits' under any insurance policy, and does not allege that Defendant unreasonably delayed or denied any insurance benefits actually claimed." *Id.* The Court finds that this dispute can be resolved in connection with the first argument that Plaintiff is a first-party claimant.

Defendant argues that Plaintiff is not a first-party claimant, and thus has no

statutory right to assert a statutory bad faith claim, because Plaintiff does not allege that any insurance benefits are owed *directly* to it under an insurance policy. *Motion* [#32] at 5. Instead, Plaintiff alleges that it was hired by three Travelers' insureds to perform repair work. *Id.* (citing *Am. Compl.* [#19] ¶¶ 32-44). Plaintiff appears to be claiming, according to Defendant, that it is entitled to additional funds "on behalf of" Travelers' insureds. *Id.* (citing *Am. Compl.* [#19] ¶¶ 56-58). But it is argued that Plaintiff has no such statutory right without authorization from each insured to act on his or her behalf giving Plaintiff authority to negotiate and resolve the claim. *Id.* Without such authorization, Defendant asserts that it potentially would owe duplicative, possibly conflicting obligations to its insureds and their contractor. *Id.*

Turning to the Court's analysis, both parties rely on the Colorado Court of Appeals' decision in *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 305 P.3d 409 (Colo. App. 2012), to support their respective positions. As Plaintiff notes, in that case the court found that a roofing company was a first-party claimant within the meaning of § 10-3-1115(1)(b)(I). *Id.* at 411-12. The Colorado Court of Appeals first stated that "by listing broad categories of persons and entities that may 'assert[ ] an entitlement to benefits,' the legislature made it clear that persons and entities other than the insured are included as potential 'first-party claimants.'" *Id.* The court further stated that because the phrase "on behalf of" was not defined by the statute, it should be read "according to its common usage[,]"meaning "'in the interest of; as the representative of; for the benefit of.'" *Id*. at 412 (quotation omitted).

In considering the facts, the Colorado Court of Appeals observed that Allstate's

insureds gave the roofing company "authority to communicate directly with Allstate regarding their claims based on repair work done by [the company] on the insureds' property." *Kyle W. Larson Enters., Inc.*, 305 P.3d at 412.  It then held that the roofing company's "assertion of a claim against Allstate for payment of such work was necessarily made 'on behalf of' the insureds, as this arrangement relieved the insureds of any obligation to assert claims themselves[,]" meaning that the roofing company met the statutory criteria for a first-party claimant.  *Id.*  Thus, the Colorado Court of Appeals held that "'first-party claimant' includes repair vendors when they assert an entitlement to benefits owed on behalf of an insured under an insurance policy." *Id.*  Because the roofing company was "'asserting an entitlement to benefits owed . . . on behalf of' Allstate's insureds," the court found that the roofing company was a first-party claimant. *Id.*  In so finding, the court noted that the aim of the legislation "is to prevent unfair and deceptive trade practices by insurance companies[,]" and found that "[i]t is in keeping with the legislative objective to allow [the roofing company], as a repair vendor acting on behalf of the insured homeowners, to assert a claim for relief under this statute."  *Id.*

Based on the foregoing, while the *Kyle W. Larson* case found that a roofing company was a first-party claimant for purposes of a statutory bad faith claim, the facts are distinguishable.  Thus, the Court agrees with Defendant that the Amended Complaint [#19] in this case alleges no facts that could establish that Plaintiff is acting "on behalf of" any insured.  Instead, Plaintiff alleges only that it "was the insured's contractor" with respect to three previous, identified claims.  *Id.* ¶¶ 32, 36, 41. Unlike the roofer in *Kyle W. Larson*, Plaintiff does not allege a contractual relationship between Plaintiff and the

insureds that granted Plaintiff the authority to act on their behalf. Plaintiff does not allege that the unidentified insureds gave Plaintiff authority to communicate with Defendant on their behalf, negotiate with and reach agreements with Defendant, or that Plaintiff had an arrangement with the insureds that relieved them of any obligations to pursue their own insurance claims. Plaintiff does not plausibly allege that it is acting as a representative of those insureds or that those insureds even have knowledge of this lawsuit. *See id*. ¶¶ 32-44. It is further unclear from the Amended Complaint [#19] whether the insureds claim that Plaintiff is owed anything more than what was paid. In short, the Amended Complaint [#19] fails to allege that Plaintiff is acting with the authority of, or as a representative of, any insured. Because Plaintiff fails to adequately allege that it brings this suit on behalf of any insured, the Court finds that Plaintiff is not a first-party claimant and is thus not entitled to assert a claim under Colo. Rev. Stat. §§ 10-3-1115 to -1116. Accordingly, the Court **recommends** that the Motion [#32] be **granted** on this basis as well as to Plaintiff's statutory bad faith claim. Plaintiff may, however, be able to cure the deficiencies in this claim. Accordingly, it is further **recommended** that the claim be **dismissed without prejudice**. *Brereton v. Bountiful City Corp*., 434 F.3d at 1219 (holding that a dismissal with prejudice is appropriate where a complaint fails to state a claim for relief under Rule 12(b)(6) and amendment would be futile.).

### IV.  Conclusion

Based on the foregoing reasons,

IT IS HEREBY **RECOMMENDED** that the Motion [#32] be **GRANTED**, and that Plaintiff's claims be **DISMISSED WITHOUT PREJUDICE** on the basis that Plaintiff lacks

standing pursuant to Rule 12(b)(1).

IT IS FURTHER **RECOMMENDED** as an additional basis for dismissal of the statutory bad faith claim that the claim be **DISMISSED WITHOUT PREJUDICE** because Plaintiff is not a first-party claimant as required to assert such a claim.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: July 22, 2022

BY THE COURT:

*[signature]*

Kristen L. Mix
United States Magistrate Judge