**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:21-cv-01816-WJM-SKC

RTP ROOFING CO.,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

---

**PLAINTIFF'S RESPONSE TO**
**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S**
**MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**
**PURSUANT TO RULES 12(b)(1) AND 12(b)(6)**

---

This case is brought under Colorado Revised Statutes §§ 10-3-1115 and -1116 (the "Statute"), which prohibit an insurance company from unreasonably denying or delaying payment of insurance benefits. Plaintiff, RTP Roofing Co. ("RTP") alleges that Defendant ("State Farm") has denied the admittedly-owed benefit of the labor for tear-off of damaged roofing material by refusing to pay the correct labor rate. Given State Farm's universal refusal to pay what it should and the nature of the harm (the damages on each claim are small but collectively total millions), collective action is the only way to compel State Farm to stop its wrongful practice of denying roofing labor ("RFG") for roofing tear-off work and hold State Farm accountable.

In its motion to dismiss RTP's First Amended Complaint (Doc. #22) ("FAC"), State Farm argued under Rule 12(b)(1) that RTP lacked Article III standing and that RTP's claims should be dismissed under Rule 12(b)(6) for failure to state a claim. The Court granted State Farm's motion (Doc. #39) ("Order"), dismissing RTP's FAC without prejudice on the basis that RTP lacked standing because it did not sufficiently demonstrate an injury in fact. Order, p 10. The Court noted that it "cannot definitively conclude that there are no set of facts Plaintiff might be able to plausibly allege to cure"; acknowledged that RTP could plausibly allege a loss of revenue based on State Farm's behavior; and permitted RTP to file a second amended complaint. Order, pp 12, 9 n.4.

RTP's Second Amended Complaint (Doc. 40) ("SAC") provides additional factual context for RTP's claims and alleges sufficient facts that RTP suffered and continues to suffer a concrete loss of revenue as a direct result of State Farm's unreasonable use of Xactimate, a practice that is widely known in the roofing industry and which RTP has previously raised to State Farm (to no avail). In its Motion, State Farm fails to challenge RTP's more detailed allegations of loss of revenue injury; instead, State Farm rehashes the arguments from its prior motion and takes irrelevant potshots at additional facts in the SAC. Regarding State Farm's 12(b)(6) challenges,

1

Colorado law does not support State Farm's novel analysis of the Statute, and RTP has plausibly alleged that State Farm unreasonably denied a covered benefit. The Motion should be denied.

## I.      RTP has Standing to Pursue its Claims.

This Court has subject matter jurisdiction over RTP's claims. RTP's allegations in the SAC, as well as the attached evidence, demonstrate that RTP has Article III standing. RTP has suffered an actual, concrete injury — namely, the <u>loss of revenue</u> that occurs each time State Farm uses the Xactimate software to arbitrarily and unlawfully <u>reduce</u> the labor rate it pays its insureds (who in turn pay RTP) for roofing material tear-off, <u>compared to</u> the higher rate State Farm pays for roofing material installation. RTP has properly alleged that State Farm's arbitrary reduction in the labor rate for tear-off is an unreasonable denial of an admittedly covered benefit (a violation of the Statute), which results in a loss of revenue to RTP (the harm). State Farm's practice, and the loss of revenue suffered by RTP and the Class, continue to this day.

State Farm's entire standing argument flows from an initial mischaracterization of RTP's allegations. State Farm incorrectly asserts that, "[a]ccording to RTP, the injury occurred because RTP hires 'skilled workers' for removal work who command higher wages and require more workers' compensation insurance, neither of which is accounted for by State Farm's use of the 'demolition' labor rate." Mot., p 4. To the contrary, RTP does not allege that its <u>injury</u> is based on wages or insurance premiums paid; rather, the allegations and evidence regarding the difference between demolition and roofing work (and associated operating expenses) demonstrate the <u>unreasonableness</u> of State Farm's failure to pay the RFG rate for tear-off work.

To be clear: <u>RTP's claim of injury is that it loses revenue because State Farm is required under the Statute to pay more than it does for the tear-off labor required to replace the damaged roofs of its Colorado customers</u>. State Farm presents no reason, because it cannot, for why <u>that</u>

2

harm is insufficient to confer standing.

