Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:21-cv-01816-WJM-SKC

RTP ROOFING CO.,

    Plaintiff,

v.

STATE FARM FIRE AND CASUALTY COMPANY,

    Defendant.

## DECLARATION OF SCOTT PONZIO

### Background

1. My name is Scott Ponzio. I am over 18 years old, of sound mind, and capable of making this declaration. I make this declaration on my own information, knowledge, and belief. The matters stated herein are true and correct and the facts stated herein are within my personal knowledge. I could testify competently to these matters and facts if asked.

2. I am co-owner and Controller of RTP Roofing Co. ("RTP"), a roofing contractor in the Denver metro area. I am a custodian of records of RTP.

3. RTP has been doing business as a roofing contractor since 1995. Ray Phillips, co-owner of RTP, has served as President and Vice President of the Colorado Roofing Association ("CRA"), a trade association committed to helping homeowners and commercial building owners and managers make informed decisions about replacing and maintaining their roof systems. I currently serve on CRA's Board.

4. RTP frequently contracts with Colorado homeowners to perform work that is coved by the homeowners' property insurance policy.

5. Approximately 90% percent of RTP's work is on insurance claims.

6. Approximately 10% percent of RTP's work is with State Farm.

### RTP's Claims Process

7. In most situations, when RTP is contacted by an insured, the insured has already filed an insurance claim and received an initial estimate from the insurance company indicating what the insurance company agrees to pay, usually following an inspection by the insurance

company's adjuster.

8. RTP inspects the property and determines a scope of work that is required to put the property back in pre-loss condition.

9. RTP does not require its customers to sign a contract up front. Rather, RTP's practice is to request that the insured share the insurance company estimate and authorize RTP to work with the insurance company to come to an agreed scope of work.

10. After receiving authorization, there is some back-and-forth communication between RTP and the insurance company over the scope of repair. For example, RTP may attempt to educate the insurance company that additional portions of the property were damaged and missed by the adjuster's initial inspection(s), or that additional repairs (and additional funds to pay for those repairs) are required by local building code.

11. RTP engages in this back and forth by providing its own estimates for the company's consideration. RTP starts with the insurance company's scope and price, makes changes in its own estimate, and informs State Farm of the reasons for any differences.

12. RTP uses Xactimate pricing to prepare its own estimates when it performs work pursuant to an insurance claim because insurance companies, including State Farm, expect contractors to do so; Xactimate is the "language" that insurance companies speak. RTP (or any other contractor) is merely attempting to convince State Farm to adjust its Xactimate estimates on a line-item basis; RTP is not providing a "bid" to State Farm like a construction company might provide to a property owner in the non-insurance context.

13. RTP does not use Xactimate to decide what it charges for work in the non-insurance context. Instead, RTP uses precise calculations that take into account items such as material cost, taxes and permit fees, supervisor expenses, loading burden, labor, labor burden (including general liability, workers comp, payroll), and profit margin (which covers overhead).

14. Eventually, the insurance company finally determines the scope and cost of repair that it will agree to pay for, which are reflected in the individual line items that the insurance company includes in its final Xactimate estimate.

15. Once the insurance company determines the scope and cost of repair, RTP requests that the customer sign an RTP final estimate prior to performing the work. The amount on the estimate reflects the amount the insurance company finally agreed to pay for the work RTP will perform, plus the customer's deductible and the cost of any "upgrades" or other items the insurance did not agree to pay for. Since approximately 2020, RTP has included standard terms and conditions for its customers' agreement.

16. In other words, RTP charges its customers what the insurance company agrees to pay.

17. Based on my experience in the roofing industry, this pricing structure is the

Exhibit 1

"industry standard" for insurance claim work. Customers expect their insurance companies to pay for the work and expect they will not have to "pay out of pocket" more than their deductible to get the work done.

18. When the work is complete, RTP sends the insurance company an invoice indicating the amount charged to the customer. These invoices sometimes contain requests for additional payment based on the work having been performed, such as a request to pay for certain additional work that was identified as necessary only in the course of performing the work. The purpose of these invoices is also to notify the insurance company that the work is complete (which is important for the release of depreciation) and inform the insurance company which portions of the claim (if any) RTP is not handling (such as replacing damaged personal property). Sometimes, the insurance company prepares a revised final invoice following this process.

19. On all of its insurance claim projects, the insurance company pays RTP' customers, who then pay RTP.

20. RTP has followed the above practice described above since inception and intends to continue to follow this practice.

**RFG vs. DMO**

21. A significant amount of RTP's business includes projects on which the insurance company has agreed to pay to replace all or part of the customer's roof. Naturally, part of the re-roofing process involves the tear-off of existing roofing materials. Because it requires the same skill and care as installing roofing materials, tear-off is performed by roofers as opposed to laborers or another, less skilled trade.

22. On all the State Farm claims RTP has worked on, State Farm uses Xactimate to include the roofing ("RFG") labor rate for roofing material installation on its estimates, while using Xactimate to reduce the labor rate paid for roofing material tear-off to the demolition ("DMO") labor rate. State Farm's use of Xactimate in this way is ongoing and I have no reason to believe it intends to start paying the RFG rate for roofing material tear-off.

23. State Farm uses Xactimate to select DMO even though the tedious, dangerous process of removing roofing materials is performed by the same skilled laborers who install the roof. DMO would be appropriate for taking a sledgehammer to a fire-damaged structure or removing kitchen countertops.

24. RTP has its employees (i.e., "roofing crews") remove and install roofs. RTP does not use subcontractors. RTP always pays its roofing crews a single hourly rate to compensate them for roofing work, which includes removal and installation of a roof.

