**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| RTP ROOFING CO., <br><br> Plaintiff, <br><br> v. <br><br> STATE FARM FIRE AND CASUALTY COMPANY, <br><br> Defendant. | Case No. 1:21-cv-01816-CNS-SKC <br><br> Hon. Charlotte N. Sweeney <br><br> Hon. S. Kato Crews |

**DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY'S
REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
<u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700

*Counsel for Defendant State Farm Fire and Casualty Company*

## INTRODUCTION

Judge Martinez dismissed RTP's First Amended Complaint because RTP failed to prove that it *in fact* suffered a concrete injury from State Farm's alleged conduct or was imminently at risk of suffering such an injury. *See* Dkt. 39 (the "Order"). While the Order granted RTP leave to amend to produce evidence supporting its alleged injury, it is now clear that no evidence exists.

With respect to prior injury, Judge Martinez found that State Farm's policy limits recovery to the insured's "cost to repair" and that RTP had failed to show "that either its costs to perform removal work or the amount charged to its customers exceeded its own estimates." *Id.* at 8. RTP does not dispute these findings or attempt to refute them with evidence in its Response (Dkt. 43). Instead, RTP effectively argues that Judge Martinez misunderstood its theory—now underlined and bolded, apparently with the hope that the Court will ignore the lack of evidence behind it—that it supposedly "lost" revenue it had never previously charged or received and that its customers (State Farm's insureds) could not recover under their own policies. That is not an injury in fact.

With respect to future injury, Judge Martinez found that RTP had failed to show that it "charges its customers for roof tear-off work—or intends to charge them in the future—based on the skilled-labor rate it claims is appropriate." Order at 9. Judge Martinez also found no evidence that RTP had charged the higher labor rate previously to insurance customers. *Id.* at 4, 9. Once again, RTP does not dispute these findings or attempt to refute them with evidence in its Response. Instead, RTP just declares that its alleged injury is "certain to continue." Dkt. 43 at 7.

Judge Martinez fully understood RTP's theory. The Order held that, at best, RTP's theory that it "lost revenue as a result of Defendant's refusal to pay the skilled-labor rate would be *plausible*" if RTP in fact had previously charged the higher labor rate to its insurance customers. Order at 9 n.4 (emphasis added). Importantly, however, Judge Martinez correctly held that plausibility was not enough to survive a fact-based challenge under Rule 12(b)(1). Order at 9 n.4.

RTP has not cured this defect. On the contrary, RTP concedes that it *has not charged* the higher labor rate to its insurance customers in the past and *does not intend to charge it* in the future. For these reasons and others discussed herein, RTP's claims should be dismissed with prejudice.

## ARGUMENT

### I. RTP Does Not Have Standing to Pursue Its Claims.

#### A. RTP Misstates Its Burden.

State Farm demonstrated that RTP needed to *prove* its standing by a preponderance of the evidence in response to a factual attack under Rule 12(b)(1). Dkt. 41 at 3 (citing *Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003), and *KW-2, LLC v. Asus Comput. Int'l*, 170 F. Supp. 3d 1340, 1342–43 (D. Colo. 2016)). RTP ignores this showing. Instead, it argues that its burden is lower because this case has not involved discovery. *See* Dkt. 43 at 3, 7. RTP is wrong.

RTP mistakenly points to the Supreme Court's statement in *TransUnion LLC v. Ramirez* that plaintiffs must "demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" 141 S. Ct. 2190, 2208 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). That rule applies when there is no specific challenge to the plaintiff's standing. When—as here—the defendant brings a factual challenge "under Rule 12(b)(1)," the Tenth Circuit holds unequivocally that the plaintiff's burden is *not* watered down to a pleadings-type analysis: "[T]hey must present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *U.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 n.5 (10th Cir. 1999).

