# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-01539-PAB-STV

ADVANCED EXTERIORS, INC.,

    Plaintiff,

v.

ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY,

    Defendant.

## AMENDED ORDER

This matter is before the Court on defendant's Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support [Docket No. 24]. Plaintiff responded, Docket No. 28, and defendant replied. Docket No. 29.

## I. BACKGROUND[1]

Plaintiff is a contractor that repairs and replaces roofs damaged by hailstorms. In

---

[1] The following facts are taken from plaintiff's Second Amended Complaint and Jury Demand [Docket No. 22], but are not assumed to be true. As explained below, "[a] party filing a [Federal Rule of Civil Procedure] 12(b)(1) motion may challenge the court's subject-matter jurisdiction through a facial or factual attack." *Laufer v. Looper*, 22 F.4th 871, 875 (2022). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.* (citation omitted). Because defendant has "adduced any evidence outside of the pleadings," its attack is factual. *See id.*; Docket Nos. 24-1, 24-2, 24-3, 24-4. In reviewing a factual attack, "a district court may not presume the truthfulness of the complaint's factual allegations." *Rural Water Dist. No. 2 v. City of Glenpool*, 698 F.3d 1270, 1272 n.1 (10th Cir. 2012) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). "Instead, '[a] court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (quoting *Holt*, 46 F.3d at 1003)).

repairing and replacing damaged roofs, or "re-roofing," contractors like plaintiff must "tear off" the existing roof and replace it with new roofing material. Docket No. 22 at 2, ¶. 7. Given the technical nature of roofing work, roofers, as opposed to laborers or unskilled workers, perform both aspects of re-roofing. *Id.*, ¶¶ 6–7. In adjusting claims, however, defendant does not pay the "roofing labor rate" for tearing off the damaged roofing material and instead pays a lower "demolition rate," which plaintiff maintains does not represent the market rate. *Id.* at 3, ¶ 9.[2] As a result, plaintiff, and it believes other roofing companies as well, stopped including the roofing rate on its own estimates when performing this work. *Id.* at 5, ¶ 25.

Plaintiff provides three instances of defendant paying the demolition rate rather than the roofing rate for tear-off work. *Id.* at 7–8, ¶¶ 30–43. For each of these claims, plaintiff alleges that defendant "denied benefits" in the difference between the roofing rate and the demolition rate. *Id.* For instance, defendant created a repair estimate for which it "scoped $54.03/SQ for labor," which plaintiff states was the demolition rate, while the roofing rate in that location and on that date was $166.78 per square foot. *Id.* at 7, ¶ 33. Thus, according to plaintiff, defendant should have paid $5,182.70 for tear-off work, yet only paid $2,181.19, meaning that defendant "denied benefits of $3,001.51" on that claim. *Id.* at ¶¶ 33-34. The other examples that plaintiff provides are

---

[2] Although plaintiff insists that the market rate for tear-off work is the same as for installation work, defendant notes that plaintiff's counsel has brought similar cases against other insurance companies, Docket No. 24 at 3 n.2 (citing *Advanced Exteriors, Inc. v. Liberty Mut. Grp., Inc.*, No. 21-cv-01814 (D. Colo.); *RTP Roofing Co. v. State Farm Fire & Cas. Co.*, No. 21-cv-01816 (D. Colo.); *RTP Roofing Co. v. Travelers Cos., Inc.*, No. 21-cv-01747 (D. Colo.); *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n*, No. 21-cv-01817 (D. Colo.)), which indicate that these insurers also do not pay the roofing rate for tear-off work.

2

similar.  *See id.* at 7–8, ¶¶ 35–43.

Plaintiff asserts three claims on behalf of itself and seeks to certify a class of other roofing contractors that performed work for defendant and were paid similarly.  *Id.* at 8–9, ¶ 46.  The claims are for: (1) statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115, 10-3-1116, (2) unjust enrichment, and (3) declaratory judgment that defendant engaged in statutory bad faith.  *Id.* at 11–13, ¶¶ 53–67.[3]  Defendant moves to dismiss the complaint for lack of constitutional and prudential standing under Rule 12(b)(1) or, alternatively, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See generally* Docket No. 24.

## II.  LEGAL STANDARD

Article III of the Constitution permits federal courts to decide only "cases" or "controversies."  U.S. Const. art. III, § 2.  "To establish a case or controversy, a plaintiff must possess standing to sue."  *Laufer*, 22 F.4th at 876 (quoting *S. Furniture Leasing, Inc. v. YRC, Inc.*, 989 F.3d 1141, 1145 (10th Cir. 2021)).

