# **EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 21-cv-1814-WJM-MDB

ADVANCED EXTERIORS, INC.,

    Plaintiff,

v.

LIBERTY MUTUAL GROUP, INC.,
LIBERTY MUTUAL HOLDING COMPANY, INC.,
LIBERTY MUTUAL INSURANCE COMPANY,
LIBERTY MUTUAL PERSONAL INSURANCE COMPANY,
LIBERTY INSURANCE CORPORATION, and
LM INSURANCE CORPORATION,

    Defendants.

## AMENDED ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

Plaintiff Advanced Exteriors, Inc. sues Defendants Liberty Mutual Group, Inc., Liberty Mutual Holding Company, Inc., Liberty Mutual Insurance Company, Liberty Mutual Personal Insurance Company, Liberty Mutual Insurance Corporation, and LM Insurance Corporation (collectively, "Defendants") for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116, unjust enrichment, and a declaratory judgment that Defendants' insurance-payment practices violate §§ 10-3-1115 and -1116.  (ECF No. 30.)  Plaintiff seeks monetary damages on behalf of itself and those similarly situated, and to permanently enjoin Defendants from continuing the insurance-payment practices that Plaintiff claims violate §§ 10-3-1115 and -1116.

Before the Court is Defendants' Motion to Dismiss (ECF No. 47), Plaintiff's

response (ECF No. 53), and Defendants' reply (ECF No. 54). At the Court's direction (ECF No. 57), both parties filed supplemental briefs addressing the Court's subject matter jurisdiction over Plaintiff's claims (ECF Nos. 58, 59).[1] For the reasons explained below, the Motion to Dismiss is granted.

## I. LEGAL STANDARD

A motion under Rule 12(b)(1) is a request for the court to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). A plaintiff generally bears the burden of establishing that the court has jurisdiction. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). When the court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1). *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).

There are two types of motions to dismiss for lack of subject matter jurisdiction: facial attacks and factual attacks. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). A facial attack questions merely the sufficiency of the pleading. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). When reviewing a facial attack, the court takes the allegations in the complaint as true, as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Id.* If those allegations establish a federally cognizable claim, jurisdiction exists. *Id.*

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any

---

[1] Although the Motion to Dismiss did not request dismissal under Federal Rule of Civil Procedure 12(b)(1), the Court considers the arguments in Defendants' supplemental brief as part of the Motion to Dismiss. (ECF Nos. 47, 58.)

other evidence properly before the court[,] '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)).  On a factual attack, no presumption of truthfulness applies to the complaint's allegations.  *Holt*, 46 F.3d at 1003.  Instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction does or does not exist.  *Id.*  In making its decision, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice.  *See Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (stating that a dismissal based on lack of standing should be without prejudice); *see also* Fed. R. Civ. P. 41(b).

## II. BACKGROUND[2]

### A.   Plaintiff is Contracted to Repair the Roofs of Defendants' Insureds

Plaintiff is a roofing contractor based in Colorado. (ECF No. 30 ¶ 26.)  Typically, when a homeowner requires roof repairs covered by insurance, the contractor works

---

[2] The following facts are undisputed unless attributed to a party or otherwise noted.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

directly with the insurance company once the homeowner has made a claim. (*Id.* ¶ 3.) When a structure must be re-roofed due to damage, existing roofing materials must first be removed (*id*. ¶ 6); Plaintiff asserts this "tear-off" work "requires the same skill and care as installing roofing materials" and must, therefore, be performed by the same skilled (and more expensive) laborers it employs to install roofing materials. (*Id.*) According to Plaintiff, Defendants insure thousands of homes in Colorado and hold a 10% market share in the homeowner's insurance sector in Colorado.[3] (*Id.* ¶ 7.) Plaintiff alleges that for at least the last 10 years, it has frequently performed roofing work for Defendants' insureds. (*Id.* ¶ 35.)

