# **EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 21-cv-1817-WJM-MDB

ADVANCED EXTERIORS, INC.,

    Plaintiff,

v.

UNITED SERVICES AUTOMOBILE ASSOCIATION,
USAA CASUALTY INSURANCE COMPANY,
USAA GENERAL INDEMNITY COMPANY, and
GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,

    Defendants.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

    Plaintiff Advanced Exteriors, Inc. sues Defendants United Services Automobile Association, USAA Casualty Insurance Company, USAA General Indemnity Company, and Garrison Property and Casualty Insurance Company (collectively, "Defendants") for unreasonable delay or denial of insurance benefits in violation of Colorado Revised Statutes §§ 10-3-1115 and -1116, unjust enrichment, and a declaratory judgment that Defendants' insurance-payment practices violate §§ 10-3-1115 and -1116.  (ECF No. 22.)  Plaintiff seeks monetary damages on behalf of itself and those similarly situated, and to permanently enjoin Defendants from continuing the insurance-payment practices that Plaintiff claims violate §§ 10-3-1115 and -1116.

    Before the Court is Defendants' Motion to Dismiss (ECF No. 26), Plaintiff's response (ECF No. 33), and Defendants' reply (ECF No. 37).  At the Court's direction (ECF No. 52), both parties filed supplemental briefs addressing the Court's subject

matter jurisdiction over Plaintiff's claims (ECF Nos. 56, 57).[1]  Also before the Court is Plaintiff's Request, In the Alternative, For Leave To Replead In the Event the Court Does Not Deny Defendants' Motion to Dismiss the First Amended Complaint Under Rule 12(b)(6) ("Motion to Replead").  (ECF No. 38.)  Defendants filed a response in opposition.  (ECF No. 40.)  For the reasons explained below, the Motion to Dismiss and the Motion to Replead are granted.

## I.  LEGAL STANDARD

A motion under Rule 12(b)(1) is a request for the court to dismiss a claim for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  A plaintiff generally bears the burden of establishing that the court has jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  When the court lacks subject matter jurisdiction over a claim for relief, dismissal is proper under Rule 12(b)(1).  *See Jackson v. City & Cnty. of Denver*, No. 11-cv-02293-PAB-KLM, 2012 WL 4355556, at *1 (D. Colo. Sept. 24, 2012).

There are two types of motions to dismiss for lack of subject matter jurisdiction: facial attacks and factual attacks.  *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001).  A facial attack questions merely the sufficiency of the pleading.  *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995).  When reviewing a facial attack, the court takes the allegations in the complaint as true, as in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Id.*  If those allegations establish a federally cognizable claim, jurisdiction exists.  *Id.*

---

[1] Although the Motion to Dismiss did not request dismissal under Federal Rule of Civil Procedure 12(b)(1), the Court considers the arguments in Defendants' supplemental brief as part of the Motion to Dismiss.  (ECF Nos. 26, 56.)

In contrast, if a Rule 12(b)(1) motion "challenge[s] the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court[,] '[i]t then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.'" *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995) (quoting *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989)). On a factual attack, no presumption of truthfulness applies to the complaint's allegations. *Holt*, 46 F.3d at 1003. Instead, the court must weigh the conflicting evidence to arrive at the factual predicate that subject matter jurisdiction does or does not exist. *Id.* In making its decision, the court "has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart*, 271 F.3d at 1225 (citation omitted).

Unless it is shown that no amendment of the pleadings could cure the jurisdictional defect, a dismissal for lack of subject matter jurisdiction generally is not a decision on the merits and, therefore, constitutes a dismissal without prejudice. *See Bruzga v. Cnty. of Boulder*, 795 F. App'x 599, 604–05 (10th Cir. 2020) (stating that a dismissal based on lack of standing should be without prejudice); *see also* Fed. R. Civ. P. 41(b).

## II. BACKGROUND[2]

**A.  Plaintiff is Contracted to Repair the Roofs of Defendants' Insureds**

Plaintiff is a roofing contractor based in Colorado. (ECF No. 22 ¶ 20.)  Typically, when a homeowner requires roof repairs covered by insurance, the contractor works directly with the insurance company once the homeowner has made a claim.  (*Id.* ¶ 3.) When a structure must be re-roofed due to damage, existing roofing materials must first be removed (*id*. ¶ 6); Plaintiff asserts this "tear-off" work "requires the same skill and care as installing roofing materials" and must, therefore, be performed by the same skilled (and more expensive) laborers it employs to install roofing materials.  (*Id.*) According to Plaintiff, Defendants insure thousands of homes in Colorado and hold a 11.2% market share in the homeowner's insurance sector in Colorado.  (*Id.* ¶ 7.) Plaintiff alleges that for at least the last 10 years, it has frequently performed roofing work for Defendants' insureds.  (*Id.* ¶ 21.)