### A. Article III standing.

Under Article III, "a federal court may resolve only 'a real controversy with real impact on real persons.'" *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190, 2203 (2021) (citation omitted). "The standing inquiry ensures that a plaintiff has a sufficient personal stake in the dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). Plaintiffs who allege a concrete harm from a defendant's statutory violation have Article III standing. *TransUnion*, 141 S. Ct. at 2205.

Plaintiffs must demonstrate standing with the manner and degree of evidence required at the current stage of litigation. *Id.,* at 2208. Here, the parties have not engaged in <u>any discovery</u>.

#### i. RTP alleges a concrete loss of revenue that is directly caused by State Farm's practice of unreasonably paying the DMO labor rate.

RTP alleges that State Farm uses Xactimate to create its repair estimates, which include a line-by-line breakdown of the various aspects of the roofing job, including separate lines for removal and installation of roofing material. *See* SAC, ¶¶ 34-48) Further, State Farm uses Xactimate to <u>determine what it will pay</u> on an insurance claim. SAC, ¶¶ 36, 47; Ex. 1, Declaration of Scott Ponzio ("Dec."), ¶ 34. That is, State Farm only makes payments for roofing work (including labor) based on its own estimates of the costs to repair, created in Xactimate. State Farm does not make payments based on RTP's actual costs or expenses and makes no requests for RTP's actual costs, profits, or losses. SAC ¶¶ 36, 47; Dec., ¶¶ 32-34[1].

Because State Farm's Xactimate estimates are comprised of line items, each time State

---

[1] State Farm's practice of using Xactimate to reduce the tear-off labor rate to DMO is widely known in the industry. SAC ¶¶ 6, 33; Dec., ¶ 28.

3

Farm uses Xactimate to improperly select the general demolition ("DMO") labor rate for the tear-off line item(s), State Farm unreasonably and uniformly reduces the amount it pays for covered benefits that its customers receive on properly submitted insurance claim.

By reducing the amount State Farm pays to its insureds for admittedly covered benefits, State Farm reduces the revenue that RTP receives for repairing the insured's roof. This is universally the case because RTP's (and most, if not all, roofing contractors') practice is to charge its customers what the insurance company finally agrees to pay, plus the deductible, a practice that ensures Colorado insureds efficiently, and without spending out-of-pocket, receive necessary repairs to their properties. SAC ¶ 65; Dec., ¶¶ 7-19, 32-41.

RTP's monetary harm injury is concrete and particularized — it is the loss of revenue that occurs as a direct result of State Farm's practice of paying the lower DMO labor rate (instead of RFG) for tear-off. It can be easily calculated by multiplying the "quantity" of tear-off labor (measured in roofing "squares" equal to 100 square feet) by the difference between the improper DMO labor rate and the correct RFG labor rate. SAC, ¶¶ 4, 5, 52-53, 57-58, 62-63.

If State Farm applied the correct RFG labor rate in its Xactimate estimates, it would (as a function of basic mathematics) increase the funds paid on insurance claims by the amount described above, and (as a function of how RTP and other roofing companies are compensated for their work that is covered by State Farm) increase the amount paid to RTP by that same amount.

    ii.  **RTP's loss of revenue is not impermissibly speculative or hypothetical.**

To have Article III standing, RTP's injury or threat of injury must be actual and imminent, not conjectural, speculative, or hypothetical. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974); *Wyoming v. U.S. Dep't of Interior*, 674 F.3d 1220, 1231 (10th Cir. 2012).

**RTP alleges a straightforward, actual monetary harm.** By unreasonably using

4

Xactimate to pay the DMO labor rate for tear-off (an unreasonable denial under the Statute), State Farm pays its insureds less than it should, who in turn pay this amount to RTP, resulting in a loss of revenue to RTP. State Farm has engaged in this behavior in the past and continues to do so. RTP intends to continue working for customers who are insured by State Farm and to keep charging its customers what State Farm pays on the claim. Dec., ¶¶ 19-20; *see Tandy*, 380 F.3d at 1284-1290 (relying on affidavits to find standing to seek (i) prospective relief for a group of people with disabilities who "tested" the City of Wichita's public transit system for compliance with the ADA and Rehabilitation Act and averred their intent to use the transit system,[2] and (ii) damages for those who testified that they were denied rides or delayed).