25. I am unaware of any roofing company, anywhere, ever, that (i) uses different laborers to tear off and install a roof; or (ii) pays a different labor rate to its employees or subcontractors for tear-off and installation of roofing material.

26.     RTP purchases workers compensation insurance through Pinnacol. When applying for workers compensation insurance, RTP indicates that it is a roofing company. It does not indicate that it is a demolition company. My understanding is that the Xactimate labor pricing (RFG vs. DMO) is supposed to take into account the higher cost of hiring roofers as opposed to demolition laborers, including by reflecting the higher cost of workers compensation insurance for roofing companies.

27.     RTP intends to continue paying its roofing crews a single hourly rate for tear-off and installation because this is how the roofing industry operates; it would be unprecedented for RTP to request its employees to differentiate between the two tasks, or to hire and coordinate multiple types of crews to remove and install the same roof.

28.     Based on conversations with other contractors, insurance adjusters, public adjusters, and others, and review of industry media,[1] my understanding is that the "RFG-DMO issue" is widely known in the roofing industry, and that other roofing companies are in the same position as RTP and believe they are losing revenue as a result of insurance companies' arbitrary selection of the DMO labor rate for tear-off.

**Claims Described in the Second Amended Complaint**

29.     RTP's Second Amended Complaint describes three claims where State Farm paid the demolition rate instead of the correct roofing labor rate for tear-off.

30.     On each of these three claims, RTP used its roofing crews to perform roofing work. RTP paid these employees an hourly rate for work that included removing and replacing the roof.

31.     On each of these claims, RTP replaced the customers' roofs; State Farm indicated the DMO labor rate for tear-off in its final estimate; State Farm paid the DMO labor rate to the customer; RTP's customer invoice reflected State Farm's payment of the DMO labor rate; and the customer paid RTP an amount that reflected State Farm's payment of the DMO labor rate.

---

[1] For example: https://roofingprofessor.com/demolition-dmo-vs-roofing-rfg/; https://www.reddit.com/r/Roofing/comments/fj1yia/xactimate_tear_off_defaults_to_dmo_and_not_rfg/; https://www.change.org/p/xactware-change-the-default-labor-trade-in-xactimate-for-removing-roofing-items-from-dmo-to-rfg?original_footer_petition_id=14286357&algorithm=promoted&source_location=petition_footer&grid_position=2&pt=AVBldGl0aW9uAKPaWgEAAAAAYpYj%2B36tZ%2FdiZjU2MDdhMg%3D%3D; https://www.youtube.com/watch?v=RUwazppjDWo

**Loss of Revenue**

32. On the many hundreds of State Farm claims RTP has worked on, State Farm has never asked for information about the labor rates that RTP actually pays. More broadly, State Farm has never expressed interest in RTP's actual costs (e.g., "hard" costs directly related to the job or overhead), profits, or losses.

33. The amount State Farm pays RTP's customers for roofing labor (as reflected in its Xactimate estimates) is in no way related to RTP's costs for labor.

34. Rather, State Farm uses Xactimate to determine what it will pay RTP's customers.

35. State Farm does not "depreciate" the labor cost of roofing tear-off and installation in its Xactimate estimates. That is, State Farm pays the labor cost it has agreed to pay in full when it issues payment based on its "final" estimate, whether the applicable policy provides actual cash value coverage or replacement cost coverage.

36. But once State Farm agrees to pay to replace a roof, it always uses Xactimate to reduce the amount it pays for tear-off labor by selecting DMO.

37. The DMO rate State Farm pays to RTP's customers for roofing tear-off is always the amount that is charged to RTP's customers and received by RTP.

38. If State Farm correctly used Xactimate to pay the RFG labor rate for tear-off, State Farm would necessarily increase the amount it pays to its customers.

39. In turn, RTP would necessarily be able to invoice its customers for — and receive — the additional amount. RTP gets paid what State Farm pays its insureds for roof replacement work.

40. Therefore, State Farm's arbitrary practice of using Xactimate to reduce the labor rate for tear-off results in a loss of revenue to RTP.

41. Put differently, if State Farm clicked "RFG" for tear-off in Xactimate, RTP would not suffer this loss of revenue.

**Attempt to Include RFG Labor for Tear-Off**

42. From around 2001 to 2007, RTP participated in State Farm's Premier Service Program. As part of that program, RTP was required to use State Farm's methods of estimating, including State Farm's price lists. RTP also attended training sessions and meetings with State Farm representatives to learn about State Farm's practices.

43. In those sessions and meetings with State Farm, on multiple occasions I raised the issue of State Farm paying a demolition laborer, or DMO, rate for tear-off instead of a roofer, or RFG, rate. Specifically, I raised the issue with Destry Torrez, Tony Lebou, and George Fowler at

State Farm. Each time the issue was raised, State Farm's response was that it would not pay RFG labor for removal of roofing material.

45. State Farm disbanded its Premier Service Provider Program around 2007. Since that program has ended, RTP continued to request RFG labor payment for tear-off work through State Farm's in-house adjusters, by phone and by email, and was again denied by State Farm in each case.

46. RTP also raised its complaint about State Farm paying DMO labor for tear-off when it was surveyed by Xactimate on multiple occasions.

47. After attempting to receive payment from State Farm for tear-off labor at the RFG rate and being denied every time, RTP was forced to concede this issue, turning to other issues that it believed it could successfully get State Farm to address. It simply was not worth arguing anymore over something State Farm repeatedly and clearly indicated it would not change. RTP could not refuse to work with State Farm (and every other insurer who refuses to pay RFG labor for tear-off) because it would not have enough work to run the company and pay its employees.

48. I declare under penalty of perjury that the foregoing is true and correct.

Executed on the 29th day of July, 2022

*Scott Ponzio* (signature)
Scott Ponzio