#### B. RTP Has Not Demonstrated Standing to Seek Damages.

Judge Martinez previously ruled that RTP's claims about its supposed past damages "are merely hypothetical" and therefore do not confer standing. Order at 9. RTP's arguments are no stronger this time around. In fact, they are decidedly weaker.

Just like before, RTP fails to refute State Farm's showing that, for the three supposedly exemplar claims that RTP identified in its pleading, RTP's own estimates for roofing removal work were essentially identical to State Farm's *and* RTP was paid in full on those estimates after State Farm paid its policyholders in full for the amounts invoiced by RTP (less any deductible). *See* Dkt. 41 at 5-6.[1] Instead, RTP's limited factual "showing" is an affidavit from one of its owners, Scott Ponzio, largely parroting the generic allegations from the Second Amended Complaint. Once again, Mr. Ponzio declares that (i) RTP purportedly pays its roofers the same wage to tear off and to install roofing material; (ii) State Farm's estimates purportedly use a lower labor rate for roofing tear-off than for roofing installation; and (iii) RTP supposedly had prior discussions with State Farm regarding the labor rate issue but allegedly was told that State Farm "would not pay RFG labor for removal." Dkt. 43-1, ¶¶ 21-23, 27, 43, 45. As Judge Martinez correctly ruled, none of those assertions, separately or collectively, establishes a concrete injury in fact. *See* Order at 7-10.

Nor do RTP's new arguments improve its position. RTP has removed all doubt as to whether it ever previously charged insurance customers for roofing removal work using the higher roofing labor rate. It has *never* done so. RTP confirms that it has "always" charged its insurance customers the "DMO rate" for roofing tear-off because that is the rate that insurers like State Farm have included in their own estimates. Dkt. 43-1, ¶ 37; *see also id.* ¶¶ 47 (asserting that RTP used the DMO rate "every time" it worked for State Farm policyholders), 28 (asserting that State Farm's use of the DMO rate is consistent with other insurers' practices). On these facts, RTP's alleged injury remains entirely hypothetical and, therefore, insufficient to confer Article III standing.[2]

---

[1] RTP was not forced to adopt State Farm's estimates, nor did it. *See* Dkt. 41 at 5 n.5.

[2] Indeed, RTP now concedes that its alleged injury is hypothetical; it merely argues that the injury is not *too* hypothetical. *See* Dkt. 43 at 4, 6 (arguing that its injury is "not *impermissibly* speculative" and does not require "*as many* assumptions" as the alleged injury in other cases) (emphasis added). As shown herein, RTP's argument is incorrect.

### 1.     RTP Fails to Distinguish State Farm's Authorities.

Courts within the Tenth Circuit consistently have required more than a mere hypothetical or speculative injury before finding Article III standing. RTP fails to distinguish or simply ignores the cases State Farm cited in support of its motion. For example, RTP fails to distinguish *Wyoming v. U.S. Department of Interior*, in which the Tenth Circuit held that the plaintiffs lacked standing to challenge a new regulation restricting snowmobile access to several national parks based on their theory, which they supported with conclusory affidavits, that the regulation purportedly resulted in "lost revenue" from tax collections. 674 F.3d 1220, 1232–35 (10th Cir. 2012). The Tenth Circuit found the plaintiffs' alleged injuries to be speculative—and, thus, insufficient under Article III—because there was no proof that the defendant's conduct *in fact* had reduced revenues as compared to the revenues previously collected. *See id.* Similarly, in this case, Judge Martinez correctly found RTP's claims of "lost revenue" speculative and insufficient to confer standing because there is no evidence that RTP *in fact* ever charged and collected higher revenues using the roofing labor rate for its insurance customers. *See* Order at 4, 7-9. RTP's only response to the Tenth Circuit's decision is to suggest, incorrectly, that the standing issue was decided after full litigation. *See* Dkt. 43 at 7 n.5. In fact, as in this case, the standing issue in *Department of Interior* was resolved on a motion to dismiss brought under Rule 12(b)(1). *See* 674 F.3d at 1230–31.