An argument that a plaintiff lacks standing to assert a claim is properly determined pursuant to Federal Rule of Civil Procedure 12(b)(1) because such argument attacks the Court's subject matter jurisdiction.  *See Colo. Env't. Coalition v.*

---

[3] Plaintiff's third claim is styled "declaratory judgment and injunctive relief," *id.* at 12; however, a request for injunctive relief is not a standalone claim.  *See zvelo, Inc. v. Akamai Techs., Inc.*, No. 19-cv-00097-PAB-SKC, 2019 WL 4751809, at *6 (D. Colo. Sept. 30, 2019) ("[I]njunctive relief is not a separate cause of action; rather it is one form of the relief for the other legal violations alleged."  Thus, the Court interprets "the request for injunctive relief as the relief [plaintiff] would seek should [it] prevail on the merits of [its] claims." (first quoting *Burns v. Freddie Mac*, No. 13-cv-2109-WJM-KLM, 2014 WL 1242032, at *2 n.1 (D. Colo. Mar. 26, 2014), then quoting *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1088 (D. Colo. 2018)).

*Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004) (standing is jurisdictional).  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  Defendant raises a factual challenge to plaintiff's standing because it has "adduced any evidence outside the pleadings to contest jurisdiction."  *Cf. Laufer*, 22 F.4th at 875.  Ultimately, plaintiff has "[t]he burden of establishing subject matter jurisdiction" because it is "the party asserting jurisdiction."  *Port City Props. v. Union Pac. R.R. Co.*, 518 F.3d 1186, 1189 (10th Cir. 2008).

A "plaintiff must have standing to seek each form of relief in each claim." *Collins v. Daniels*, 916 F.3d 1302, 1312 (10th Cir. 2019) (*quoting Am. Humanist Ass'n, Inc. v. Douglas Cty. Sch. Dist. RE-1*, 859 F.3d 1243, 1250 (10th Cir. 2017)).  "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate."  *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

For Article III standing, a plaintiff must have (1) "suffered an injury in fact," (2) that is "fairly traceable to the challenged action of the defendant," and (3) that is likely to be "redressed by a favorable decision."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (quotations and alterations omitted).  These requirements ensure that "the plaintiff has alleged such a personal stake in the outcome of the controversy as to

warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation and internal quotations omitted).

Although not a jurisdictional requirement, a plaintiff must also have prudential standing. *Wilderness Soc'y v. Kane Cnty.*, 632 F.3d 1162, 1168 n.1 (10th Cir. 2011); *Hill v. Warsewa*, 947 F.3d 1305, 1309 (10th Cir. 2020). The prudential standing doctrine encompasses various limitations, including "the general prohibition on a litigant's raising another person's legal rights." *Allen v. Wright*, 468 U.S. 737, 751 (1984). "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

## III. ANALYSIS

### A. Statutory Bad Faith Claim

Colo. Rev. Stat. § 10-3-1116 entitles a plaintiff to relief if an insurer unreasonably delays or denies covered benefits under Colo. Rev. Stat. § 10-3-1115. Section 10-3-1115 provides in relevant part:

> A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant. . . .
>
> [F]or the purposes of an action brought pursuant to this section and section 10-3-1116, an insurer's delay or denial was unreasonable if the insurer delayed or denied authorizing payment of a covered benefit without a reasonable basis for that action.

Colo. Rev. Stat. §§ 10-3-1115(1)(a), (b)(II)(B)(2). Pursuant to § 10-3-1115, an insurer who delays or denies payment to its insured without a reasonable basis breaches its statutory duty of good faith and fair dealing. S*ee Canady v. Nationwide Affinity Ins. Co. of Am.*, No. 19-cv-00344-RBJ, 2020 WL 376494, at *3 (D. Colo. Jan. 23, 2020). To

prove a claim of unreasonable delay or denial, an insured must demonstrate that: (1) the insurer delayed or denied payment of benefits to the insured, and (2) the delay or denial was without a reasonable basis. *See Am. Family Mut. Ins. Co. v. Barriga*, 418 P.3d 1181, 1185–86 (Colo. 2018).

Defendant focuses on plaintiff's lack of prudential standing to assert a statutory bad faith claim. Docket No. 24 at 7–10. Defendant argues that plaintiff does not allege that it has "contractual privity or [an]other relationship" with defendant. *Id.* at 7. Thus, because plaintiff seeks to vindicate not its own rights, but the rights of defendant's insureds, defendant argues that plaintiff does not have prudential standing. *Id.* at 7–10.