Plaintiff notes three specific instances of roofing work it performed in Elizabeth, Fort Collins, and Bennett, Colorado, for homeowners insured by Defendants. (*Id.* ¶¶ 42–56.) For each instance raised by Plaintiff, both Plaintiff and Defendants estimated the labor costs for the removal of existing roofing materials using the lower, demolition rate. (*Id.* ¶ 39; ECF No. 58 at 6–8.) For its part, Plaintiff acknowledges its labor estimates used the demolition rate but explains that it uses this rate when performing work for homeowners insured by Defendants only because Defendants have consistently refused to pay more than the skilled-labor rate for tear-off work. (ECF No. 30 ¶ 39.) Plaintiff does not allege that the tear-off work it performed for Defendants' insureds was uncompensated or that its costs to perform tear-off work exceed what it charged insureds using the demolition rate prescribed by Defendants. (*See* ECF No. 58.) Nor does Plaintiff assert or provide facts suggesting that other insurance

---

[3] Defendants dispute that certain of the named defendants actually issued or underwrote the relevant insurance policies. (*See* ECF No. 47.) However, because the Court grants Defendants' Motion to Dismiss based on a lack of subject matter jurisdiction, it will not address Defendants' arguments related to whether certain named defendants have been properly sued.

companies or their customers pay the higher skilled-labor rate for roofing tear-off work.[4] (*See* ECF Nos. 30, 59.)

According to Plaintiff, Defendants' refusal to pay the appropriate skilled-labor rate has caused other roofing contractors in Colorado to change their labor estimation practices and accept less money for roof tear-off work than they otherwise would. (ECF No. 30 ¶ 39.) As such, Plaintiff seeks certification of a class under Federal Rule of Civil Procedure Rule 23(b)(3) consisting of "All persons or entities who performed roofing work for a Liberty insured in connection with a claim for roof damage covered under a Liberty insurance policy and were denied payment of the roofing labor rate for removal of roofing materials by Liberty in the period of July 2, 2019, to the present." (*Id.* ¶ 59.)

**B.     Relevant Policy Language**

The policy states, in relevant part:

> (1) If, at the time of loss, the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately before the loss, we will pay the cost to repair or replace . . .
>
>> (c) The necessary amount actually spent to repair or replace the damaged building.
>
> . . .
>
> (4) We will pay no more than the actual cash value of the damage until actual repair or replacement is complete.

---

[4] Numerous cases pending in this District assert similar allegations against other insurance companies providing homeowners' insurance in Colorado. The complaints in each case include the allegation that roofers began using the demolition rate in their estimates due to the insurers' refusal to pay the skilled-labor rate. *RTP Roofing Co. v. Travelers Cos., Inc.*, Civil Action No. 21-cv-1747 (D. Colo.), ECF No. 19 ¶¶ 6, 24–25; *Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*, Civil Action No. 21-cv-1539 (D. Colo.), ECF No. 22 ¶¶ 7, 23–24; *RTP Roofing Co. v. State Farm Fire and Casualty Company*, Civil Action No. 21-cv-1816-CNS-SKC (D. Colo), ECF No. 15 ¶¶ 21–23; *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n, et al.*, Civil Action No. 21-cv-1817 (D. Colo.), ECF No. 22 ¶¶ 6, 22–23.

> Once actual repair or replacement is complete, we will settle the loss according to the provisions of b.(1) and b.(2) above.

(ECF No. 58-4 at 17, 38, 56.)

### III. ANALYSIS

**A.   Nature of the Jurisdictional Attack**

The Court first considers whether Defendants bring a facial or factual attack for lack of subject matter jurisdiction. Upon review, the Court finds that Defendants' jurisdictional attack is factual, because Defendants attack the allegations in Plaintiff's First Amended Complaint and support the Motion to Dismiss with extrinsic evidence (*see* ECF Nos. 58-1–58-4). *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003) (noting that the defendants' attack was a factual one, as they challenged not just the plaintiffs' allegations of jurisdiction but also the facts underlying those allegations). Accordingly, the Court will consider facts outside the pleadings without converting the Motion to Dismiss into one for summary judgment. *See Holt*, 46 F.3d at 1000–03; *see also Stuart*, 271 F.3d at 1225. In addition, the Court will not "presume the truthfulness of [Plaintiff's] factual allegations." *Holt*, 46 F.3d at 1003.

**B.   Standing**

For a court to have subject matter jurisdiction, a plaintiff must have standing. *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). At its "irreducible constitutional minimum," standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must suffer an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* Second, the injury must be traceable to the challenged action of the defendant. *Id.* Third, it must be likely that the injury will be redressed by the relief requested. *Id.*

Standing is determined as of the time the action is brought. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283–84 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983)). To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Id.* Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Id.* (citation omitted). However, the threatened injury must be "certainly impending" and not merely speculative. *Id.* (citation omitted). A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). To seek retrospective relief, the plaintiff "satisfies the 'injury in fact' requirement if [it] suffered a past injury that is concrete and particularized." *Id.*

In this case, Plaintiff seeks both retrospective (monetary) and prospective (injunctive) relief. The Court considers them in turn.