Plaintiff notes three specific instances of roofing work it performed in Parker, Denver, and Fort Collins, Colorado, for homeowners insured by Defendants.  (*Id.* ¶¶ 30–41.)  For each instance raised by Plaintiff, both Plaintiff and Defendants estimated the labor costs for the removal of existing roofing materials using the lower, demolition rate. (*Id.* ¶ 24; ECF No. 56 at 8.)  For its part, Plaintiff acknowledges its labor estimates used the demolition rate but explains that it uses this rate when performing work for homeowners insured by Defendants only because Defendants have consistently refused to pay more than the skilled-labor rate for tear-off work.  (ECF No. 22 ¶ 24.)

---

[2] The following facts are undisputed unless attributed to a party or otherwise noted.  All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Plaintiff does not allege that the tear-off work it performed for Defendants' insureds was uncompensated or that its costs to perform tear-off work exceed what it charged insureds using the demolition rate prescribed by Defendants.  (*See* ECF No. 56.)  Nor does Plaintiff assert or provide facts suggesting that other insurance companies or their customers pay the higher skilled-labor rate for roofing tear-off work.[3]  (*See* ECF Nos. 22, 57.)

According to Plaintiff, Defendants' refusal to pay the appropriate skilled-labor rate has caused other roofing contractors in Colorado to change their labor estimation practices and accept less money for roof tear-off work than they otherwise would.  (ECF No. 22 ¶ 24.)  As such, Plaintiff seeks certification of a class under Federal Rule of Civil Procedure Rule 23(b)(3) consisting of "All persons or entities who performed roofing work for a USAA insured in connection with a claim for roof damage covered under a USAA insurance policy and were denied payment of the roofing labor rate for removal of roofing materials by USAA in the period of July 2, 2019, to the present."  (*Id.* ¶ 43.)

**B.    Relevant Policy Language**

The policy states, in relevant part:

> When our cost to repair or our cost to replace the damaged property is greater than $5,000, and until actual repair or replacement is completed, we will pay only the actual cash value, not to exceed our cost to repair or our cost to replace the damaged part of the property.

---

[3] Numerous cases pending in this District assert similar allegations against other insurance companies providing homeowners' insurance in Colorado.  The complaints in each case include the allegation that roofers began using the demolition rate in their estimates due to the insurers' refusal to pay the skilled-labor rate.  *RTP Roofing Co. v. Travelers Cos., Inc.*, Civil Action No. 21-cv-1747 (D. Colo.), ECF No. 19 ¶¶ 6, 24–25; *Advanced Exteriors, Inc. v. Allstate Vehicle & Prop. Ins. Co.*, Civil Action No. 21-cv-1539 (D. Colo.), ECF No. 22 ¶¶ 7, 23–24; *Advanced Exteriors, Inc. v. United Servs. Auto. Ass'n, et al.*, Civil Action No. 21-cv-1814 (D. Colo.), ECF No. 30 ¶¶ 6, 37–38; *RTP Roofing Co. v. State Farm Fire and Casualty Company*, Civil Action No. 21-cv-1816-CNS-SKC (D. Colo), ECF No. 15 ¶¶ 21–23.

> . . .
>
> When our cost to repair or replace the damaged property is equal to or less than $5,000 we will pay you the full replacement cost amount without deduction for depreciation.
>
> . . .
>
> When repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or our cost to repair or replace the damaged part of the property whichever is less.

(ECF No. 56-6 at 51–52; ECF No. 56-7 at 66–67; ECF No. 56-8 at 52.)

### III. ANALYSIS

**A.   Nature of the Jurisdictional Attack**

The Court first considers whether Defendants bring a facial or factual attack for lack of subject matter jurisdiction.  Upon review, the Court finds that Defendants' jurisdictional attack is factual, because Defendants attack the allegations in Plaintiff's First Amended Complaint and support the Motion to Dismiss with extrinsic evidence (*see* ECF No. 56).  *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295 (10th Cir. 2003) (noting that the defendants' attack was a factual one, as they challenged not just the plaintiffs' allegations of jurisdiction but also the facts underlying those allegations).  Accordingly, the Court will consider facts outside the pleadings without converting the Motion to Dismiss into one for summary judgment.  *See Holt*, 46 F.3d at 1000–03; *see also Stuart*, 271 F.3d at 1225.  In addition, the Court will not "presume the truthfulness of [Plaintiff's] factual allegations." *Holt*, 46 F.3d at 1003.