Physical or monetary harms obviously and readily qualify as concrete injuries under Article III. *TransUnion*, 141 S. Ct. at 2197. Further, allegations of lost revenue (as opposed to "losing money" on a job) are sufficient to confer standing when the loss is a clear and direct result of the challenged behavior. In *Mount Evans Co. v. Madigan*, the Tenth Circuit found that the county-petitioner had Article III standing to challenge the Forest Service's decision not to rebuild a structure that clearly generated revenue-sharing and sales tax revenue for the county.[3] 14 F.3d 1444, 1451-52 (10th Cir. 1994). Similarly, in *Wyoming v. Oklahoma*, the Supreme Court held that a deprivation of tax revenues resulting from the passage of a law requiring coal-fired electric

---

[2] The Court found that a blind passenger had standing to seek prospective relief regarding the unavailability of Braille at Wichita's transit centers because, as of the commencement of the case, such materials were not present in the transit centers. However, the Court relied on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) to conclude that this passenger's injury related to the drivers' failure to call out stops or offer seats was "too speculative" to confer standing. *Tandy v. City of Wichita*, 380 F.3d 1277, 1288 (10th Cir. 2004). Here, RTP alleges that State Farm pays the DMO labor rate for tear-off 100% of the time and its practice is ongoing.

[3] Notably, the county had standing even though it was not certain that concession sales would be reopened in the structure or that if sales were reopened, sales would actually take place.

utilities to burn a mixture containing at least 10% Oklahoma-mined coal was sufficient to establish standing; the Court held that Wyoming alleged a direct injury in the form of a loss of specific tax revenues. 502 U.S. 437, 448-450 (1992). Here, RTP's revenues are directly tied to the amount State Farm pays its insureds, determined by its use of Xactimate. When State Farm uses Xactimate to arbitrarily reduce the tear-off line items in its estimates, RTP loses that revenue as a direct result.

In a notably analogous case, *S. Furniture Leasing, Inc. v. YRC, Inc.*, the Tenth Circuit found that the plaintiff plausibly alleged an injury-in-fact (a monetary overpayment) resulting from defendant's practice of failing to correct its freight charges downward when the actual shipment weight was less than originally calculated. 989 F.3d 1141, 1145-46 (10th Cir. 2021). Like the plaintiff in that case, RTP's revenue is "based in part" on State Farm's handling of the tear-off line item in its estimates, and RTP has alleged that State Farm is not paying what it "should have." *Id.*

**RTP's concrete injury is not impermissibly speculative or hypothetical.** State Farm argues that "RTP's theory of injury relies on multiple levels of speculation." Mot., p 7. Notably, in all but the most obvious situations (*e.g.*, a personal injury case involving no causation questions), it is possible to identify at least some variables and hypothetical reasoning in any claimed injury, especially in the context of injunctive relief and at an early stage in a case. However, the law of standing does not require absolute proof. In *United States v. Students Challenging Regul. Agency Procs. (SCRAP)*, the Supreme Court held that an environmental group's allegations of injury (which assumed a new freight rate structure would ultimately cause a negative environmental impact) were sufficiently specific and perceptible to survive a motion to dismiss. 412 U.S. 669, 688-90 (1973). RTP's loss of revenue comes nowhere close to requiring as many assumptions to arrive at the alleged injury as in *SCRAP*.

RTP does not rely on an unsupported and unpredictable chain of hypotheticals to establish

its injury. The key variable standing between RTP and "RFG" revenue for tear-off is State Farm's improper use of Xactimate (the challenged behavior); if State Farm were to select RFG labor for tear-off work (correcting the challenged behavior), then RTP would necessarily not lose revenue). *Compare Whitmore v. Arkansas*, 495 U.S. 149, 159 (1990) (injury too speculative because it relied on extensive conjecture about what might happen in plaintiff's criminal case in the future), *and Infant Swimming Research, Inc. v. Faegre & Benson, LLP,* 335 F. App'x 707, 714 (10th Cir. 2009) (no injury-in-fact because "[t]here was no evidence of this purely conjectural allegation" that plaintiff lost business income because defendant's conduct allowed competition with the plaintiff).[4]

**RTP has presented clear evidence to support its injury allegations**. Even at this early stage of the case when the parties have not engaged in any discovery, RTP has presented evidence that State Farm's treatment of tear-off labor directly results in RTP losing revenue; the loss of revenue happens on every claim; the injury is certain to continue; and the "RFG-DMO" issue is well-known in the industry.[5] Dec., ¶¶ 21-41.