RTP also fails to distinguish *Infant Swimming Research, Inc. v. Faegre & Benson, LLP*, in which the Tenth Circuit affirmed the dismissal of the plaintiff's claims for lack of standing pursuant to Rule 12(b)(1) because the plaintiff failed to present evidence to support its "conjectural allegation" that it lost "business opportunities" and revenue as a result of the defendant's conduct. 335 F. App'x 707, 714 (10th Cir. June 9, 2009). Like the plaintiff in *Infant Swimming*, RTP's alleged loss is also based on conjecture, as there is no evidence that it ever charged and received the revenues on insurance work that it claims State Farm's conduct caused it to purportedly "lose."

-4-

Instead, RTP merely claims that *if* State Farm had been willing to pay more money on claims in which RTP was the roofer, then RTP might have charged more money and received more profit on the same jobs (assuming that State Farm's insureds still agreed to use RTP despite the higher prices). The fact that RTP might have made more money if it charged more for the same work does not constitute an injury in fact affording a viable cause of action against State Farm.

Finally, RTP simply ignores State Farm's citation to Magistrate Judge Kristen Mix's Recommendation in *RTP Roofing Co. v. Travelers Companies, Inc.*, *see* Dkt. 42 & Dkt. 42-1, which recommended that *nearly identical* claims to the claims asserted in this case be dismissed pursuant to Rule 12(b)(1). *See* Recommendation of U.S. Magistrate Judge at 6-11, *RTP Roofing Co. v. Travelers Cos., Inc.*, No. 21-cv-01747 (D. Colo. July 22, 2022) ("*Travelers*") (rejecting RTP's "speculative" theory of injury because it assumes that Travelers "should have somehow divined that [RTP] in fact wanted a higher payment than it requested") (objections pending).

### 2. RTP's Cited Authorities Support *State Farm's* Argument.

The standing cases RTP cites in its Response undermine its position for similar reasons. In *Mount Evans Co. v. Madigan*, for example, the Tenth Circuit found that the plaintiff experienced a "loss of revenue" sufficient to confer standing because it previously had been receiving the subject revenue and was "guaranteed" to receive it in the future if the structure at issue were rebuilt. 14 F.3d 1444, 1451-52 (10th Cir. 1994). Similarly, in *Wyoming v. Oklahoma*, the Supreme Court found that the plaintiff had standing because it lost specific tax revenues that it previously had received and would receive again if relief were granted in the litigation. 502 U.S. 437, 447 (1992). Finally, in *Southern Furniture Leasing, Inc. v. YRC, Inc.*, the plaintiff had standing to sue because the defendants began improperly adjusting their shipping charges under the parties' agreement after *years* of charging the correct rates, thereby "causing plaintiff to pay more" than it previously had paid. 423 F. Supp. 3d 1163, 1169 (D. Kan. 2019), *aff'd*, 989 F.3d 1141 (10th Cir. 2021).

Here, in contrast, RTP has not experienced a "loss of revenue" because it has never been able to collect the subject revenue. In other words, ***RTP is not asking the Court to restore something it previously had; RTP is asking the Court to give it something it <u>never</u> has gotten.*** Judge Martinez recognized this issue in his prior ruling when he noted that RTP *might* be able to show lost revenue—but only if it could prove that it previously had charged the skilled-labor rate to its insurance customers. Order at 9 n.4. But again, RTP does not make that showing. For this reason, among others, RTP has failed to demonstrate a concrete, prior injury in fact.

### C. RTP Has Not Demonstrated Standing to Seek Injunctive Relief.

Judge Martinez reached the same conclusion regarding RTP's alleged future injuries—i.e., they were "merely hypothetical," including because there was no evidence that RTP had charged (or intended to charge) the higher labor rate to its insurance customers. Order at 9. Simply put, RTP's "speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by [State Farm] at that higher rate is beyond the bounds of this Court's jurisdiction." *Id.* RTP's Response only confirms the accuracy of these conclusions.