The Court begins its analysis by considering the issue of plaintiff's prudential standing, which it may take up before the issue of subject matter jurisdiction. *See Hill*, 947 F.3d at 1308–09 (holding that the district court "did not err by sequencing the issues in the way it did," namely, considering prudential standing before jurisdiction (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999) ("It is hardly novel for a federal court to choose among threshold grounds for denying audience to a case on the merits."); *Wilderness Soc'y*, 632 F.3d at 1168 ("Because [The Wilderness Society] lacks prudential standing, we proceed directly to that issue without deciding whether [The Wilderness Society] has constitutional standing or whether the case is moot."); *Tenet v. Doe*, 544 U.S. 1, 6 n.4 (2005) ("[T]he prudential standing doctrine[] represents the sort of 'threshold question' we have recognized may be resolved before addressing jurisdiction.")).

Plaintiff does not have prudential standing. Section 10-3-1115 states that "[a] person engaged in the business of insurance shall not unreasonably delay or deny

payment of a claim for *benefits owed to or on behalf of any first-party claimant*." Colo. Rev. Stat. § 10-3-1115(1)(a) (emphasis added). The statute defines a "first-party claimant" as "an individual, corporation, association, partnership, or other legal entity asserting an entitlement to benefits owed *directly to or on behalf of an insured* under an insurance policy." *Id.* § 10-3-1115(1)(b)(I) (emphasis added).[4] Plaintiff alleges that it is a first-party claimant under that subsection. Docket No. 22 at 11, ¶ 56. Plaintiff, however, does not allege that it was directly entitled to any benefits defendant owed. Therefore, the issue is whether plaintiff was entitled to any benefits that defendant owed to an insured.

The statute does not define "on behalf of," but a division of the Colorado Court of Appeals defined the phrase as "in the interest of; as the representative of; for the benefit of" the insured. *Kyle W. Larson Enters., Inc. v. Allstate Ins. Co.*, 305 P.3d 409, 412 (Colo. App. 2012) (quoting *Webster's Third New Int'l Dictionary* 198 (2002)). In *Larson*, the court found the plaintiff's roofing contractor was a first-party claimant because of its particular relationship with the defendant's insureds. *See Larson*, 305 P.3d at 412. In particular, the court noted that the defendant's "insureds gave [the plaintiff] authority to communicate directly with [the defendant] regarding their claims based on repair work done by [the plaintiff] on the insureds' property. [The plaintiff's] assertion of claims against [defendant] for payment for such repair work was necessarily made 'on behalf of' the insureds, as this arrangement relieved the insureds of any obligation to assert

---

[4] The statute excludes from the definition of "first-party claimant" a "non-participating provider performing services." *Id.* § 10-3-1115(1)(b)(II)(A). Defendant does not argue that plaintiff is a "non-participating provider performing services." Because prudential standing may be waived, *see Wilderness Soc'y*, 632 F.3d at 1168 n.1, the Court does not consider this issue.

the claims themselves." *Id.* Plaintiff does not allege that any of these facts are present here. There is no allegation that any insured gave plaintiff authority to communicate directly with defendant or that the insureds were relieved of any obligation to assert claims on their own behalf. Although plaintiff alleges that, "[i]n most instances, roofing contractors work directly with the property owner's insurance company once a homeowner makes a claim related to roof damage," *see* Docket No. 22 at 2, ¶ 4, plaintiff does not allege that it stood in such a relationship with any of defendant's insureds. Nor do any of the policies that defendant provided indicate that plaintiff stood in any similar relationship. *See* Docket Nos. 24-2, 24-3, 24-4.

The analysis in cases applying *Larson* is instructive. In *High Impact, LLC v. State Farm Fire & Cas. Co.*, No. 19-cv-01561-NYW, 2020 WL 3104941, at *4–6 (D. Colo. June 11, 2020), the insureds assigned their claims to the plaintiff, which "unambiguously confer[red] the right on [the plaintiff] to contract and negotiate with [the defendant]" and that the insureds "unambiguously" sold, transferred, assigned, and conveyed all first-party rights to plaintiff, including the "right of payment from the proceeds of all claims." *Id.* at *5. In *Sable Cove Condo. Ass'n v. Owners Ins. Co.*, No. 14-cv-00912-MJW, 2014 WL 4398668, at *2 (D. Colo. Sept. 5, 2014), the insured assigned the claim to a contractor, and the court found the contractor was a first-party claimant, even though there was no express provision for the contractor to communicate with the insurer. Similarly, in *Craig Hosp. v. Tyson Foods, Inc.*, No. 17-cv-02534-REB-STV, 2018 WL 6603958, at *9 (D. Colo. Sept. 21, 2018), *report and recommendation adopted*, 2019 WL 1082745 (D. Colo. Jan. 22, 2019), the court noted that the plaintiff did "not appear to have the type of contractual relationship . . . as

exemplified by [*Larson*], or any other analogous relationship that would enable it to act on [the insured's] behalf in seeking to recover under . . . [the] policies." *Id.*