1. <u>Standing to Seek Damages</u>

In its supplemental brief, Defendants argue that Plaintiff has no standing to seek damages because it has not been harmed (ECF No. 58 at 6–9). Defendants' argument rests on the assertion that Plaintiff's alleged injury is merely conjectural and based on Plaintiff's own belief that "it should have been paid for roofing removal work based on its perception of market rates for demolition labor, even though it accepted a lower amount and performed the work." (*Id.* at 6.) However, as Defendants see it, Plaintiff has been paid in full—based on its own estimates and bills to its customers—for the work it

performed.  (*Id.* at 7–9.)  Defendants highlight the glaring deficiencies of Plaintiff's First Amended Complaint, including that Plaintiff has *not* alleged that: it was legally entitled under a contract of insurance or any other agreement to be paid the same rate for demolition labor as it was paid for roofing installation; any of the Defendants ever agreed to pay for roofing removal at the same rates they paid for roofing installation, or that Defendants' insurance policies required such a payment; or it charged its customers, the insureds, for demolition labor at the roofing installation rate.  (*Id.* at 6.)  To the contrary, Defendants underscore that Plaintiff alleges that it did not even request that it be paid the same rate for demolition labor and instead submitted estimates for repairs that included lower rates, believing any other approach would be "futile" in light of Defendants' previous refusals to pay higher rates.  (*Id.* at 6–7 (citing ECF No. 30 ¶ 39).)

According to Defendants, "Plaintiff's theory is that it should be able to unilaterally and retroactively set the cost of roofing repairs based upon its perception of market value and the whims of its business."  (*Id.* at 7.)  However, Defendants contend that Plaintiff's failure to negotiate the rates it believes it deserves is not an injury and does not confer any contractual or other rights that give rise to an actionable claim.  (*Id.*)  Accordingly, Defendants contend that Plaintiff does not have standing to sue, and Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.  (*Id.* at 9.)

In its supplemental brief, Plaintiff argues its injury is legally cognizable because by "reducing the amount Liberty pays to its insureds, Liberty reduces the revenue that [Plaintiff] receives for the job."  (ECF No. 59 at 4.)  Plaintiff argues that its injury is "concrete and particularized—it is the loss of revenue that occurs as a direct result of

Liberty's practice of paying the lower DMO labor rate (instead of RFG) for tear-off." (*Id.*)

Further, Plaintiff argues that because its injury is a loss of revenue, the "expense" side of its operations or whether it "lost money" has no bearing on the question of "concreteness." (*Id.* at 8.) Plaintiff contends that it "might make money (*i.e.*, realize a profit) or lose money (*i.e.*, incur a loss) to varying degrees on each particular job," but "what does not change on each job is Liberty's application of an arbitrary discount to the amount it agrees to pay for roofing labor." (*Id.*) Plaintiff argues that it "knows that it will lose revenue one hundred percent of the time it works on Liberty's claims because Liberty is not paying what it should for tear-off labor." (*Id.*)

Giving due consideration to the parties' competing contentions and arguments on this issue, the Court concludes that Plaintiff lacks standing because it has failed to demonstrate that it has suffered an injury in fact. As Defendants correctly point out, Defendants' policy expressly limits any payment to "[t]he necessary amount actually spent to repair or replace the damaged building." (ECF No. 58 at 8.) Here, Plaintiff was paid the amount actually spent and charged to its customers for its services. Further, Plaintiff fails to present evidence that either its costs to perform removal work or the amount charged to its customers exceeded its own estimates. (*See* ECF No. 59.)

Plaintiff attaches to its supplemental brief the 259-page Declaration of Ty Correy, the owner and president of Plaintiff, with accompanying exhibits. (ECF No. 59-1.) To support its argument that it has presented evidence to support its injury (or loss of revenue) allegations, Plaintiff points to various paragraphs in the Declaration. (ECF No. 59 at 8 (citing ECF No. 59-1 ¶¶ 6–19, 21, 27–42).)

In the Declaration, Correy states that "Advanced Exteriors charges its customers

9

what the insurance company agrees to pay." (ECF No. 59-1 ¶ 8.) Further, Correy states that "Liberty has never expressed interest in Advanced Exteriors' actual costs (*e.g.*, "hard" costs directly related to the job or overhead), profits, or losses," and that the "amount Liberty pays Advanced Exteriors' customers for roofing labor (as reflected in its Xactimate estimates) is in no way related to Advanced Exteriors' costs for labor." (*Id.* ¶¶ 33–34.) According to Correy,

> 39. [i]f Liberty correctly used Xactimate to pay the RFG labor rate for tear-off, Liberty would necessarily increase the amount it pays to its customers.
>
> 40. In turn, Advanced Exteriors would necessarily be able to invoice its customers for—and receive—the additional amount. Advanced Exteriors gets paid what Liberty pays its insureds for roofing work.
>
> 41. Therefore, Liberty's arbitrary practice of using Xactimate to reduce the labor rate for tear-off results in a loss of revenue to Advanced Exteriors.
>
> 42. Put differently, if Liberty clicked "RFG" for tear-off in Xactimate, Advanced Exteriors would not suffer this loss of revenue.

(*Id.* ¶¶ 39–42.)

This Court recently addressed a similar "string of hypotheticals" in a nearly identical case, *RTP Roofing Co. v. State Farm Fire & Cas. Co.*, 2022 WL 2064931, at *3 (D. Colo. June 8, 2022), in which the Court dismissed another roofing company's lawsuit against an insurer for lack of standing. The Court concludes that, despite Correy's statements in the Declaration, there are no material differences in this case. Correy's statements constitute the same hypothetical scenario as was present in *RTP*. Therefore, the Court similarly concludes that Plaintiff lacks standing to seek damages here.

2. Standing to Seek Injunctive Relief

Defendants argue that "Plaintiff has not alleged that it charges customers for demolition work at a skilled labor rate or intends to do so in the future." (ECF No. 58 at 9 n.3.) But even if Plaintiff had alleged as much, Defendants argue that "Plaintiff still could not demonstrate that such charges are required to be paid under its customers' policies and would constitute a recurring injury if not paid by the Defendants." (*Id.*) Accordingly, Defendants argue that "Plaintiff's alleged future injury is merely speculative, and Plaintiff does not have standing to seek injunctive relief." (*Id.* (citing *RTP*, 2022 WL 2064931 at *4 (citing *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004))).)

Plaintiff argues that Defendants pay the demolition labor rate for tear-off "100% of the time" and that Defendants' "practice is ongoing." (ECF No. 59 at 5 n.2.) In the First Amended Complaint, Plaintiff seeks a permanent injunction enjoining Defendants from "continuing to engage in the unlawful practice." (ECF No. 30 ¶ 81.)

Plaintiff does not allege that it charges customers for roof tear-off work—or intends to charge them in the future—based on the skilled-labor rate it claims is appropriate. Nor does it allege ever having done so.[5] Therefore, much like the alleged past damages, Plaintiff's alleged future damages are merely hypothetical. Plaintiff's speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by Defendants at that higher rate is beyond the bounds of this Court's jurisdiction. *Tandy*, 380 F.3d at 1283–84 (citing *Whitmore v. Arkansas*, 495 U.S. 149,

---

[5] The closest Plaintiff comes to such an allegation is paragraph 43 of the Declaration. (ECF No. 59-1 ¶ 43.) However, there, Correy states that Plaintiff "tried including RFG labor for tear-off in its responsive estimates that it sent to insurance companies." (*Id.*) Such a statement is not evidence that Plaintiff charged its *customers* the higher labor rate.

11

158 (1990)).

    3.    <u>Class Action Allegations</u>

Finally, the fact that Plaintiff brought this lawsuit as a putative class action does not save its claims. It is well-established that a named plaintiff of a class must individually and independently have standing, and that such a putative class representative cannot rely on potential class members' injuries to satisfy his burden. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent"); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) ("[T]he named plaintiffs must allege an actual injury, not an 'injury that has been suffered by other unidentified members of the class.'" (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016))).

Based on the foregoing, the Court finds that Plaintiff lacks standing because it has not demonstrated it suffered an injury in fact. Accordingly, its lawsuit must be dismissed for lack of subject matter jurisdiction.[6]

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 47) is GRANTED;

2. Plaintiff's First Amended Complaint (ECF No. 30) is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

---

[6] Because the Court finds that Plaintiff lacks standing, it need not evaluate and does not consider the parties' arguments concerning whether Plaintiff has failed to state a claim for relief.

3. Plaintiff may file a Second Amended Complaint curing the pleading defects noted above by no later than **September 19, 2022**;

4. Defendants shall file their Answer or other responsive pleading by no later than **October 11, 2022**; and

5. The Stay entered on January 26, 2022 (ECF No. 52) is LIFTED.

Dated this 29th day of August, 2022.

BY THE COURT:

_____
William J. Martinez
United States District Judge