**B.   Standing**

For a court to have subject matter jurisdiction, a plaintiff must have standing.

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180–81 (2000). At its "irreducible constitutional minimum," standing has three elements. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, a plaintiff must suffer an "injury in fact" that is concrete and particularized, and actual or imminent, not conjectural or hypothetical. *Id.* Second, the injury must be traceable to the challenged action of the defendant. *Id.* Third, it must be likely that the injury will be redressed by the relief requested. *Id.* Standing is determined as of the time the action is brought. *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

The "injury in fact" requirement is satisfied differently depending on whether the plaintiff seeks prospective or retrospective relief. *See Tandy v. City of Wichita*, 380 F.3d 1277, 1283–84 (10th Cir. 2004) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 105 (1983)). To seek prospective relief, the plaintiff must be suffering a continuing injury or be under a real and immediate threat of being injured in the future. *Id.* Past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury. *Id.* (citation omitted). However, the threatened injury must be "certainly impending" and not merely speculative. *Id.* (citation omitted). A claimed injury that is contingent upon speculation or conjecture is beyond the bounds of a federal court's jurisdiction. *Id.* (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). To seek retrospective relief, the plaintiff "satisfies the 'injury in fact' requirement if [it] suffered a past injury that is concrete and particularized." *Id.*

In this case, Plaintiff seeks both retrospective (monetary) and prospective (injunctive) relief. The Court considers them in turn.

1. <u>Standing to Seek Damages</u>

In its supplemental brief, Defendants argue that Plaintiff has no standing to seek

damages because it has not been harmed (ECF No. 56 at 7–9).  Defendants point out all of the proof Plaintiff lacks, including: for the three specific roofing claims referenced in Plaintiff's Amended Complaint, Plaintiff has not shown that it used the higher skilled labor rate; Plaintiff has not shown that it asked USAA to pay the skilled labor rate for roofing tear-off; Plaintiff offers no evidence of the actual cost to remove the roofing material; and Plaintiff has not shown that it charged customers more than what it estimated.  (*Id.* at 8–9.)  Accordingly, Defendant contends that Plaintiff does not have standing to sue, and Plaintiff's claims should be dismissed for lack of subject matter jurisdiction.  (*Id.* at 9.)

In its supplemental brief, Plaintiff argues its injury is legally cognizable because by "reducing the amount USAA pays to its insureds, USAA reduces the revenue that [Plaintiff] receives for the job."  (ECF No. 57 at 5.)  Plaintiff argues that its injury is "concrete and particularized—it is the loss of revenue that occurs as a direct result of USAA's practice of paying the lower DMO labor rate (instead of RFG) for tear-off."  (*Id.*)

Further, Plaintiff argues that because its injury is a loss of revenue, the "expense" side of its operations or whether it "lost money" has no bearing on the question of "concreteness."  (*Id.* at 8.)   Plaintiff contends that it "might make money (*i.e.*, realize a profit) or lose money (*i.e.*, incur a loss) to varying degrees on each particular job," but "what does not change on each job is USAA's application of an arbitrary discount to the amount it agrees to pay for roofing labor."  (*Id.* at 8–9.)  Plaintiff argues that it "knows that it will lose revenue one hundred percent of the time it works on USAA's claims because USAA is not paying what it should for tear-off labor."  (*Id.* at 9.)

Giving due consideration to the parties' competing contentions and arguments on

8

this issue, the Court concludes that Plaintiff lacks standing because it has failed to demonstrate that it has suffered an injury in fact.  As Defendants correctly point out, Defendants' policy expressly limits any payment to the amount that Plaintiff "actually and necessarily spen[t] to repair or replace the damaged part of the property."  (ECF No. 56 at 3; ECF No. 56-6 at 52.)  Here, Plaintiff was paid the amount actually spent and charged to its customers for its services.  Further, Plaintiff fails to present evidence that either its costs to perform removal work or the amount charged to its customers exceeded its own estimates.  (*See* ECF No. 57.)

Plaintiff attaches to its supplemental brief the 427-page Declaration of Ty Correy, the owner and president of Plaintiff, with accompanying exhibits.  (ECF No. 57-4.)  To support its argument that it has presented evidence to support its injury (or loss of revenue) allegations, Plaintiff points to various paragraphs in the Declaration.  (ECF No. 57 at 8 (citing ECF No. 57-4 ¶¶ 6–19, 21, 27–42).)

In the Declaration, Correy states that "Advanced Exteriors charges its customers what the insurance company agrees to pay."  (ECF No. 57-4 ¶ 8.)  Further, Correy states that "USAA has never expressed interest in Advanced Exteriors' actual costs (*e.g.*, "hard" costs directly related to the job or overhead), profits, or losses," and that the "amount USAA pays Advanced Exteriors' customers for roofing labor (as reflected in its Xactimate estimates) is in no way related to Advanced Exteriors' costs for labor."  (*Id.* ¶¶ 33–34.)  According to Correy,

> 39. [i]f USAA correctly used Xactimate to pay the RFG labor rate for tear-off, USAA would necessarily increase the amount it pays to its customers.
>
> 40. In turn, Advanced Exteriors would necessarily be able to invoice its customers for—and receive—the additional

9

> amount. Advanced Exteriors gets paid what USAA pays its insureds for roofing work.
>
> 41. Therefore, USAA's arbitrary practice of using Xactimate to reduce the labor rate for tear-off results in a loss of revenue to Advanced Exteriors.
>
> 42. Put differently, if USAA clicked "RFG" for tear-off in Xactimate, Advanced Exteriors would not suffer this loss of revenue.

(*Id.* ¶¶ 39–42.)

This Court recently addressed a similar "string of hypotheticals" in a nearly identical case, *RTP Roofing Co. v. State Farm Fire & Cas. Co.*, 2022 WL 2064931, at *3 (D. Colo. June 8, 2022), in which the Court dismissed another roofing company's lawsuit against an insurer for lack of standing. The Court concludes that, despite Correy's statements in the Declaration, there are no material differences in this case. Correy's statements constitute the same hypothetical scenario as was present in *RTP*. Therefore, the Court similarly concludes that Plaintiff lacks standing to seek damages here.[4]

### 2. Standing to Seek Injunctive Relief

Defendants argue that "Plaintiff cannot show that it is suffering a 'continuing injury' or that it faces a 'real and immediate threat' of future harm." (ECF No. 56 at 9.) Rather, Defendants contend that Plaintiff "can only speculate about what it might be able to charge and receive in the future. That is not enough." (*Id.*) Therefore, Defendants assert that Plaintiff cannot seek prospective relief. (*Id.*)

---

[4] Plaintiff also submits evidence showing that Xactware receives hundreds of inquiries about its practices that are at the center of this lawsuit and is considering changes. (ECF No. 57 at 8 (citing ECF Nos. 57-1, 57-3).) Despite this additional evidence, it does not alter the Court's conclusion that Plaintiff lacks standing in this case because it has failed to show an injury in fact.

Plaintiff argues that Defendants' practice of paying insureds less than it should, causing them to then pay this amount to Plaintiff, results in a loss of revenue to Plaintiff. (ECF No. 57 at 6.) Plaintiff states that "USAA has engaged in this behavior in the past and continues to do so." (*Id.*) In the First Amended Complaint, Plaintiff seeks a permanent injunction enjoining Defendants from "continuing to engage in the unlawful practice." (ECF No. 22 ¶ 65.)

Plaintiff does not allege that it charges customers for roof tear-off work—or intends to charge them in the future—based on the skilled-labor rate it claims is appropriate. Nor does it allege ever having done so.[5] Therefore, much like the alleged past damages, Plaintiff's alleged future damages are merely hypothetical. Plaintiff's speculation that in the future it may be able to charge a higher rate for roof tear-off work and be paid by Defendants at that higher rate is beyond the bounds of this Court's jurisdiction. *Tandy*, 380 F.3d at 1283–84 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).

3.  Class Action Allegations

Finally, the fact that Plaintiff brought this lawsuit as a putative class action does not save its claims. It is well-established that a named plaintiff of a class must individually and independently have standing, and that such a putative class representative cannot rely on potential class members' injuries to satisfy his burden. *See, e.g.*, *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by

---

[5] The closest Plaintiff comes to such an allegation is paragraph 43 of the Declaration. (ECF No. 57-4 ¶ 43.) However, there, Correy states that Plaintiff "tried including RFG labor for tear-off in its responsive estimates that it sent to insurance companies." (*Id.*) Such a statement is not evidence that Plaintiff charged its *customers* the higher labor rate.

other, unidentified members of the class to which they belong and which they purport to represent"); *Bellwether Cmty. Credit Union v. Chipotle Mexican Grill, Inc.*, 353 F. Supp. 3d 1070, 1089 (D. Colo. 2018) ("[T]he named plaintiffs must allege an actual injury, not an 'injury that has been suffered by other unidentified members of the class.'" (quoting *Spokeo v. Robins*, 578 U.S. 330, 338 n.6 (2016))).

Based on the foregoing, the Court finds that Plaintiff lacks standing because it has not demonstrated it suffered an injury in fact. Accordingly, its lawsuit must be dismissed for lack of subject-matter jurisdiction.[6]

**C.     Plaintiff's Motion to Replead**

In its Motion to Replead, Plaintiff requests that "[t]o the extent the Court believes State Farm's motion is meritorious and finds re-pleading necessary and/or appropriate, RTP respectfully requests the opportunity to further amend its pleading." (ECF No. 38 at 2.) Plaintiff argues that, under Rule 15(a) and related precedent, a district court's refusal to permit amendment "is generally only justified in the case of undue delay, undue prejudice to the opposing party, bad faith or a dilatory motive, failure to cure deficiencies by amendments the court has previously allowed, or futility." (*Id.* (citing *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993).) Plaintiff further points out that this Court has never previously noted a deficiency in its pleading or granted a motion to amend. (*Id.*)

Defendants respond that Plaintiff has failed to adhere to the Local Rules and Revised Practice Standards of this Court and, in doing so, has also failed to provide the Court and Defendants with adequate notice of the basis of its proposed amendment.

---

[6] Because the Court finds that Plaintiff lacks standing, it need not evaluate and does not consider the parties' arguments concerning whether Plaintiff has failed to state a claim for relief.

12

(ECF No. 40 at 3.)  Further, Plaintiff has already filed an amended complaint in response to a motion to dismiss, and it has not explained how it could further amend to state a viable claim.  (*Id.* at 1.)  Defendants also argue that the fact that Plaintiff has already amended its complaint once weighs against allowing further amendment, because Plaintiff has already had two opportunities to file an adequate pleading.  (*Id.* at 2.)

Plaintiff is correct that its prior amendment, which was made as a matter of course under Rule 15(a)(1)(B), is of no moment.  As the undersigned explained when presented with the same argument, "[w]hen it comes to the number of times a party has attempted to plead a claim, the relevant question is, usually, whether the party 'fail[ed] to cure deficiencies by amendments previously allowed.'"  *Villalobos v. Vision Graphics, Inc./Eagle:xm Benefit Plan*, 2019 WL 1098971, *2 n.2 (D. Colo. Mar. 8, 2019).  Here, as in *Villalobos*, the Court has not previously noted a deficiency and allowed amendment.

Where Defendants have a point, however, is Plaintiff's failure follow the Local Rules and Revised Practice Standards of this Court.  Despite the clear directives in Local Rule 15.1(b) and Revised Practice Standard III.E, Plaintiff failed to attach as exhibits either a clean copy of their proposed amended pleading or a redline comparing that proposed amended pleading to the currently operative complaint.  *Cf. id.* (discussing defendant's objection to third-party plaintiff's proposed amended claim).  Without Plaintiff's proposed amendments, it is difficult for either the Court or Defendants to assess whether further amendment would be futile.

Still, the Court cannot definitively conclude that there are no set of facts Plaintiff might be able to plausibly allege to cure the significant jurisdictional problem identified

13

by Defendants.  Therefore, and solely in the interest of justice, the Court will overlook Plaintiff's failure to comply with Local Rules and its Revised Practice Standards and permit Plaintiff to file a second amended complaint.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss (ECF No. 26) is GRANTED;

2. Plaintiff's First Amended Complaint (ECF No. 22) is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction;

3. Plaintiff's Request, In the Alternative, For Leave To Replead In the Event the Court Does Not Deny Defendants' Motion to Dismiss the First Amended Complaint Under Rule 12(b)(6) (ECF No. 38) is GRANTED;

4. Plaintiff may file a Second Amended Complaint curing the pleading defects noted above by no later than **September 22, 2022**; and

5. Defendants shall file their Answer or other responsive pleading by no later than **October 11, 2022**.

Dated this 29th day of August, 2022.

BY THE COURT:

William J. Martinez
United States District Judge