---

[4] RTP has properly alleged that it lost and will continue to lose revenue. *Compare S. Furniture Leasing*, 989 F.3d at 1145-46 (plaintiff plausibly alleged an injury-in-fact (a monetary overpayment) resulting from defendant's practice of failing to correct its freight charges downward when the actual shipment weight was less than originally calculated), *with O'Shea*, 414 U.S. at 497-99 (plaintiffs challenging criminal justice practices lacked standing because they did not allege that they had suffered any injury (*e.g.*, been arrested or were on trial) and because it would require speculation to anticipate whether plaintiffs would be arrested, charged, and tried), *and City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (plaintiff who was choked during a traffic stop lacked standing to enjoin use of chokeholds because of the "speculative nature of his claim that he will again experience injury").

[5] *Compare U.S. Dept of Interior*, 674 F.3d at 1232-1234 (no standing to challenge snowmobile use regulations because no evidence in the extensive record that the regulations impacted the promotion of tourism, actually reduced revenue, or would reduce revenue in the future), *and Reiskin v. Greyhound Lines, Inc.*, No. 2022 WL 2374593, at *6 (D. Colo. June 30, 2022) (insufficient evidence of threat of injury to seek injunctive relief under the ADA or Rehabilitation

### iii. RTP's actual costs have no bearing on RTP's loss of revenue injury.

As noted above, State Farm's misstatement of RTP's alleged injury conflates the challenged behavior (State Farm's use of Xactimate to arbitrarily reduce what it pays for tear-off labor) with the injury itself. This misstatement incorrectly shifts the focus of the standing analysis to RTP's "account[ing]," its "own estimates" and "costs on these claims or the amounts it charged its customers." Mot., pp 4-6. Because RTP's injury is a loss of revenue, the "expense" side of RTP's operations or whether RTP "lost money" have no bearing on the question of "concreteness." RTP might make money (*i.e.*, realize a profit) or lose money (*i.e.*, incur a loss) to varying degrees on each job; what does not change on each job is State Farm's application of an <u>arbitrary discount</u> to the amount it agrees to pay for roofing labor. RTP knows that it will lose revenue one hundred percent of the time it works on State Farm's claims because State Farm is not paying what it should for tear-off labor. Dec., ¶¶ 210-27, 32-41.[6] *See Wyoming*, 502 U.S. at 448-450; *S. Furniture Leasing*, 989 F.3d at 1145-46; *Mount Evans*, 14 F.3d at 1451-52 (allegations of loss of revenue and overpayment sufficient to confer standing without examining plaintiffs' expenses or profits).[7]

Similarly, State Farm's repeated assertion that RTP has been "paid in full" and emphasis on RTP's purported failure to dispute State Farm's practices distract from the proper standing analysis. As an initial matter, the SAC provides specific factual allegations that RTP tried and failed to get State Farm to pay the RFG labor rate for roof tear-off, and RTP has explained why it

---

Act against a bus carrier, where malfunctioning bus lift prevented only one of many trips by a plaintiff; and a malfunction appeared highly unlikely).

[6] This is why RTP has alleged — from the outset — that its injury can be easily quantified by calculating the difference between the RFG labor rate properly used for installation labor and the DMO rate improperly used for removal labor.

[7] *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) is inapplicable. In *Avery*, the Supreme Court of Illinois rejected plaintiffs' <u>breach of contract</u> "specification damages" theory as a matter of law in a post-trial appeal; the Court <u>did not address standing</u>.

8

continues to work on State Farm claims, "speak the language" of Xactimate, and include DMO pricing for tear-off on its estimates. SAC ¶¶ 34-48; Dec., ¶¶ 5-6, 12, 34, 42-47.[8] Further, these facts are not a prerequisite to demonstrating actual and imminent threat of injury where the injury is an alleged loss of revenue resulting directly from State Farm's ongoing behavior. *See*, *e.g.*, *Tandy*, 380 F.3d at 1287-88 (10th Cir. 2004) (people with disabilities rode and intended to continue riding inadequate transit system, without evidence of them asking for compliance).[9, 10]

Throughout the Motion, State Farm sidesteps the SAC's attempt to clarify RTP's injury; indeed, State Farm derides RTP's injury by putting "loss of revenue" in quotation marks before restating its argument that RTP's injury is too attenuated. Mot., p 7. State Farm's lack of engagement with RTP's allegations in its SAC — and its refusal to refute the central point, that RTP was concretely harmed by losing revenue because of a violation of the Statute — permeates the Motion. That is, until footnote 15 on the very last page of the Motion, where State Farm concedes that RTP is focused on the amount of money State Farm pays on claims that is then paid to RTP to perform the work. The Court should see through the Motion's distortion of the standing analysis and find that RTP has plausibly alleged a concrete injury caused by State Farm's practices.

---

[8] State Farm also mischaracterizes RTP's additional allegations in the SAC regarding RTP's past efforts to raise the "RFG-DMO issue" with State Farm, as well as RTP's practice of not using Xactimate on non-insurance jobs. Mot., pp 6-8. RTP included these allegations to provide additional information about the roofing industry in which RTP operates and add context to RTP's loss of revenue injury, not to "explain why it believes it should be paid more" or "show future injury." Mot., pp 7-8; s*ee Stuart v. State Farm Fire & Cas. Co.*, 910 F.3d 371, 377 (8th Cir. 2018) (whether some plaintiffs are unable to prove damages because they eventually recouped the withheld depreciation through an RCV payment is a merits question).

[9] State Farm's belief that RTP's "theory" is "absurd," Mot., p 7 n.7, also reveals the Motion's improper focus on the merits of this case. The length of time State Farm has been engaged in the challenged practice is a state of limitations issue and arguably a "reasonableness" issue; it has nothing to do with whether RTP has alleged a monetary harm.

[10] What is absurd is State Farm's position that being "paid in full" negates standing. If that were the case, no plaintiff would have standing to sue only for unreasonable delay under the Statute.

II. **RTP has Adequately Stated a Claim Under the Bad Faith Statute.**

A. **RTP is a First-Party Claimant.**

State Farm's arguments that RTP is not a first-party claimant under the Statute are wholly without merit. State Farm asks the Court to follow its novel analysis of the Statute, as if the question of what "first-party claimant" means is a matter of first impression under Colorado law. State Farm ignores the Colorado Court of Appeals' thorough analysis of this question in *Kyle W. Larson Enterprises, Inc. v. Allstate Ins.*, 305 P.3d 409 (Colo. App. 2012), the authority to which this Court should look. *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir. 1986); *Pruitt v. Heimgartner*, 620 F. App'x 653, 655 (10th Cir. 2015). Not only does State Farm's analysis inexplicably fail to follow *Larson*,[11] it puts forth two requirements for finding that a vendor is a first-party claimant that *Larson* explicitly rejected — subrogation of rights ("effectively replac[ing] the insured," Mot., p 11) and an agreement or contract ("express authority," *id.* 11). Accordingly, State Farm's argument should be disregarded.

***Larson* provides a thorough and definitive analysis under Colorado law of the Statute and what "first-party claimant" means.** The court in *Larson* held that "[c]onsistent with that intent, we construe section 10–3–1115(1)(b) to include vendors such as Roofer who are authorized to assert, and do assert, claims on behalf of insureds." *Larson*, 305 P.3d at 411. The court explicitly rejected defendant's argument "that a contractual relationship with the insurer or a right to subrogation is a prerequisite to the ability to assert a claim 'on behalf of' an insured." *Id.* at 413.

Like RTP, the plaintiff in the *Larson* case was a roofing company. *Id.* at 410. Larson contracted with Allstate insureds to repair their roofs. *Id.* The contracts provided that repair costs

---

[11] State Farm's citation to *Larson* misrepresents its holding by adding its own phrase "in his or her stead" to the end of the quotation on page 10.

would be paid from insurance proceeds and gave Larson authority to communicate with Allstate regarding the claims. *Id.* Larson and Allstate communicated regarding the amounts Allstate would pay and Larson began work. *Id.* Larson later determined that additional repairs were needed, completed the repairs, and invoiced Allstate for them. *Id.* Allstate refused to pay. *Id.* Larson sued Allstate for unreasonable delay and denial of benefits. *Id.* The trial court granted summary judgment in favor of Allstate, finding that Larson was not a first-party claimant. *Id.*

On appeal, the Colorado Court of Appeals disagreed, finding that the definition of "first-party claimant" unambiguously included Larson. *Id.* at 411-12. The court noted that by listing "broad categories of persons and entities that may 'assert[ ] an entitlement to benefits,' the legislature made it clear that persons and entities other than the insured are included as potential 'first-party claimants.'" *Id.* at 412. The court determined that "on behalf of" means "in the interest of; as the representative of; for the benefit of." *Id.* The Court found that the purpose of the legislation is "to prevent unfair and deceptive practices by insurance companies." *Id.*[12]

***Larson* rejected that subrogation and an agreement are required.** *Id.* at 412-13. The Motion may not use the words "subrogation" or "contract," but State Farm cannot rely on semantics to avoid *Larson's* holding. *Id.* State Farm concludes that the requirement for a first-party claimant is: "if the plaintiff is not an insured, it may sue under Section 1116 *only if* it has effectively replaced the insured, with the insured's express authority." Mot., p 11 (emphasis original). The first part of State Farm's conclusion requires that a roofer "replace[] the insured"— in other words, that the insured's rights must have been subrogated to the roofer, a requirement explicitly rejected by *Larson*. *See Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 833 (Colo. 2004),

---

[12] State Farm's practice of arbitrarily discounting payment for roofing labor is the exact type of unfair business practice that the Statute is meant to address.

as modified on denial of reh'g (June 7, 2004) (defining subrogation as "the substitution of another person in the place of a creditor"). The second part of State Farm's conclusion is that the subrogation must be "with the insured's express authority" — in other words, that subrogation rights must be given expressly in an agreement or contract (written or otherwise), also rejected by *Larson*. *See Rezac Livestock Comm'n Co. v. Pinnacle Bank*, 255 F. Sup. 3d 1150, 1167 (D. Kan. 2017) (express authority exists when "the principal has delegated authority to the agent by words which expressly authorize the agent to do a delegable act" (emphasis added)). Accordingly, under *Larson*, State Farm's argument that RTP is not a first-party claimant because it did not "replace" the insured pursuant to "express" authority must be rejected.

***Larson* and the uniform decisions of this Court (absent from State Farm's Motion) support RTP's status as a first-party claimant.** In *Sable Cove Condo. Ass'n v. Owners Ins.*, this Court held that a contractor, like RTP here, "is asserting an entitlement to benefits owed directly to or on behalf of an insured, Sable Cover, under an insurance policy." 2014 WL 4398668, at *4 (D. Colo. Sept. 5, 2014). The court held that *Larson* does not require "the repair vendor to have been given authority to communicate with the insurance carrier on behalf of the insured." *Id.* at *4. The court also rejected arguments that the contractor could not be a first-party claimant where (1) "the Complaint alleges that it was [the insured], not [the contractor], that submitted the claim to defendant and that defendant was communicating with a "representative of [the insured];" and (2) both the contractor and the insured had brought claims under the Statute. *Id.*

*Sable Cove* forecloses State Farm's argument that the contractor must be authorized to bring the insured's claims "in his or her stead," because "the statute contemplates that either the insured or the person proceeding "on behalf of" the insured may bring suit—but not both." Mot., p 10. While the court did ultimately find that the insured and the contractor could not both pursue

12

their claims, it was not because the contractor was not a first-party claimant. *Id.* at *4 (rejecting defendant's argument "this is not a situation where the contractor is pursuing the statutory claim on behalf of the insured, as Sable Cove is a named plaintiff pursuing its own claim").

Similarly, in *High Impact, LLC v. State Farm Fire & Cas. Co.*, this Court found that a contractor, like RTP, was a first-party claimant under the Statute. Judge Wang relied on the following facts to hold that the case was analogous to *Larson*:

> There is no dispute that the Lees agreed to pay High Impact for its repairs from the insurance proceeds paid by State Farm and granted High Impact the absolute right to contact and negotiate the necessary repairs with State Farm. See [#42-2]. There is also no dispute that High Impact sought payment from State Farm.

The analyses and holdings in *Larson*, *Sable Cove* and *High Impact* are directly applicable to the facts of this case. RTP performed roofing work for the insured in connection with a claim under the insured's policy with State Farm and in exchange for payment of the funds the insured was entitled to under their State Farm Policy; and RTP had authority to and did submit its own estimates directly to State Farm and negotiate the amount of payment, as is evidenced by RTP's requests for adjustments its RTP's estimates. SAC ¶¶ 49-65; *see also* Dec. ¶¶ 7-20. In other words, RTP and the insured had "an arrangement that relieved the insureds of any obligation to assert the claims themselves," meaning that "the assertion of claims against [the insurer] for payment for such repair work was necessarily made 'on behalf of' the insured.'" *Larson*, 305 P.3d at 412.[13]

### B. RTP has Plausibly Alleged Violations of the Bad Faith Statute.

State Farm argues that RTP has failed to allege a plausible claim of unreasonable delay or denial of covered benefits. Mot., pp 11-13. This is inaccurate. To prevail on its statutory bad faith

---

[13] Contrary to the Motion, RTP does not assert that it is a third-party beneficiary of the policy. Mot., p 11. Rather, RTP maintains that it is a first-party claimant. SAC, ¶ 78.

claim, RTP must show that (1) benefits were owed under the policy; and (2) State Farm unreasonably delayed or denied payment of the claim. *TBL Collectibles, Inc. v. Owners Ins.*, 285 F. Supp. 3d 1170, 1201 (D. Colo. 2018). The SAC describes, in a detailed, non-conclusory manner, how State Farm systematically and wrongfully denies[14] benefits when it refuses to pay RFG labor for tear-off. RTP alleges that State Farm admits tear-off labor benefits (*i.e.*, coverage for the cost to remove a roof) are covered and owed under the applicable polices because it agreed to pay for labor (and specifically to pay RFG for installation labor).[15] SAC ¶¶ 1-6, 17-65, 79. The SAC also explains why State Farm's practice is completely unreasonable. SAC, ¶¶ 17-25. When RTP's factual allegations are accepted as true and construed in the light most favorable to RTP, and taking into account well-settled law that reasonableness is ordinarily a fact question for the jury (which is often presented with the aid of expert testimony), it is clear that the SAC meets the 12(b)(6)

---

[14] State Farm's assertions that RTP's claims do not entail a complete "denial", or a time-based "delay" are overly technical and unsupported. RTP alleges an "underpayment," which is a valid basis for a statutory bad faith claim, regardless of how it is characterized. *See*, *e.g.*, *Hampden Auto Body Co. v. Auto-Owners Ins. Co.*, No. 2020 WL 550591, at *6 n.2 (D. Colo. Feb. 4, 2020) (a "denial" means "a refusal to pay part or all of a claim."); *Pinewood Townhome Ass'n, Inc v. Auto Owners Ins. Co.*, 2017 WL 590294, at *5 (D. Colo. Feb. 13, 2017) ("delay, deny, or underpay").

[15] State Farm cites the policies' "cost to repair or replace" provisions to argue that RTP cannot claim additional tear-off labor benefits were owed because the insureds paid RTP what State Farm paid the insureds. As the parties' previous briefing on the meaning of the provisions indicates (*see, e.g.*, Doc. #25, ¶¶ 25-31), evaluating State Farm's argument requires interpretation of ambiguous policy language: "estimated cost to repair or replace" and "cost to repair or replace" are vague and ambiguous, especially where RTP alleges that State Farm uses Xactimate to determine the "cost" of roofing material tear-off. *Test Servs., Inc. v. Princeton Rev., Inc.*, No. 05-CV-01674-MSK-CBS, 2005 WL 3211594, at *4 (D. Colo. Nov. 29, 2005) ("Only where the language at issue is unambiguous may the court construe it as a matter of law"); *see also Dawson v. Gen. Motors Corp.*, 977 F.2d 369, 373 (7th Cir. 1992) ("If the language of an alleged contract is ambiguous . . ., the interpretation of the language is a question of fact which the court cannot properly determine on a motion to dismiss"). Further, State Farm's interpretation of the policy (which completely shields it from liability whenever the insured is able to complete repairs) violates public policy as stated in the Statute. *See Etherton v. Owners Insurance Company*, 829 F.3d 1209, 1225-26 (10th Cir. 2016) (voiding Owners' interpretation as against public policy). The meaning of ambiguous provisions and public policy considerations cannot be determined on a Rule 12(b)(6) motion.

standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**III.    RTP's Other Claims are Adequately Stated.**

If the Court denies the Motion as to RTP's statutory bad faith claim, it should also deny the Motion as to RTP's request for declaratory judgment and injunctive relief. *See Bellwether Community Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088-89, 1089 n.7 (D. Colo. 2018) (Martinez, J.). The only argument State Farm makes as to declaratory judgment is that it seeks to resolve the same issue as the statutory bad faith claim therefore serves no purpose and should be dismissed. As for injunctive relief, State Farm contends that it is not a cause of action but a remedy and alleges that RTP's Complaint speaks only of prior conduct and does not allege continuing injury. Paragraphs 2, 5, 23-33, 45, 47-48, and 65 of the SAC allege that State Farm's wrongful acts are continuous and ongoing. RTP asks the Court to enter a declaratory judgment that State's Farm conduct violates Sections 1115 and 1116 and an injunction to prevent further harm. SAC at ¶55-56. This relief is not available under the statute. *See* COLO. REV. STAT. §§ 10-3-1115, -1116. RTP's unjust enrichment claim likewise survives dismissal. SAC paragraphs 83-84 allege that State Farm received the benefit of the difference in the roofing labor rate and the demolition rate at the expense of RTP and the class. RTP's contention that the unjust enrichment claim fails because a contract covers the same subject matter addressed by the claim likewise fails. An exception to the general rule precluding an unjust enrichment claim when an express contract covers the same subject matter applies when the party alleging unjust enrichment will have no right under an enforceable contract. *See Interbank Investments, LLC v. Eagle River Water & Sanitation Dist.*, 77 P.3d 814, 816 (Colo. App. 2003). Because RTP is not a party to the insured's contract with State Farm, the exception defeats State Farm's unjust enrichment argument.

Respectfully submitted July 29, 2022.

By:

/s/ Jonathan S. Sar
Daly & Black, P.C.
Jonathan S. Sar
Thomas J. Archer
3200 Cherry Creek S. Drive
Suite 520
Denver, CO 80209
Phone Number: (303) 835-4572
Fax Number: (888) 375-0630
Email: jsar@dalyblack.com
tarcher@dalyblack.com

and

Daly & Black, P.C.
Richard D. Daly
John Scott Black
Melissa Waden Wray
2211 Norfolk St., Suite 800
Houston, Texas 77098
Tel: 713.655.1405
Email: rdaly@dalyblack.com
jblack@dalyblack.com
mwray@dalyblack.com
ecfs@dalyblack.com (service)

and

Gray LLC
William C. Gray
Nathalie E. Sar
17 N. State St., Suite 1600
Chicago, Illinois 60602
Tel: 312.967.3653
Email: bgray@grayllclaw.com
nsar@grayllclaw.com

*Attorneys for Plaintiff*
*RTP Roofing Co.*

16

## CERTIFICATE OF SERVICE

I hereby certify that on July 29, 2022, the foregoing Plaintiff's Response to Defendant State Farm Fire and Casualty Company's Motion to Dismiss Plaintiff's Second Amended Complaint Pursuant to Rules 12(b)(1) and 12(b)(6) was electronically filed and served using the Court's CM/ECF system, to the following:

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
Telephone (303) 741-4539
Email: fpatterson@prpclegal.com
hpatterson@prpclegal.com

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
Telephone (312) 471-8700
Email: jcancila@rshc-law.com
jkahn@rshc-law.com

*Attorneys for Defendant*
*State Farm Fire and Casualty Company*

/s/ *Jonathan S. Sar*