Specifically, RTP concedes that it has no intention of charging the higher labor rate in the future to its insurance customers: "RTP intends to continue working for customers who are insured by State Farm and to keep charging its customers *what State Farm pays on the claim*." Dkt. 43 at 5 (emphasis added); *see also* Dkt. 43-1 at ¶¶ 16 ("RTP charges . . . what the insurance company agrees to pay"), 22 ("State Farm uses" the DMO rate for "roofing material tear-off"), 37 ("The DMO rate . . . is always the amount that is charged to RTP's customers"). And RTP confirms that it has *never* charged the higher labor rate for tear-off work. *See supra* at 3. These facts underscore the speculative nature of RTP's theory, namely, that *if* it charged a higher rate in the future, and *if* State Farm agreed to pay a higher rate, and *if* RTP's customers still selected RTP despite the higher price, then RTP *might* be paid more, but only *if* State Farm paid the higher rate on that occasion.

-6-

RTP's effort to analogize its supposed future injury to other cases is unavailing. For example, while RTP cites *Tandy v. City of Wichita*, the Tenth Circuit there found standing because the plaintiffs intended to "test" the alleged misconduct by riding a non-compliant transit system. 380 F.3d 1277, 1285 (10th Cir. 2004). RTP, in contrast, has said it has *no* intention of "testing" State Farm's alleged wrongful behavior by charging a higher labor rate. *See supra* at 6. And even if RTP changed its mind, its alleged future injury would *still* be "merely hypothetical." Order at 9.

Similarly, while RTP suggests that its alleged future injury is less attenuated than the injury in *United States v. Students Challenging Regulatory Agency Procedures* ("*SCRAP*"), 412 U.S. 669 (1973), RTP fails to acknowledge the materially different procedural posture in that case. Specifically, that case *did not involve* a fact-based standing challenge brought under Rule 12(b)(1). *Id.* at 689. The only question was whether the allegations in the complaint, which were assumed to be true, satisfied the standing requirement—*not* whether, as in this case, the plaintiffs had demonstrated standing by a preponderance of the evidence. *See id.* Unlike in *SCRAP*, the evidence submitted here by State Farm *and* RTP conclusively refutes standing for any alleged future injury.[3]

## II. RTP's Claims Also Fail Under Rule 12(b)(6).

### A. RTP Has Not Alleged a Plausible Claim Under Colorado's Bad-Faith Statute.

State Farm demonstrated in its motion that RTP failed to plausibly allege *any* of the elements under Colorado's bad-faith statute. RTP focuses on the "first-party claimant" element but ignores almost every case cited by State Farm. At bottom, RTP's argument is based on an

---

[3] The decision in *SCRAP* is further distinguishable because the plaintiffs there had no alternative to challenge the relevant conduct. Here, in contrast, RTP has numerous options to dispute the labor-rate setting about which it takes issue. Mr. Ponzio's affidavit discloses one: an online petition asking Xactware to modify the default settings in its estimating software. *See* Dkt. 43-1 at ¶ 28 n.1 (citing change.org petition). To the extent anything needs to be done regarding the labor-rate issue identified in RTP's complaint, *that* is the more appropriate action—*not* asking this Court to issue an improper advisory opinion about what prices should be in the Colorado market for residential roof repairs.

overly broad reading of *Kyle W. Larson Enterprises, Inc. v. Allstate Insurance Co.*, 305 P.3d 409 (Colo. App. 2012) ("*Larson*"), and several inapt district court decisions that purport to apply it.

RTP contends that it is a "first-party claimant" here simply because it was a contractor on three insurance claims. But *Larson* did not hold that *any* contractor claiming to act "on behalf" of an insured qualifies as a "first-party claimant." Rather, it held that the contractor *there* "m[et] the statutory criteria for a 'first-party claimant'" because the insureds had "authorized" the contractor to assert claims on their behalf and thereby "relieved the insureds of any obligation to assert the claims themselves.*"* 305 P.3d at 411-12 (construing Section 1115(1)(b) "to include vendors . . . *who are authorized to assert, and do assert*, claims on behalf of insureds" (emphasis added)). The *Larson* court's construction of the bad-faith statute is therefore consistent with the representative-capacity requirement inherent in its text. *See* Dkt. 41 at 9-10 (explaining how the statute permits either the insured or the person proceeding "on behalf of [the] insured" to bring suit, but not both).

State Farm cited multiple cases rejecting RTP's overbroad reading of *Larson*—including the directed verdict in *Sauter v. State Farm Fire and Cas. Co.*, No. 17-cv-33275 (Dist. Ct., Cnty. of Denver, Aug. 1, 2018), Dkt. 41 at 9, and Magistrate Judge Mix's Recommendation in *Travelers*, Dkt. 42—but RTP ignored them. Magistrate Judge Mix's Recommendation is particularly relevant because *Travelers* involves nearly identical allegations by the same plaintiff. Judge Mix wrote:

> Unlike the roofer in *Kyle W. Larson*, [RTP] does not allege a contractual relationship between [it] and the insureds that granted [RTP] the authority to act on their behalf. [RTP] does not allege that the unidentified insureds gave [it] authority to communicate with Defendant on their behalf, negotiate with and reach agreements with Defendant, or that [RTP] had an arrangement with the insureds that relieved them of any obligations to pursue their own insurance claims. [RTP] does not plausibly allege that it is acting as a representative of those insureds or that those insureds even have knowledge of this lawsuit. . . . In short, [RTP] fails to allege that [it] is acting with the authority of, or as a representative of, any insured. Because [RTP] fails to adequately allege that it brings this suit on behalf of any insured, the Court finds that [RTP] is not a first-party claimant . . . .

Dkt. 42-1 at 13-14 (citations omitted). The same analysis applies here. *See* Dkt. 41 at 9-11.

RTP's two post-*Larson* cases are plainly distinguishable. In *Sable Cove Condominium Association v. Owners Insurance Co.*, the insured entered into a post-loss assignment of its insurance proceeds that gave its contractor the right to any unpaid benefits. No. 14-CV-00912-MJW, 2014 WL 4398668, at *1 (D. Colo. Sept. 5, 2014). The assignment granted the contractor authority to "pursue the recovery" and "file suit in the same of [the insured]." *Id*. at *3. *That* is why the contractor qualified as a first-party claimant. *See id*. at *4.[4] Similarly, in *High Impact, LLC v. State Farm Fire and Casualty Co.*, the insured entered into an assignment agreement which unambiguously "convey[ed] all [the insured's] first party rights" to the contractor," "authorize[d] [the contractor] to contact and negotiate with [the] insurance company," and "assign[ed] the benefits and right of payment from the proceeds of all claims" to the contractor. No. 19-CV-01561-NYW, 2020 WL 3104941, at *5-6 (D. Colo. June 11, 2020). No such assignments are alleged here. Thus, RTP is not a first-party claimant under the statute.

RTP offers only a cursory defense of the remaining elements of its bad-faith claim, *see* Dkt. 43 at 13-14, again ignoring *all* of the cases cited by State Farm that warrant dismissal of the claim. *See, e.g.*, *Soicher v. State Farm Mut. Auto. Ins. Co.*, 351 P.3d 559, 568 (Colo. App. 2015) (holding that a "denial" of benefits under the bad-faith statute requires a *full* "rejection" of them); *Brookshire Downs at Heatherridge Condo. Ass'n, Inc. v. Owners Ins. Co.*, No. 17-cv-871, 2019 WL 10946262, at *2 (D. Colo. Mar. 15, 2019) (holding that breach of an insurance policy is an "element" of bad-faith claims).[5] RTP's defense of its allegation of "unreasonable" conduct is

---

[4] *See also Gateway Townhomes Ass'n, Inc. v. Travelers Indem. Co.*, No. 15-CV-00395-RBJ, 2016 WL 4092691, at *6 (D. Colo. June 14, 2016) (recognizing that the court in *Sable Cove* held that an "assignment entitled [the contractor] to proceed in its own name" for the bad-faith claims).

[5] RTP's footnote suggestion that a purported policy ambiguity saves its claim from dismissal (Dkt. 43 at 14 n.15) should be rejected out-of-hand. RTP has conceded that its customers received the full "cost to repair" their damaged roofs and that RTP likewise was paid in full. *See* Dkt. 43 at 4; *supra* at 3. Under those circumstances, there is only one meaning of "cost to repair," and it precludes RTP's bad-faith claims. *See, e.g.*, *KAT Constr. Mgmt. LLC v. Safeco Ins. Co. of Am.*, No. 19-CV-02981-RM-

particularly strained. *See* Dkt. 43 at 14. RTP cannot avoid dismissal simply by declaring conduct "unreasonable"; instead, there must be "facts from which [the Court] may . . . infer" that element. *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021). Here, however, the alleged facts suggest that State Farm's alleged conduct was *consistent* with standard practices in the insurance industry. *See* Dkt. 41 at 13-14. In sum, RTP's bad-faith claim should be dismissed.

### B.     RTP's Remaining Claims Should Also Be Dismissed.

RTP fails to rebut State Farm's showing that its claims for injunctive relief, declaratory relief, and unjust enrichment should also be dismissed. As to injunctive relief, RTP does not dispute that it is a remedy, not a claim. *See* Dkt. 43 at 15. State Farm further has shown why it is unwarranted here. *See supra* at 6-7. As to declaratory relief, RTP confirms that it seeks the same relief in that claim—a finding that State Farm violated the bad-faith statute—as in its statutory claim. Dkt. 43 at 15. Thus, the claim serves no purpose and should be dismissed. Dkt. 41 at 14.

Finally, as to unjust enrichment, RTP argues that an exception to the "express contract" rule saves its claim from dismissal because it has no ability to enforce State Farm's policy. *Id.* But the fact that RTP cannot enforce the policy *proves* that it did not "confer" any benefit on State Farm, as is required to recover on a claim for unjust enrichment. *Cablevision of Breckenridge, Inc. v. Tannhauser Condo. Ass'n*, 649 P.2d 1093, 1096 (Col. 1982) (en banc). Simply put, RTP cannot claim credit for providing alleged "benefits" under a contract to which it is a stranger but then, to avoid the rule of preclusion for claims covering the same subject matter as that contract, argue that it cannot enforce the contract. RTP's unjust enrichment claim should be dismissed.

### CONCLUSION

State Farm requests that RTP's Second Amended Complaint be dismissed with prejudice.

---

KLM, 2022 WL 136905, at *1, *3-*7 (D. Colo. Jan. 14, 2022) (granting judgment to insurer on bad-faith claims because insurer "paid its obligation in full" under similar, unambiguous policy language).

-11-

Dated:  August 12, 2022               Respectfully submitted,

/s/   *Jacob L. Kahn*

Franklin D. Patterson
Hillary D. Patterson
PATTERSON RIPPLINGER, P.C.
5613 DTC Parkway, Suite 400
Greenwood Village, Colorado 80111
fpatterson@prpclegal.com
hpatterson@prpclegal.com
(303) 741-4539

Joseph A. Cancila
Jacob L. Kahn
RILEY SAFER HOLMES & CANCILA LLP
70 West Madison Street, Suite 2900
Chicago, Illinois 60602
jcancila@rshc-law.com
jkahn@rshc-law.com
(312) 471-8700

*Counsel for Defendant State Farm Fire and Casualty Company*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of August, 2022, I electronically filed the foregoing *Defendant State Farm Fire and Casualty Company's Reply Brief in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ *Jacob L. Kahn*