Because plaintiff is not a first-party claimant and is instead raising the rights of insureds, plaintiff does not have prudential standing to bring a statutory bad faith claim. *See Wilderness Soc'y*, 632 F.3d at 1168–69 ("The prudential standing doctrine encompasses various limitations, including the general prohibition on a litigant's raising another person's legal rights" because a plaintiff "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."); *Warth*, 422 U.S. at 499; *see also I.G. ex rel. Grunspan v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 998 (D. Colo. 2020). Accordingly, because plaintiff has not shown that it is a first-party claimant under the statute, the Court will grant defendant's motion to dismiss plaintiff's statutory bad faith and declaratory judgment claims for lack of prudential standing.

### B.  Unjust Enrichment Claim

To recover for unjust enrichment, plaintiff must show that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp., Inc. v. Countryside Cmty. Ass'n, Inc.*, 382 P.3d 821, 833 (Colo. 2016) (quoting *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008)).

Plaintiff alleges that defendant "received the benefit of the difference between the demolition labor rate it paid and the skilled roofing labor rate it should have paid for tear-off of roofing materials." Docket No. 22 at 12, ¶ 61. However, plaintiff has not plausibly alleged that it conferred this alleged benefit on defendant or that it would be unjust for

defendant to retain the benefit.  Although plaintiff may at some point have quoted the roofing rate for tear-off work, *see id.* at 5, ¶ 25, plaintiff does not plausibly allege that it quoted that rate for defendant's insureds.  Plaintiff does not allege, for instance, that it quoted defendant tear-off work at the roofing rate, performed tear-off work at the roofing rate, and yet defendant paid only the demolition rate.  Moreover, the fact that plaintiff apparently does not quote the roofing rate makes it implausible that it would be unjust for defendant to retain the difference between that rate, which not quoted, and the rate that defendant pays, which is quoted.  Accordingly, the Court will dismiss plaintiff's second claim.

### C.  Class Allegations

Plaintiff seeks to certify a class of "[a]ll persons or entities who performed roofing work for an Allstate insured . . . and were denied payment of the roofing labor rate for removal of roofing materials by Allstate. . . ."  Docket No. 22 at 9, ¶ 45.  But the fact that plaintiff brought this case as a class action is of no consequence to the issue of dismissal.  Given that plaintiff's claims are typical of other class members' claims, *id.* at 10, ¶ 48, there is no basis to believe class members have prudential standing.  If other class members had prudential standing because they were in privity with defendant in such a way that they were entitled to benefits that defendant owed to an insured, then plaintiff's claims would not be typical of those class members' claims.  Regardless, prudential standing "places limits on the class of persons who may invoke the courts' decisional and remedial powers."  *Bd. of Cnty. Comm'rs v. Geringer*, 297 F.3d 1108, 1112 (10th Cir. 2002) (quotations and citation omitted).  Plaintiff has not shown that the class of persons it seeks to represent could invoke the Court's "decisional and remedial

powers." See id. (citation omitted). Moreover, given plaintiff's alleged typicality, there is no basis to believe class members provided a benefit to defendant that would be unjust for defendant to retain.

### D.  Request to Amend

In its response, plaintiff asks for leave to amend.  Docket No. 28 at 12–13. Plaintiff's request is improper.  Pursuant to the Local Rules, "[a] motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  The Local Rules also require a party seeking to file an amended pleading to attach the proposed amended pleading. D.C.COLO.LCivR 15.1(b).  Plaintiff did not do so.  The Tenth Circuit recognizes "the importance of Fed. R. Civ. P. 7(b) and ha[s] held that normally a court need not grant leave to amend when a party fails to file a formal motion."  *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999); *see also Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1236 (10th Cir. 2020) ("[C]ases are not to be litigated piecemeal.  The court should not have to address repeated 'improvements' to the complaint.  When a party faces a motion to dismiss and it believes that it can overcome objections with an amendment to the pleading, it should seek leave to amend at that time."); *Johnson v. Spencer*, 950 F.3d 680, 721 (10th Cir. 2020) ("A district court may deny leave to amend when a plaintiff fails to file a written motion and instead merely suggest[s] she should be allowed to amend if the court conclude[s] her pleadings [a]re infirm.") (quotations and citation omitted; alteration in original); *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013) ("Where a plaintiff does not move for permission to amend the complaint, the

district court commits no error by not granting such leave.").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that defendant's Motion to Dismiss Second Amended Complaint and Memorandum of Law in Support [Docket No. 24] is **GRANTED**. It is further

**ORDERED** that plaintiff's claims are **DISMISSED with prejudice**. It is further

**ORDERED** that this case is closed.

DATED August 22, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge